UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                            :
                                                                  :           Chapter 11
JOURNAL REGISTER COMPANY, *et al.*,    :           Case No. 12-13774 (SMB)
                                                                  :           (Jointly Administered)
                                                Debtors.    :
------------------------------------------------------------X

# MEMORANDUM DECISION AND ORDER
# OVERRULING OBJECTION TO SALE MOTION

**A P P E A R A N C E S:**

MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178

    Neil E. Herman, Esq.
    Patrick D. Fleming, Esq.
        Of Counsel

    – and –

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP
1270 Avenue of the Americas
  Suite 2210
New York, New York 10020

    Kenneth J. Enos, Esq.
    Andrew L. Magaziner, Esq.
        Of Counsel

*Counsel to the Debtors and Debtors in Possession*

COHEN, WEISS and SIMON, LLP
330 West 42nd Street, 25th Floor
New York, New York 10036

    Richard M. Seltzer, Esq.
    David R. Hock, Esq.
        Of Counsel

*Counsel for the Communications Workers of America*

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036

    Lisa G. Beckerman, Esq.
    Robert A. Johnson, Esq.
    Arun Kurichety, Esq.
        Of Counsel

*Counsel for Alden Global Distressed Opportunities*
*Master Fund, L.P., Alden Global Value Recovery*
*Master Fund, L.P., and 21st CMH Acquisition Co.*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

      The Debtors seek to sell substantially all of their assets pursuant to Bankruptcy Code § 363.  Two unions have objected because, among other things, the purchaser will not assume the Debtors' obligations under their collective bargaining agreements.  The Court reserved decision on the objection following the sale hearing, and now overrules the objection for the reasons that follow.

## DISCUSSION

      The material facts are not in dispute and the resolution of the objection presents an issue of law.  At all relevant times prior to the filing of these chapter 11 cases on September 5, 2012, the Debtors were engaged in the business of providing local news, sports, business and lifestyle information to its customers through print and digital platforms.  On or about November 29, 2012, the Debtors entered into an agreement with 21st CMH Acquisition Co. (the "Buyer") to sell substantially all of their assets (the "Agreement").[1]  The Buyer is an affiliate of the holders of the interests in the Debtors, and to ensure fairness, the sale process was overseen by an

---

[1] The Agreement was amended and restated as of December 19, 2012, but the amendments are not material to the disposition of the matter before the Court.  Hence, references to the Agreement in this decision include the original agreement and the amended and restated agreement.

independent director with additional oversight and input by the Official Committee of Unsecured Creditors and its professionals. The Buyer contemplates a different business model that will affect the terms and conditions of the employment of Debtors' current employees as well as their continued employment.

The Debtors are parties to collective bargaining agreements with several affiliates of the Communications Workers of America, including the Newspaper Guild/CWA (the "INI Guild") and the Detroit Typographical Union No. 18 (the "INI ITU"). The Debtors' collective bargaining agreements with the INI Guild and the INI ITU (collectively, the "Unions") will expire on March 31, 2013. Relevant to the current dispute, they contain identical "successor" clauses that condition the sale of the Debtors' "operation" on the purchaser's assumption of the Debtors' obligations under its collective bargaining agreements:

> *This agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns.* In the event an entire operation or any part thereof is sold, leased, transferred or taken over by sale, transfer, lease assignment, receivership or bankruptcy proceeding, *such operation shall continue to be subject to the terms and conditions of this Agreement for the life thereof* . . . .
>
> *In the event that the employer sells, transfers, or otherwise assigns its operations it shall require as a condition of the purchaser, transferee or assignee assume the obligations of this Agreement.* In the event that the employer fails to require the purchaser, transferee or assignee to assume the obligations of this Agreement, the employer (including partners and shareholders thereof) shall be liable to the local union and the employees covered for all damages sustained as a result of such failure to require assumption of the terms of this Agreement.

(Emphasis added).

The proposed sale does not comply with the successor clauses. Under the Agreement, the Buyer will not assume any of the collective bargaining agreements:

> Purchaser does not accept any CBAs between any Seller and its Employees, and expressly declines to be bound by or accept the terms of any such CBAs. Purchaser is not obligated and does not accept or adopt any wage rates, employee

3

> benefits, employee policies or any other terms and conditions of employment currently or previously maintained by Sellers. Instead, Purchaser will set initial terms and conditions of employment.

(Agreement § 6.8.)

Notwithstanding the terms of the Agreement, the Buyer reached out to the Debtors' unions to bargain over the effect of the transaction on the Debtors' union employees. As a result of the these efforts, the Buyer entered into initial, ratified collective bargaining agreements with five of six Guilds, the INI Guild being the lone exception. The Debtors also entered into shutdown agreements with four of the five typographical unions, the INI ITU being the lone exception. In addition, the Buyer has agreed to pay severance related to any employee not offered employment. (Agreement § 3.1.)

The Unions filed grievances based upon the alleged violations of the successor clauses, and demanded that the Debtors "cease the violation and make all bargaining unit employees whole for all wages and benefits lost as a result of the [Debtors'] violation." The Unions have also objected to the sale for several other reasons, including the violation of the successor clauses. The Unions contend, *inter alia*, that the Debtors may only consummate the Agreement if they reject their respective collective bargaining agreements pursuant to Bankruptcy Code § 1113, and if necessary, obtain interim relief under § 1113(e).

## DISCUSSION

Bankruptcy Code § 1113 governs the rejection of a collective bargaining agreement. It establishes a negotiation process that the debtor must satisfy before a bankruptcy court will approve a rejection motion. Bankruptcy Code § 1113(e) allows for interim relief during the pendency of the rejection motion. Finally, Bankruptcy Code § 1113(f) states:

4

> No provision of this title shall be construed to permit a trustee [including a debtor-in-possession] to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.

"Subsection 1113(f) evinces an intent that other provisions of the Bankruptcy Code are inoperable to the extent that they allow the debtor to bypass the requirements of §1113." *Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir. 1990), *cert. denied*, 502 U.S. 808 (1991); *accord Air Line Pilots Ass'n v. Continental Airlines (In re Continental Airlines)*, 125 F.3d 120, 137 (3d Cir. 1997) ( Section 1113 precludes the application of other provisions of the Bankruptcy Code to allow a debtor "to escape the terms of the collective bargaining agreement without complying with the requirements of section 1113"), *cert. denied*, 522 U.S. 1114 (1998). Pending compliance with § 1113, the collective bargaining agreement remains in effect and the collective bargaining process continues after the filing of a bankruptcy petition. *Ionosphere*, 922 F.2d at 990.

The Debtors have not moved to reject their collective bargaining agreements with the Unions or sought any interim relief from the successor clauses. Accordingly, the question presented by the sale motion and the Unions' objection is whether the Court can approve the sale if the Debtors have not procured the Buyer's agreement to assume the Debtors' obligations under the pertinent collective bargaining agreements. The Unions have brought two decisions to the Court's attention that addressed this issue. In *In re Stein Henry Co.*, No. 91-15491S, 1992 WL 122902 (Bankr. E.D. Pa. June 1, 1992), the debtor proposed to sell its assets under a plan. The debtor's collective bargaining agreement with Teamsters Local 500 contained a successor clause stating that the agreement "shall be binding upon [the Debtor's] successors . . . and assigns." The sale agreement did not include such a provision. The bankruptcy court concluded that the failure to preserve the union's rights against the purchaser violated Bankruptcy Code § 1113, and

5

a collective bargaining agreement cannot be terminated or modified except through the medium of Bankruptcy Code § 1113(f). *Id.*, 1992 WL 122902, at *2. One year later, however, the same bankruptcy judge questioned *Stein Henry's* broad reading of Bankruptcy Code § 1113(f). *After Six, Inc. v. Philadelphia Joint Board (In re After Six, Inc.)*, Adv. Proc. No. 93-0339S, 1993 WL 160385, at *2 (Bankr. E.D. Pa. May 13, 1993).

*In re Agripac, Inc.*, No. 699-60001, slip. op., (Bankr. D. Or. Apr. 2, 1999) is more on point. There, the debtor sought to sell its canned foods division. The debtor's collective bargaining agreement with Teamster Local 670 included a successor clause similar to those at issue in this case. It stated that if the business was sold the agreement would be binding on the parties and their successors and the purchaser would continue to be subject to the collective bargaining agreement, and in the event the debtor failed to require the purchaser to assume the obligations of the collective bargaining agreement, the debtor would be liable in damages to the union and the employees. The proposed agreement did not comply with the successor clause, and the union objected to the sale on that basis.

The bankruptcy court sustained the union's objection on two different grounds. First, the breach of the collective bargaining agreement could result in substantial administrative expense claims against the estate. *Id.* at 11. Second, the sale of the canned foods business without compliance with the collective bargaining agreement amounted to a rejection of the contract under Bankruptcy Code § 1113, and the sale could not go forward until the debtor complied with § 1113 or the union and the new buyer reached an agreement rendering compliance moot. *Id.* at 12; *see United Food & Commercial Workers Union v. Family Snacks, Inc. (In re Family Snacks, Inc.)*, 257 B.R. 884, 896 n.8 (B.A.P. 8th Cir. 2001) ("A debtor may not, however, fail to take steps to reject the CBA under § 1113 and, at the same time, fail to comply with the terms of the

6

CBA."); see *generally* 7 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 1113.02[1][c], at 1113-9 (16th ed. 2012).

The *Agripac* court's conclusion is consistent with the intent of Bankruptcy Code § 1113. The collective bargaining agreement continues to bind the debtor post-petition, and a debtor cannot reject a collective bargaining agreement except in accordance with Bankruptcy Code § 1113. Generally speaking, a rejection represents a decision not to perform a burdensome executory contract. A debtor cannot bypass § 1113 and obtain a *de facto* rejection of its collective bargaining agreement simply by refusing to perform it. Although the obligation to comply with the successor clause is only one duty among many under a collective bargaining agreement, a debtor's intentional breach of a material provision of the collective bargaining agreement is tantamount to a rejection, or alternatively, a unilateral alteration of its provisions in violation of Bankruptcy Code § 1113(f). Thus, as a general proposition, a sale under Bankruptcy Code § 363 cannot circumvent the condition imposed under a successor clause absent compliance with § 1113.

While this general proposition is unexceptionable, it does not preclude the sale in this case given the unique circumstances. The successor clauses do not speak to the contents of the purchase and sale agreement. Instead, they condition the actual sale or transfer of the Debtors' "operations" on the successor's assumption of the Debtors' obligations under the collective bargaining agreements *for the remaining life* of the collective bargaining agreements.[2] If the

---

[2]   Although the Unions contend that the interpretation of the successor clause must be resolved pursuant to the grievance procedure by an arbitrator in accordance with the collective bargaining agreements, the Unions raised the alleged violation of the successor clause as the reason to deny the sale motion. The Court cannot resolve the Unions' objection without deciding whether the proposed sale violates the successor clause or requires the Debtors to comply with Bankruptcy Code § 1113. Given that the Unions raised the issue, the core nature of the sale motion, and the need for a speedy disposition, it would be inappropriate for the Court to defer the interpretation of the successor clauses to an arbitration that has not even been commenced. *After Six*, 1993 WL 160385, at *1.

collective bargaining agreements expire prior to the sale, there will be no remaining life and no obligations to assume.[3]  Furthermore, Bankruptcy Code § 1113 does not apply after a collective bargaining agreement terminates.  *San Rafael Baking Co. v. N. Cal. Bakery Drivers Sec. Fund (In re San Rafael Baking Co.)*, 219 B.R. 860, 866 (B.A.P. 9th Cir. 1998); *In re Hostess Brands, Inc.*, 477 B. R. 378, 382 (Bankr. S.D.N.Y. 2012).

Rule 6004(h) of the Federal Rules of Bankruptcy Procedure automatically stays an order authorizing a sale for fourteen days unless the Court orders otherwise.  Thus, even if the Court signed a sale order today, the sale could not close until after the expiration of the collective bargaining agreements.  In light of fact that the transaction will not close until after the termination of the collective bargaining agreements, the Court overrules the Unions' objection.  The Court has considered the other arguments raised by the Unions on this issue and concludes that they lack merit.  The Debtors are directed to contact chambers to schedule the conclusion of the sale hearing.

So ordered.

Dated: New York, New York
       March 21, 2013

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge

---

[3] The Court expresses no view on the Buyer's obligations, if any, that may arise from sources following the consummation of a sale.