**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PULP FINISH 1 COMPANY (f/k/a Journal | : | Case No. 12-13774 (SMB) |
| Register Company), *et al.*,[1] | : | |
| | : | Jointly Administered |
| Debtors. | : | |

---------------------------------------------------------- x

**JOINT PLAN OF LIQUIDATION PURSUANT**
**TO CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTORS**
**AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**MORGAN LEWIS & BOCKIUS LLP**
Neil E. Herman
Patrick D. Fleming
101 Park Avenue
New York, New York  10178-0060
Telephone:  (212) 309-6000
Facsimile:  (212) 309-6001

**LOWENSTEIN SANDLER LLP**
Gerald C. Bender
Michael Savetsky
Richard J. Corbi
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
Telephone:  (212) 262-6700
Facsimile:  (212) 262-7402

*Counsel for the Official Committee of*
*Unsecured Creditors*

**YOUNG CONAWAY STARGATT &**
**TAYLOR, LLP**
Michael R. Nestor
Kenneth J. Enos
Andrew L. Magaziner
1270 Avenue of the Americas - Suite 2210
New York, New York 10020
Telephone:  (212) 332-8840
Facsimile:  (212) 332-8855

*Counsel for the Debtors and*
*Debtors in Possession*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Pulp Finish 1 Company (f/k/a Journal Register Company) (8615), Register Company, Inc. (6548), Chanry Communications Ltd. (3704), Pennysaver Home Distributions Corp. (9476), All Home Distribution Inc. (0624), JR East Holdings, LLC (N/A), Journal Register East, Inc. (8039), Journal Company, Inc. (8220), JRC Media, Inc. (4264), Orange Coast Publishing Co. (7866), St. Louis Sun Publishing Co. (1989), Middletown Acquisition Corp. (3035), JiUS, Inc. (3535), Journal Register Supply, Inc. (6546), Northeast Publishing Company, Inc. (6544), Hometown Newspapers, Inc. (8550), The Goodson Holding Company (2437), Acme Newspapers, Inc. (6478), Pulp Finish 3 Company (f/k/a 21st Century Newspapers, Inc.) (6233), Morning Star Publishing Company (2543), Heritage Network Incorporated (6777), Independent Newspapers, Inc. (2264), Voice Communications Corp. (0455), Pulp Finish 2 Company (f/k/a Digital First Media Inc.) (0431), Great Lakes Media, Inc. (5920), Up North Publications, Inc. (2784), Greater Detroit Newspaper Network, Inc. (4228), Great Northern Publishing, Inc. (0800), and Saginaw Area Newspapers, Inc. (8444). The mailing address for each of the Debtors is c/o Ocean Ridge Capital Advisors, LLC, 56 Harrison Street, Suite 203A, New Rochelle, NY 10801.

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION AND
COMPUTATION OF TIME.................................................................................1

   A.   Rules of Interpretation .........................................................................1
   B.   Computation of Time............................................................................1
   C.   Defined Terms ......................................................................................1

ARTICLE II. PAYMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX
CLAIMS .......................................................................................................9

   A.   Administrative Claims ..........................................................................9
   B.   DIP Credit Agreement Claims ..............................................................9
   C.   Professional Fee Claims......................................................................10
   D.   Priority Tax Claims.............................................................................10

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS
AND EQUITY INTERESTS ..........................................................................10

   A.   Summary.............................................................................................10
   B.   Classification and Treatment of Claims and Equity Interests............11
   C.   Non-Consensual Confirmation ...........................................................13
   D.   Elimination of Vacant Classes ...........................................................14
   E.   Special Provision Governing Unimpaired Claims..............................14

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ......................................14

   A.   Substantive Consolidation of the Debtors for Plan Purposes Only ...................14
   B.   Vesting of Assets and Dissolution of the Debtors .............................15
   C.   Preservation of Causes of Action........................................................15
   D.   The Liquidating Trust .........................................................................16
   E.   Abandonment, Disposal and/or Destruction of the Debtors' Unsold
Records ..............................................................................................19
   F.   Transition Services Agreement............................................................19
   G.   Effective Date ....................................................................................19
   H.   Operations of the Debtors Between the Confirmation Date and the
Effective Date ....................................................................................20
   I.   Term of Injunctions or Stays...............................................................20
   J.   Corporate Action................................................................................20
   K.   Cancellation of Existing Agreements and Existing Common Stock .................20
   L.   Authorization of Plan-Related Documentation....................................20
   M.   Dissolution of Committee ...................................................................21
   N.   Exemption from Certain Fees and Taxes.............................................21
   O.   Waiver of TLA/TLB Deficiency Claims ............................................21

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
    LEASES .........................................................................................................22

    A.    Rejection of Executory Contracts and Unexpired Leases...................................22
    B.    Rejection Damages Claims.................................................................................22
    C.    Indemnification Obligations ..............................................................................23

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ..............................................23

    A.    Manner of Payment under the Plan....................................................................23
    B.    Timing of Distributions.....................................................................................23
    C.    Distributions by Disbursing Agent ....................................................................24
    D.    Delivery of Distributions and Undeliverable or Unclaimed
          Distributions......................................................................................................24
    E.    Record Date for Distributions ...........................................................................24
    F.    Allocation of Plan Distributions between Principal and Interest........................25
    G.    Fractional Dollars; De Minimis Distributions ...................................................25
    H.    No Distribution in Excess of Allowed Amount of Claim ...................................25
    I.    Setoff and Recoupment .....................................................................................25
    J.    Compliance with Tax Requirements...................................................................25
    K.    Release of Liens ................................................................................................26
    L.    Subordination....................................................................................................26
    M.    Indefeasible Distributions .................................................................................26

ARTICLE VII. PROCEDURES FOR RESOLVING DISPUTED CLAIMS .............................27

    A.    Prosecution of Objections to Claims on and after the Effective Date ................27
    B.    Estimation of Claims.........................................................................................27
    C.    No Distributions Pending Allowance .................................................................27
    D.    Distributions After Allowance ..........................................................................28

ARTICLE VIII. CONDITIONS PRECEDENT TO CONFIRMATION AND
    EFFECTIVE DATE OF THE PLAN ................................................................28

    A.    Condition Precedent to Confirmation ................................................................28
    B.    Conditions Precedent to the Effective Date .......................................................28
    C.    Waiver of Conditions.........................................................................................29
    D.    Satisfaction of Conditions.................................................................................29
    E.    Effect of Nonoccurrence of Conditions .............................................................29

ARTICLE IX. SETTLEMENT, RELEASE, INJUNCTION AND RELATED
    PROVISIONS ..................................................................................................29

    A.    Plan Injunction ..................................................................................................29
    B.    Exculpation .......................................................................................................30
    C.    Releases by Debtors and Estates........................................................................30
    D.    Releases by Holders of Claims ..........................................................................31
    E.    Special Provision Regarding the Journal Register Company Retirement
          Plan ..................................................................................................................32

ARTICLE X. RETENTION OF BANKRUPTCY COURT JURISDICTION ................................32

ARTICLE XI. MODIFICATION AND REVOCATION OF THE PLAN ...................................34

    A.    Immediate Binding Effect.................................................................................34
    B.    Modification of the Plan ...................................................................................34
    C.    Revocation or Withdrawal of the Plan..............................................................35

ARTICLE XII. MISCELLANEOUS PROVISIONS ..................................................................35

    A.    Payment of Statutory Fees ...............................................................................35
    B.    Governing Law .................................................................................................35
    C.    Corporate Action..............................................................................................36
    D.    Severability of Plan Provisions........................................................................36
    E.    Successors and Assigns.....................................................................................36
    F.    Reservation of Rights.......................................................................................36
    G.    Further Assurances...........................................................................................36
    H.    Post-Effective Date Service List......................................................................37
    I.    Other Notices ...................................................................................................37
    J.    Conflicts...........................................................................................................38
    K.    Section 1145 Exemption ..................................................................................38
    L.    Determination of Tax Liability .........................................................................38
    M.    Post-Effective Date Fees and Expenses...........................................................38
    N.    Entire Agreement .............................................................................................39
    O.    Closing of the Bankruptcy Cases......................................................................39
    P.    Change of Control Provisions...........................................................................39
    Q.    Substantial Consummation ..............................................................................39
    R.    Administrative Claims Bar Date.......................................................................39
    S.    Substitution of the Liquidating Trust for the Debtors.......................................40
    T.    Preservation of Insurance.................................................................................40
    U.    Asset Purchase Agreement ...............................................................................40
    V.    Claims Agent ...................................................................................................40
    W.    No Discharge ....................................................................................................41

**<u>INTRODUCTION</u>**

The above-referenced debtors and debtors in possession and the Official Committee of Unsecured Creditors for the Bankruptcy Cases (as defined herein) hereby respectfully propose this Plan (as defined herein) pursuant to section 1121(a) of the Bankruptcy Code. Reference is made to the Disclosure Statement (as defined herein), distributed contemporaneously herewith, for a discussion of the Debtors' history, business, properties, and operations; a summary and analysis of this Plan; and certain related matters.

**ARTICLE I.**

**DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME**

**A.    Rules of Interpretation**

For purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified, supplemented or restated; (d) unless otherwise specified, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "hereof", "herein", "hereto", "hereunder" and comparable terms refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) the words "include", "includes" and "including" shall not be limiting and shall be deemed to be followed by "without limitation" whether or not they are, in fact, followed by such words or words of like import; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) any capitalized term used in the Plan that is not defined herein but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (j) in the event of any inconsistency between the terms of the Plan and the terms of the Disclosure Statement, the terms of the Plan shall control; and (k) in the event of any inconsistency between the terms of the Plan and the terms of the Liquidating Trust Agreement, the terms of the Plan shall control.

**B.    Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**C.    Defined Terms**

When used in capitalized form in the Plan, the following terms shall have the respective meanings assigned to such terms below:

**"363 Sale Transaction"** means the transaction between the Debtors and the Purchaser set forth in the Asset Purchase Agreement, which closed on April 5, 2013.

**"363 Sale Assumed & Assigned Claims"** means all pre-petition Claims that constitute Purchaser Assumed Liabilities.

**"363 Sale Order"** means the Final Order of the Bankruptcy Court entered in the Bankruptcy Cases on March 27, 2013, approving the 363 Sale Transaction [Docket No 544].

**"2007 Tax Refund"** means the Debtors' federal income tax refund resulting from carrying net operating losses back to the Sellers' tax year ended January 2, 2008 from its tax year ended December 31, 2008, which constituted an "Excluded Asset" (as defined in the Asset Purchase Agreement) under the terms of the Asset Purchase Agreement.

**"Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in Bankruptcy Code section 503(b) (including section 503(b)(9)) and entitled to priority in payment under Bankruptcy Code sections 507(a)(2), 507(b) or 1114(e)(2), including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) any Professional Fees incurred through and including the Effective Date; (c) DIP Credit Agreement Claims; and (d) obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court.

**"Allowed"** means, with reference to any Claim, except as otherwise provided herein:

(a) a Claim that has been Filed against or Scheduled by a Debtor in its Schedules as other than disputed, contingent or unliquidated and as to which such Debtor, the Liquidating Trustee or any other party in interest has not timely Filed an objection in accordance with Article VII.A. of the Plan;

(b) a Claim that has been allowed by a Final Order;

(c) a Claim that is allowed (i) in any stipulation with a Debtor concerning the amount and nature of such Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court upon proper notice to the Debtors and other parties in interest; (ii) in any stipulation with a Debtor or the Liquidating Trustee concerning the amount and nature of such Claim executed on or after the Confirmation Date and, to the extent necessary, approved by the Bankruptcy Court or (iii) in any contract, instrument, indenture or other agreement entered into or assumed pursuant to the Plan;

(d) a Claim that is deemed allowed by the Liquidating Trustee at any time in its reasonable but sole discretion; or

(e) a Claim that is allowed pursuant to the terms of the Plan;

provided, however, unless otherwise specified herein or by order of the Bankruptcy Court, the term "Allowed Claim" shall not, for any purpose under the Plan, include interest, penalties, premiums or late charges on such Claim from and after the Petition Date.

**"Assets"** means all property owned by the Debtors, including, but not limited to, Cash, real property, personal property, intellectual property, intangible property, and Causes of Action.

**"Asset Purchase Agreement"** means that certain Amended and Restated Asset Purchase Agreement, dated as of December 19, 2012, among the Debtors and the Purchaser, as the same may have been amended from time to time.

**"Avoidance Actions"** means (a) any and all actions that are Filed or that may be Filed pursuant to sections 544, 545, 547, 548, 550, and 551 of the Bankruptcy Code, or applicable non-bankruptcy law that may be incorporated or brought under the foregoing sections of the

Bankruptcy Code; or (b) any other similar actions or proceedings filed to recover property for or on behalf of the Estates or to avoid a lien or transfer.

"**Ballot**" means the ballots accompanying the Disclosure Statement upon which Holders of Claims entitled to vote on the Plan shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and procedures approved by the Bankruptcy Court governing the solicitation process.

"**Bankruptcy Cases**" means, collectively, the Debtors' bankruptcy cases under chapter 11 of the Bankruptcy Code pending in the Bankruptcy Court and jointly administered under Case No. 12-13774.

"**Bankruptcy Code**" means title I of the Bankruptcy Reform Act of 1978, as amended from time to time, as codified in title 11 of the United States Code, sections 101-1532 and applicable portions of titles 18 and 28 of the United States Code.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms and the Local Bankruptcy Rules of the Bankruptcy Court, each as amended from time to time, as applicable to the Bankruptcy Cases.

"**Business Day**" means any day, other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or any other day on which commercial banks in New York State are required to close.

"**Cash**" means legal tender of the United States of America and equivalents thereof.

"**Causes of Action**" means all of the Debtors' actions, causes of action, objections to claims, rights of setoff, choses in action, liabilities, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, Avoidance Actions, counterclaims, and crossclaims, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Bankruptcy Cases, through and including the Effective Date; provided, however, that the term Causes of Action shall not include any rights, claims or causes of action sold to the Purchaser pursuant to the Asset Purchase Agreement.

"**Claim**" means a "claim" against a Debtor, as defined in section 101(5) of the Bankruptcy Code, whether or not asserted.

"**Claims Agent**" means American Legal Claims Services, LLC, the entity designated by order of the Bankruptcy Court during the Bankruptcy Cases to, among other things, receive, maintain, record and otherwise administer Claims against the Debtors, or such other entity as the Liquidating Trustee may retain to provide such services.

"**Class**" means a category of Claims or Equity Interests described in Article III of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

"**Committee**" means the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Bankruptcy Cases pursuant to section 1102 of the Bankruptcy Code.

"**Confirmation**" means the entry of the Confirmation Order, subject to all conditions specified in Article VIII.A of the Plan having been (i) satisfied or (ii) waived pursuant to Article VIII.C of the Plan.

**"Confirmation Date"** means the date of entry of the Confirmation Order on the docket of the Bankruptcy Cases within the meaning of Bankruptcy Rules 5003 and 9021.

**"Confirmation Hearing"** means the hearing held by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider Confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

**"Confirmation Hearing Date"** means the date on which the Confirmation Hearing is first commenced.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**"Consummation"** means the occurrence of the Effective Date.

**"Creditor"** means the Holder of a Claim against any Debtor or its Estate.

**"Debtor"** means any one of the Debtors, in its individual capacity, as a debtor and debtor in possession in the Bankruptcy Cases.

**"Debtors"** means Pulp Finish 1 Company (f/k/a Journal Register Company); Register Company, Inc.; Chanry Communications Ltd.; Pennysaver Home Distributions Corp.; All Home Distribution Inc.; JR East Holdings, LLC; Journal Register East, Inc.; Journal Company, Inc.; JRC Media, Inc.;  Orange Coast Publishing Co.; St. Louis Sun Publishing Co.; Middletown Acquisition Corp.; JiUS, Inc.; Journal Register Supply, Inc.; Northeast Publishing Company, Inc.; Hometown Newspapers, Inc.; The Goodson Holding Company; Acme Newspapers, Inc.; Pulp Finish 3 Company (f/k/a 21st Century Newspapers, Inc.); Morning Star Publishing Company; Heritage Network Incorporated; Independent Newspapers, Inc.; Voice Communications Corp.; Pulp Finish 2 Company (f/k/a Digital First Media Inc.) (0431); Great Lakes Media, Inc.; Up North Publications, Inc.; Greater Detroit Newspaper Network, Inc.; Great Northern Publishing, Inc.; and Saginaw Area Newspapers, Inc. as debtors and debtors in possession in the Bankruptcy Cases.

**"DIP Credit Agreement"** means that certain Ratification and Amendment Agreement, dated September 7, 2012, by and among the Debtors, as borrowers, and Wells Fargo Bank, N.A. as lender, as the same may have been amended, supplemented, modified, extended, renewed, and/or restated from time to time, which ratified and amended that certain Loan and Security Agreement, dated August 7, 2009, by and among the Debtors, as borrowers, and Wells Fargo Bank, N.A., as successor in interest of Wachovia Bank, National Association, as lender, as the same may have been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date.

**"DIP Credit Agreement Claim"** means any Claim arising under or related to the DIP Credit Agreement.

**"Disallowed Claim"** means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order, (b) a Claim that is Scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or other applicable bankruptcy law, (c) a Claim that has not been Scheduled and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or other applicable bankruptcy law, or (d) a Claim disallowed in accordance with section 502(d) of the Bankruptcy Code pursuant to Article VII.E. of the Plan.

**"Disbursing Agent"** means the Liquidating Trustee, or the Person or Entity chosen or retained by the Liquidating Trustee to make or facilitate Distributions pursuant to the Plan.

**"Disclosure Statement"** means the written disclosure statement (including all exhibits and schedules thereto) that relates to the Plan prepared and distributed in accordance with sections 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and other applicable law, as the same may be amended, supplemented, revised or modified from time to time, as approved by the Bankruptcy Court pursuant to the Disclosure Statement Approval Order.

**"Disclosure Statement Approval Order"** means the Final Order approving, among other things, the adequacy of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code.

**"Disputed Claim"** means a Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, and in relation to a Class, a Disputed Claim in the particular Class described.

**"Disputed Claims Reserve"** means a fund held by the Liquidating Trust (which need not be held in a segregated bank account) for the payment of Disputed Claims that become Allowed Claims after the Effective Date, which fund shall be maintained by the Liquidating Trustee for the benefit of the Holders of Disputed Claims.

**"Distribution"** means the distributions to be made in accordance with the Plan of, as the case may be:  (a) Cash or (b) any other consideration or residual value distributed to Holders of Allowed Claims under the terms and provisions of the Plan.

**"Distribution Record Date"** means the record date for the purpose of determining Holders of Allowed Claims entitled to receive Distributions under the Plan on account of such Allowed Claims, which date shall be ten (10) Business Days prior to the Confirmation Hearing Date originally scheduled by the Bankruptcy Court in the Disclosure Statement Approval Order.

**"Effective Date"** means that date following the Confirmation Date on which all conditions to consummation of the Plan shall have been satisfied or waived as provided in Article VIII.B. and Article VIII.C. hereof.

**"Entity"** means an "entity," as defined in section 101(15) of the Bankruptcy Code.

**"Equity Interest"** means, with respect to a Debtor, as of the Petition Date, any capital stock or other ownership interest in such Debtor, whether or not transferable, and any option, call, warrant or right to purchase, sell or subscribe for an ownership interest or other equity security in such Debtor, and any redemption, conversion, exchange, voting, participation, dividend rights, and liquidation preferences relating to such capital stock or other ownership interest.

**"Estate"** means the estate of each of the Debtors created by section 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Cases.

**"Exculpated Parties"** mean, collectively, each of the following parties in their respective capacities as such: (a) the Debtors, (b) each director, officer, financial advisor, restructuring advisor or attorney employed by or serving the Debtors as of or after the Petition Date, (c) the Committee, (d) each member of the Committee solely in its capacity as a member of the Committee, and (e) the Committee's financial advisors, attorneys and representatives (and their respective affiliates).

**"Executory Contract"** means an executory contract or unexpired lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

"**File**" or "**Filed**" means file or filed on the Bankruptcy Court's docket or with the Bankruptcy Court for the Bankruptcy Cases or, in the case of a Proof of Claim, file or filed with the Claims Agent.

"**Final Order**" means an order of the Bankruptcy Court (a) as to which the time to appeal, petition for certiorari, or move for reargument, rehearing or new trial has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, rehearing or new trial shall then be pending; (b) as to which any right to appeal, petition for certiorari, reargue, rehear or retry shall have been waived in writing; or (c) in the event that an appeal, writ of certiorari, reargument, rehearing or new trial has been sought, as to which (i) such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order is appealed, (ii) certiorari has been denied as to such order, or (iii) reargument or rehearing or new trial from such order shall have been denied, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing or new trial shall have expired without such actions having been taken.

"**General Unsecured Claim**" means any Claim that is (a) not an Administrative Claim, Priority Tax Claim, Priority Non-Tax Claim, Pre-Petition Revolving Credit Facility Claim, TLA/TLB Secured Claim, Other Secured Claim, 363 Sale Assumed & Assigned Claim or an Intercompany Claim, or (b) otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.  General Unsecured Claims shall not include any Claims that are disallowed or released, whether by operation of law or pursuant to an order of the Bankruptcy Court, written release or settlement, the provisions of the Plan or otherwise.

"**Holder**" means any Entity holding a Claim, an Equity Interest or a Liquidating Trust Interest.

"**Impaired Class**" means a Class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Initial Distribution Date**" means the date, occurring as soon as practicable after the Effective Date, on which initial Distributions are made to Holders of Allowed Claims.

"**Internal Revenue Code**" means title 26 of the United States Code, as amended from time to time.

"**Intercompany Claim**" means any Claim of a Debtor against another Debtor.

"**Liquidating Trust**" means the trust described in Article IV.D. of the Plan to be established under New York law that will effectuate the wind down of the Debtors and make distributions pursuant to the terms of the Plan and Liquidating Trust Agreement.  With respect to any action required or permitted to be taken by the Liquidating Trust, the term "Liquidating Trust" includes the Liquidating Trustee or any other person authorized to take such action in accordance with the Liquidating Trust Agreement.

"**Liquidating Trustee**" means Ocean Ridge Capital Advisors, LLC, the entity appointed by the Committee in accordance with Article IV.D.5. hereof to administer the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement.

"**Liquidating Trust Agreement**" means the agreement, substantially in the form annexed hereto as **Exhibit A**, establishing the Liquidating Trust in conformity with the provisions of the Plan, which shall be approved in the Confirmation Order and entered into by the Debtors, on behalf of the beneficiaries, and the Liquidating Trustee on the Effective Date pursuant to the terms of the Plan.

"**Liquidating Trust Assets**" means all property and Assets of the Debtors and their Estates that have neither been previously abandoned nor sold, including without limitation, the

remaining Winddown Cash (including the 2007 Tax Refund), all of the Debtors' rights under the Transition Services Agreement, any books and records of the Debtors not sold under the Asset Purchase Agreement, and other remaining assets of the Debtors.

"**Liquidating Trust Interests**" means the uncertificated beneficial interests in the Liquidating Trust representing the right of each Holder of an Allowed Claim to receive distributions from the Liquidating Trust in accordance with the Plan.

"**Official Bankruptcy Forms**" means the Official Bankruptcy Forms, prescribed by the Judicial Conference of the United States, the observance and use of which is required pursuant to Bankruptcy Rule 9009, as such forms may be amended, revised or supplemented from time to time.

"**Other Secured Claim**" means any Claim, other than a DIP Credit Agreement Claim, a Pre-Petition Revolving Credit Facility Claim or a TLA/TLB Secured Claim, that is secured by a lien on property in which an Estate has an interest, which lien is valid, perfected and enforceable under applicable law or pursuant to a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, all as determined pursuant to section 506(a) of the Bankruptcy Code.

"**Person**" means a "person," as defined in section 101(41) of the Bankruptcy Code.

"**Petition Date**" means September 5, 2012.

"**Plan**" means this chapter 11 plan, including all exhibits and schedules annexed hereto or otherwise incorporated herein, either in its present form or as it may be altered, amended, modified, revised or supplemented from time to time.

"**Pre-Petition Revolving Credit Facility**" means the senior secured financing facility governed by the terms of that certain Loan and Security Agreement, dated August 7, 2009, by and among the Debtors, as borrowers, and Wells Fargo Bank, N.A., as successor in interest of Wachovia Bank, National Association, as lender, as the same may have been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date.

"**Pre-Petition Revolving Credit Facility Claim**" means any Claim arising under or related to the Pre-Petition Revolving Credit Facility and all other documents referred to therein or delivered in connection therewith.

"**Pre-Petition Term Loan Credit Agreements**" means, collectively, that certain (a) Term Loan Agreement (Tranche A Term Loans) dated as of August 7, 2009, among Journal Register Company, the lenders from time to time party thereto and JPMorgan Chase Bank, N.A., as administrative agent, and (b) Term Loan Agreement (Tranche B Term Loans) dated as of August 7, 2009, among Journal Register Company, the lenders from time to time party thereto and Wells Fargo Bank, N.A., as administrative agent, each as amended or modified from time to time.

"**Pre-Petition Term Loan Documents**" means the "Loan Documents" as defined in the Pre-Petition Term Loan Credit Agreements, and all other documents referred to therein or delivered in connection therewith.

"**Priority Non-Tax Claim**" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

"**Priority Tax Claim**" means a Claim of a "governmental unit" (as such term is defined in section 101(27) of the Bankruptcy Code) of the kind specified in, and entitled to priority under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"**Professional**" means a Person or Entity employed by the Debtors or the Committee pursuant to a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code.

"**Professional Fees**" means the fees for professional services rendered and expenses incurred in connection with such services by Professionals on and after the Petition Date and prior to and including the Effective Date.

"**Proof of Claim**" means a proof of Claim Filed against any of the Debtors in the Bankruptcy Cases.

"**Proponents**" means the Debtors and the Committee.

"**Pro Rata Share**" means, with reference to any Distribution on account of any Allowed Claim or Allowed Equity Interest, as applicable, in any Class, the ratio (expressed as a percentage) that the amount of such Allowed Claim or Allowed Equity Interest bears to the aggregate amount of Allowed Claims (and to the extent required for an interim Distribution, any reserve for Disputed Claims) or Allowed Equity Interests of the same Class.

"**Purchaser**" means 21st Century Media, Inc. (f/k/a 21st CMH Acquisition Co.), a Delaware corporation.

"**Purchaser Assumed Liabilities**" means the Assumed Liabilities as defined in section 2.3 of the Asset Purchase Agreement, including but not limited to all "Cure Amounts" (as defined in the Asset Purchase Agreement) with respect to "Assigned Contracts" (as defined in the Asset Purchase Agreement) and all of the Debtors' "Liabilities" (as defined in the Asset Purchase Agreement) under the Assigned Contracts, and any other Claim, debt, liability or obligation assumed by Purchaser in any order, stipulation or agreement.

"**Scheduled**" means an entry that appears on the Schedules.

"**Schedules**" means the schedules of assets and liabilities, schedules of executory contracts, and the statements of financial affairs Filed by each Debtor pursuant to section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time through the Confirmation Date in accordance with Bankruptcy Rule 1009.

"**Securities Act**" means the Securities Act of 1933, as amended.

"**TLA Agent**" means Wells Fargo Bank, N.A. in its capacity as successor administrative agent under that certain Term Loan Agreement (Tranche A Term Loans) dated as of August 7, 2009, among Journal Register Company, the lenders from time to time party thereto and JPMorgan Chase Bank, N.A., as administrative agent, as amended or modified from time to time.

"**TLB Agent**" means Wells Fargo Bank, N.A. in its capacity as administrative agent under that certain Term Loan Agreement (Tranche B Term Loans) dated as of August 7, 2009, among Journal Register Company, the lenders from time to time party thereto and Wells Fargo Bank, N.A., as administrative agent, as amended or modified from time to time.

"**TLA/TLB Deficiency Claims**" means the TLA/TLB Deficiency Claims as defined in Article IV.O. of the Plan.

"**TLA/TLB Lenders**" means the TLA/TLB Lenders as defined in Article IV.O. of the Plan.

"**TLA/TLB Secured Claim**" means any Claim arising under or related to the Pre-Petition Term Loan Documents to the extent such Claim is secured as determined pursuant to section 506(a) of the Bankruptcy Code.

"**Transition Services Agreement**" means that certain Transition Services Agreement, dated as of April 5, 2013, by and among the Purchaser and the Debtors.

"**Unimpaired**" means a Claim or Equity Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**"United States Trustee"** means the United States Trustee appointed under 28 U.S.C. § 581 to serve in the Southern District of New York.

**"Winddown Cash"** means the cash payment of $6,000,000 by Purchaser to Sellers as defined in section 3.1(a) of the Asset Purchase Agreement, the 2007 Tax Refund, and any other Cash payment made by Purchaser to the Debtors pursuant to the Asset Purchase Agreement.

## ARTICLE II.

## PAYMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III hereof.

### A.    Administrative Claims

1.    Except with respect to Administrative Claims that constitute Professional Fees or DIP Credit Agreement Claims (which are addressed in Article II.B. hereof) and except to the extent that a Holder of an Allowed Administrative Claim and the applicable Debtor or the Liquidating Trustee, as applicable, agree to less favorable treatment of such Holder, on, or as soon as reasonably practicable after (i) the Effective Date, if such Administrative Claim is an Allowed Administrative Claim as of the Effective Date, or (ii) the date on which such Administrative Claim becomes an Allowed Administrative Claim, each Holder of an Allowed Administrative Claim shall receive, in full settlement, satisfaction and release of, and in exchange for, such Allowed Administrative Claim, (a) Cash in an amount equal to the unpaid amount of such Allowed Administrative Claim or (b) such other treatment as may be agreed upon in writing by such Holder and the Debtors or the Liquidating Trustee, as applicable; provided, however, that the Liquidating Trustee shall be authorized to pay Allowed Administrative Claims that arise in the ordinary course of the Debtors' business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such ordinary course of business transactions.

2.    Notwithstanding anything in the Plan to the contrary, any Administrative Claims that constitute Purchaser Assumed Liabilities shall be deemed satisfied without the necessity of any further action by the Debtors, the Liquidating Trustee or order of the Bankruptcy Court and the Holders of such Administrative Claims shall not receive any Distributions pursuant to the Plan with respect to such Administrative Claims.  Any Holder of an Administrative Claim that constitutes a Purchaser Assumed Liability shall look solely to the Purchaser for payment or satisfaction of such Administrative Claim.

### B.    DIP Credit Agreement Claims

All DIP Credit Agreement Claims have been paid in full in Cash prior to the date hereof from the proceeds of the 363 Sale Transaction in full and final satisfaction, settlement, release, and discharge of such DIP Credit Agreement Claims.

C.        **Professional Fee Claims**

Notwithstanding any other provision of the Plan concerning Administrative Claims, any Professional seeking an award by the Bankruptcy Court of an Allowed Administrative Claim on account of Professional Fees incurred from the Petition Date through and including the Effective Date (i) shall, no later than sixty (60) days after the Effective Date, File a final application for allowance of compensation for services rendered and reimbursement of expenses incurred through and including the Effective Date and (ii) shall receive, as soon as reasonably practicable after such claim is Allowed, in full settlement, satisfaction and release of, and in exchange for, such Allowed Administrative Claim, Cash in an amount equal to the unpaid amount of such Allowed Administrative Claim in accordance with the Order allowing such Administrative Claim.

D.        **Priority Tax Claims**

On, or as soon as reasonably practicable after (i) the Effective Date, if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date, or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim against a Debtor shall receive, (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, (2) Cash in an amount agreed to by such Holder and the Debtors or the Liquidating Trustee, as applicable, provided that such parties may further agree for the payment of such Allowed Priority Tax Claim to occur at a later date without any further notice to or action, order, or approval of the Bankruptcy Court, or (3) at the sole discretion of the Liquidating Trustee, Cash in the aggregate amount of such Allowed Priority Tax Claim, payable in installment payments over a period not more than five years from the Petition Date with payment of interest at a rate agreed to by the Debtors or Liquidating Trustee, as applicable, and the Holder of such  Allowed Priority Tax Claim, or as determined by the Bankruptcy Court in accordance with section 511 of the Bankruptcy Code and applicable non-bankruptcy law.


**ARTICLE III.**

**CLASSIFICATION AND TREATMENT
OF CLASSIFIED CLAIMS AND EQUITY INTERESTS**

A.        **Summary**

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests that are required to be designated in classes pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.   In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and their treatment is set forth in Article II hereof.   Classification of Claims and Equity Interests in the Plan is for all purposes, including voting, confirmation and distribution pursuant to the Plan.

A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class only to the extent that any portion of such Claim or Equity Interest qualifies within the description of such different Class.   A Claim or Equity Interest is

placed in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled prior to the Effective Date. Notwithstanding any Distribution provided for in the Plan, no Distribution on account of any Claim or Equity Interest is required or permitted unless and until such Claim or Equity Interest becomes an Allowed Claim or Allowed Equity Interest, as the case may be, which might not occur, if at all, until after the Effective Date.

The classification of Claims and Equity Interests set forth herein shall apply separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have Holders of Claims or Equity Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Article III.D. hereof. For all purposes under the Plan, each Class will contain sub-Classes for each of the Debtors (i.e., there will be twenty-nine (29) sub-Classes in each Class and many of such sub-Classes may be vacant).

| Summary of Classification and Treatment of Classified Claims and Equity Interests | | | |
|---|---|---|---|
| Class | Claim | Status | Voting Rights |
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 2 | Pre-Petition Revolving Credit Facility Claims | Unimpaired | Deemed to Accept |
| 3 | TLA/TLB Secured Claims | Unimpaired | Deemed to Accept |
| 4 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 5 | 363 Sale Assumed & Assigned Claims | Impaired | Deemed to Reject |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Intercompany Claims | Impaired | Deemed to Accept |
| 8 | Equity Interests | Impaired | Deemed to Reject |

**B.      Classification and Treatment of Claims and Equity Interests**

1.      Class 1 – Priority Non-Tax Claims

(a)      *Classification*:  Class 1 consists of Priority Non-Tax Claims.

(b)      *Treatment*:  On or as soon as practicable after the Effective Date, each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash of its Allowed Priority Non-Tax Claim.

(c)      *Voting*:  Class 1 is Unimpaired and Holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Plan.

2.      Class 2 – Pre-Petition Revolving Credit Facility Claims

(a)      *Classification*:  Class 2 consists of Pre-Petition Revolving Credit Facility Claims.

(b)      *Treatment*:  All Pre-Petition Revolving Credit Facility Claims have been paid in full in Cash prior to the date hereof in full and final satisfaction, settlement, release, and discharge of such Pre-Petition Revolving Credit Facility Claims.

(c)    *Voting*:  Class 2 is Unimpaired and Holders of Pre-Petition Revolving Credit Facility Claims are conclusively presumed to have accepted the Plan.

3.    Class 3 – TLA/TLB Secured Claims

(a)    *Classification*:  Class 3 consists of TLA/TLB Secured Claims.

(b)    *Treatment*:  All TLA/TLB Secured Claims have been satisfied in full and released prior to the date hereof pursuant to the 363 Sale Transaction.

(c)    *Voting*:  Class 3 is Unimpaired and Holders of TLA/TLB Secured Claims are conclusively presumed to have accepted the Plan.

4.    Class 4 – Other Secured Claims

(a)    *Classification*:  Class 4 consists of Other Secured Claims.

(b)    *Treatment*:  The legal, equitable and contractual rights of the Holders of Allowed Other Secured Claims are unaltered by this Plan.  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, on or as soon as practicable after the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date an Other Secured Claim becomes an Allowed Claim, each Allowed Other Secured Claim shall receive treatment that renders such Claim not impaired pursuant to section 1124 of the Bankruptcy Code.

(c)    *Voting*:  Class 4 is Unimpaired and Holders of Other Secured Claims are conclusively presumed to have accepted the Plan.

5.    Class 5 – 363 Sale Assumed & Assigned Claims

(a)    *Classification*:  Class 5 consists of 363 Sale Assumed & Assigned Claims.

(b)    *Treatment*:  Except to the extent that an Allowed 363 Sale Assumed & Assigned Claim has been paid in full by the Purchaser prior to the Effective Date or as otherwise agreed to by a Holder of an Allowed 363 Sale Assumed & Assigned Claim and the Purchaser, each Holder of an Allowed 363 Sale Assumed & Assigned Claim shall receive, in full and final satisfaction of such Allowed 363 Sale Assumed & Assigned Claim, payment from the Purchaser in full in accordance with the Asset Purchase Agreement.  Holders of Allowed 363 Sale Assumed & Assigned Claims shall not receive any Distribution from the Estates or the Liquidating Trust Assets.

(c)    *Voting*:  Class 5 is Impaired and Holders of 363 Sale Assumed & Assigned Claims are deemed to have rejected the Plan.

6.    Class 6 – General Unsecured Claims

(a)    *Classification*:  Class 6 consists of General Unsecured Claims.

(b)     *Treatment*:  Each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Allowed General Unsecured Claim, its Pro Rata Share of the Liquidating Trust Assets after payment in full of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Other Secured Claims and the costs of administration of the Liquidating Trust.

(c)     *Voting*:  Class 6 is Impaired and Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

7.     Class 7 – Intercompany Claims

(a)     *Classification*:  Class 7 consists of Intercompany Claims.

(b)     *Treatment*:  Notwithstanding anything to the contrary herein, on or after the Effective Date, any and all Intercompany Claims will be adjusted, paid, continued, or discharged to the extent reasonably determined appropriate by the Liquidating Trustee.  Any such transaction may be effected on or subsequent to the Effective Date without any further order of the Bankruptcy Court.

(c)     *Voting*:  Pursuant to appropriate and necessary internal approvals and required corporate actions, the sole remaining officer and director of each Debtor has taken the steps needed such that the Holders of Intercompany Claims have agreed to their treatment under the Plan and are therefore deemed to have accepted the Plan.

8.     Class 8 – Equity Interests in the Debtors

(a)     *Classification*:  Class 8 consists of all Equity Interests in the Debtors.

(b)     *Treatment*:  Holders of Equity Interests in the Debtors shall neither receive nor retain any property under the Plan.  On the Effective Date, all Equity Interests in the Debtors shall be cancelled and of no further force or effect.

(c)     *Voting*: Class 8 is Impaired and Holders of Equity Interests in the Debtors are deemed to reject the Plan.

**C.     Non-Consensual Confirmation**

In the event that any Impaired Class of Claims entitled to vote does not accept the Plan by the requisite majorities required by section 1126(c) of the Bankruptcy Code, the Proponents reserve the right to (i) modify the Plan in accordance with Article XI.B. hereof and/or (ii) request that the Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code notwithstanding such lack of acceptance.

D.      **Elimination of Vacant Classes**

Any Class or sub-Class of Claims or Equity Interests that is not occupied as of the Confirmation Hearing Date by at least one Allowed Claim or Allowed Equity Interest, as applicable, or at least one Claim or Equity Interest, as applicable, temporarily Allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for purposes of (i) voting on the acceptance or rejection of the Plan and (ii) determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

E.      **Special Provision Governing Unimpaired Claims**

Except as otherwise expressly provided in the Plan, nothing in the Plan shall affect the Debtors' or Liquidating Trustee's rights in respect of any Unimpaired Claim, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      **Substantive Consolidation of the Debtors for Plan Purposes Only**

1.      Voting on the Plan shall be conducted on an entity-by-entity basis to ensure that the requirements for Confirmation have been met.  Entry of the Confirmation Order shall constitute approval, pursuant to sections 105(a) and 1123(a)(5) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Debtors' Estates solely for the purposes of confirming and consummating the Plan, including but not limited to voting, Confirmation and Distribution.  Accordingly, (a) the assets and liabilities of the Debtors will be deemed to be the assets and liabilities of a single, consolidated Entity, (b) each and every Claim filed or to be filed in the Bankruptcy Cases against any Debtor shall be considered filed against the consolidated Debtors and shall be considered one Claim against and obligation of the consolidated Debtors on and after the Effective Date, (c) all joint obligations of two or more Debtors, and all multiple Claims against such Entities on account of such joint obligations, are considered a single Claim against the Debtors and (d) all guaranties by any of the Debtors of the obligations of any Debtor arising prior to the Effective Date shall be deemed eliminated under the Plan so that any Claim against any Debtor and any guaranty thereof executed by any other Debtor and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the deemed consolidated Debtors.

2.      Such substantive consolidation of the Debtors' Estates, however, shall not (other than for purposes related to funding Distributions under the Plan) affect (a) the legal and organizational structure of the Debtors, (b) executory contracts or unexpired leases that were entered into during the Bankruptcy Cases or that have been or will be assumed or rejected, (c) any agreements entered into by the Liquidating Trust on the Effective Date and (d) the Debtors' or the Liquidating Trust's ability to subordinate or otherwise challenge Claims on an entity-by-entity basis.  Moreover, the Proponents reserve the right to seek confirmation of the Plan on an entity-by-entity basis.

3.      In the event the Bankruptcy Court authorizes the Debtors to substantively consolidate less than all of the Debtors' Estates: (a) the Plan shall be treated as a separate plan of liquidation for each Debtor not substantively consolidated and (b) the Debtors shall not be required to resolicit votes with respect to the Plan.

### B.      Vesting of Assets and Dissolution of the Debtors

1.      On the Effective Date, all of the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Claims, Equity Interests, liens, charges or other encumbrances, except as set forth in the Plan.

2.      As of the Effective Date, and without the need for any further order of the Bankruptcy Court, action, formality or payment of any fees which might otherwise be required under applicable non-bankruptcy laws, the Debtors shall be deemed dissolved without the need for any filings with the Secretary of State or other governmental official in each Debtor's respective state of incorporation; provided, however, that notwithstanding the dissolution of the Debtors, the Liquidating Trustee shall be authorized and empowered to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of and consummate the Plan.  Such dissolution of the Debtors shall be deemed to have occurred on a "bottom up" basis, with lower tier Debtor Entities being deemed to have dissolved before higher tier Debtor Entities.

### C.      Preservation of Causes of Action

1.      In accordance with section 1123(b) of the Bankruptcy Code, the Debtors and, after the Effective Date, the Liquidating Trustee on behalf of the Liquidating Trust, reserve the right to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date or the Confirmation Date, not expressly waived, relinquished, released, sold, compromised or settled under the Plan, the Asset Purchase Agreement or any Final Order ("collectively, the **"Released Actions"**), and the Debtors hereby reserve the right of the Liquidating Trust and the Liquidating Trustee, on behalf of the Liquidating Trust, to prosecute, administer, settle, litigate, enforce and liquidate such Causes of Action consistent with the terms and conditions of the Plan and the Liquidating Trust Agreement.

2.      The Liquidating Trustee shall, pursuant to section 1123 of the Bankruptcy Code and all applicable law, have the requisite standing to commence, pursue, prosecute, administer, settle, litigate, enforce and liquidate any and all Causes of Action (other than Released Actions). The Liquidating Trustee may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Liquidating Trust beneficiaries.  Any and all such Causes of Action (other than Released Actions) are expressly preserved for later adjudication.

3.      The Liquidating Trustee's rights to commence and prosecute Causes of Action (other than Released Actions) shall not be abridged or materially altered in any manner by reason of confirmation of the Plan.

**D.      The Liquidating Trust**

1.      Establishment and Administration of the Liquidating Trust

(a)      On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, among other things, (i) pursuing Causes of Action (other than Released Actions), if appropriate, (ii) administering the Liquidating Trust Assets, (iii) objecting to claims as may be appropriate and resolving all Disputed Claims, and (iv) making all Distributions from the Liquidating Trust as provided for in the Plan and the Liquidating Trust Agreement.  The Liquidating Trust Agreement is incorporated herein in full and is made a part of the Plan.  To the extent of any inconsistency between the terms of the Plan and the Liquidating Trust Agreement, the terms of the Plan shall control.

(b)      Upon execution of the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized to take all steps necessary to complete the formation of the Liquidating Trust; provided, that, prior to the Effective Date, the Debtors, the Committee or the Liquidating Trustee, as applicable, may act as organizers of the Liquidating Trust and take such steps in furtherance thereof as may be necessary, useful or appropriate under applicable law to ensure that the Liquidating Trust shall be formed and in existence as of the Effective Date.  The Liquidating Trust shall be administered by the Liquidating Trustee in accordance with the Liquidating Trust Agreement.

(c)      It is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and as a "grantor trust" within the meaning of Sections 671 through 679 of the Internal Revenue Code.  In furtherance of this objective, the Liquidating Trustee shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the Liquidating Trust.  All assets held by the Liquidating Trust on the Effective Date shall be deemed for federal income tax purposes to have been distributed by the Debtors on a Pro Rata Share basis to those Holders of Allowed Claims that are entitled to receive distributions from the Liquidating Trust, and then contributed by such Holders to the Liquidating Trust in exchange for the Liquidating Trust Interests.  All Holders shall use the valuation of the assets transferred to the Liquidating Trust as established by the Liquidating Trustee for all federal income tax purposes.  The beneficiaries under the Liquidating Trust will be treated as the deemed owners of the Liquidating Trust.  The Liquidating Trust will be responsible for filing information on behalf of the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

2.      Assets of the Liquidating Trust

On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors will transfer and assign to the Liquidating Trust all of their Assets, which shall be deemed vested in the Liquidating Trust and constitute Liquidating Trust Assets.  Any checks of the Debtors issued prior to the Effective Date that remain un-cashed three (3) months after the Confirmation Date shall revert to the Liquidating Trust.  The Liquidating Trust will hold and administer, among other things, (i) Cash in bank account(s) and (ii) the Disputed Claims Reserve.

3.      Rights and Powers of the Liquidating Trust and the Liquidating Trustee

(a)      The Liquidating Trustee shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all of the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the rights and powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules, and the right and power to (i) to take all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement; (ii) prosecute, settle, abandon or compromise any claims or Causes of Action (other than Released Actions); (iii) make Distributions contemplated by the Plan and the Liquidating Trust Agreement, (iv) establish and administer the Disputed Claims Reserve; (v) object to Claims and prosecute, settle, compromise, withdraw or resolve such objections in any manner approved by the Bankruptcy Court; (vi) employ and compensate professionals (including professionals previously retained by the Debtors and/or the Committee), provided, however, that any such compensation shall be made only out of the Liquidating Trust Assets; (vii) file all federal, state and local tax returns of the Debtors and the Liquidating Trust as may be necessary; (viii) take any action that may be necessary to confirm the dissolution of the Debtors; and (ix) seek entry of a final decree closing the Bankruptcy Cases.

(b)      The Liquidating Trustee shall have full authority to take any steps necessary to administer the Liquidating Trust Assets, including without limitation, the duty and obligation to liquidate the Liquidating Trust Assets, to make Distributions therefrom in accordance with the provisions of the Plan and to pursue, settle or abandon any Claims and Causes of Action all in accordance with the Plan and the Liquidating Trust Agreement.

(c)      The Debtors shall be deemed to have transferred to the Liquidating Trustee all of the Debtors' evidentiary privileges, including the attorney/client privilege, solely as they relate to Claims and Causes of Action transferred to the Liquidating Trust.  The Plan shall be considered a motion pursuant to sections 105, 363 and 365 of the Bankruptcy Code for such relief.  Upon such transfer, the Debtors and the Estates shall have no further rights or obligations with respect thereto.  Privileged communications may be shared among the Liquidating Trustee and its professionals without compromising the privileged nature of such communications.

4.      Liquidating Trust Interests

(a)      On the Effective Date, each Holder of an Allowed General Unsecured Claim shall, by operation of the Plan, receive its Pro Rata Share of the Liquidating Trust Interests.  Liquidating Trust Interests shall be reserved for Holders of General Unsecured Claims that are Disputed Claims and issued by the Liquidating Trust to, and held by the Liquidating Trustee, pending allowance or disallowance of such Claims.  No other Entity, shall have any interest, legal, beneficial, or otherwise, in the Liquidating Trust, its assets or Causes of Action upon the assignment and transfer of such assets to the Liquidating Trust.

(b)      The Liquidating Trust Interests shall be uncertificated and shall be non-transferable except upon death of the Holder or by operation of law.  Holders of Liquidating Trust Interests, in such capacity, shall have no voting rights with respect to such interests.

Subject to Article IV.D.6.(c) hereof, the Liquidating Trust shall have a term of five (5) years from the Effective Date, without prejudice to the rights of the Liquidating Trustee to extend such term conditioned upon the Liquidating Trust not becoming subject to the Securities Exchange Act of 1934 (as now in effect or hereafter amended).

     5.     Appointment of the Liquidating Trustee

     (a)     The Committee has appointed Ocean Ridge Capital Advisors, LLC as the Liquidating Trustee.  The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Liquidating Trust Agreement and the Plan. The Liquidating Trustee shall not be required to post a bond.

     (b)     The Liquidating Trustee may be terminated at any time in accordance with the provisions of the Liquidating Trust Agreement.

     (c)     The Liquidating Trustee and its professionals shall be exculpated and indemnified pursuant to and in accordance with the terms of the Liquidating Trust Agreement.

     6.     Liquidating Trust Distributions

     (a)     <u>Initial Distributions</u>.  On the Initial Distribution Date, the Liquidating Trustee shall make, or shall make an adequate reserve in the Disputed Claims Reserve for, the Distributions required to be made under the Plan to Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Other Secured Claims and Allowed General Unsecured Claims.  The Liquidating Trustee shall not make any distributions of Liquidating Trust Assets to the beneficiaries of the Liquidating Trust unless the Liquidating Trustee retains and reserves in the Disputed Claims Reserve such amounts as are reasonably necessary to satisfy amounts that would have been distributed in accordance with the Liquidating Trust Agreement in respect of Disputed Claims if the Disputed Claims were determined to be Allowed Claims immediately prior to such proposed distribution to the beneficiaries.

     (b)     <u>Interim Distributions</u>.  The Liquidating Trustee shall make interim Distributions of Cash to Holders of Allowed Claims (i) as and when determined by the Liquidating Trustee taking into account the costs of administering the Liquidating Trust and whether the amount to be distributed on a particular date is sufficient to justify the costs of effectuating such Distribution, and (ii) from the Disputed Claims Reserve in accordance with Article VII.D. hereof.

     (c)     <u>Final Distributions</u>.  The Liquidating Trust shall be dissolved and its affairs wound up and the Liquidating Trustee shall make the final Distributions, upon the earlier of (i) the date which is five (5) years after the Effective Date, and (ii) that date when, (A) in the reasonable judgment of the Liquidating Trustee, substantially all of the assets of the Liquidating Trust have been liquidated and there are no substantial potential sources of additional Cash for Distribution, and (B) there remain no substantial Disputed Claims. Notwithstanding the foregoing, on or prior to a date not less than six (6) months prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Liquidating Trust for one or more finite terms based upon the particular facts and circumstances present at

that time, if an extension is necessary to the liquidating purpose of the Liquidating Trust.  The date on which the final Distributions are made is referred to as the "Trust Termination Date".  On the Trust Termination Date, the Liquidating Trustee shall

(i)    make the final Distributions to the Holders of Allowed Claims in accordance with the Plan and the Liquidating Trust Agreement; and

(ii)    promptly thereafter, request that the Bankruptcy Court enter an order closing the Bankruptcy Cases (unless this has already been done).

(d)    Donation of Residual Funds.  After final Distributions have been made in accordance with the terms of the Plan and the Liquidating Trust Agreement and all expenses of the Liquidating Trust have been paid, if the amount of remaining Cash held by the Liquidating Trust is less than $30,000, the Liquidating Trustee may donate such amount to a charity acceptable to the Liquidating Trustee in its sole discretion, free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary.

7.    Liquidating Trust Reporting Requirement

The Liquidating Trustee will file an annual financial statement or similar report of the Liquidating Trust with the Bankruptcy Court within 60 days after the end of each calendar year and make such statement and/or report available to any Holder of Liquidating Trust Interests that requests it.

### E.    Abandonment, Disposal and/or Destruction of the Debtors' Unsold Records

The Liquidating Trustee shall be authorized pursuant to section 554 of the Bankruptcy Code, in its sole discretion without any further order or approval of the Bankruptcy Court, to abandon, dispose of, and/or destroy all originals and/or copies of any documents, books and records of the Debtors that are transferred to the Liquidating Trust and which the Liquidating Trustee determines are burdensome or of inconsequential value and benefit to the Liquidating Trust.

Notwithstanding the previous paragraph, records of the Journal Register Company Retirement Plan and employment records of the participants of the Journal Register Company Retirement Plan, shall be treated by the Liquidating Trustee on behalf of the Debtors' Estates, or the Purchaser, as applicable, in accordance with paragraph 35 of the 363 Sale Order.

### F.    Transition Services Agreement

Upon the Effective Date, the Debtors shall be deemed to have assigned the Transition Services Agreement and all of their rights and obligations thereunder to the Liquidating Trust.

### G.    Effective Date

1.    On the Effective Date, the Debtors shall File and serve a notice of Confirmation and occurrence of the Effective Date.  Such notice shall contain the deadline by which all parties will be required to File and serve any Proofs of Claim for damages arising out of the rejection of an Executory Contract pursuant to the Plan and for any unpaid Administrative Claims that have accrued between April 6, 2013 and the Effective Date.

2.      On the Effective Date, the authority, power and incumbency of the Persons then acting as directors and officers of the Debtors shall be terminated and such directors and officers shall be deemed to have resigned.

3.      On the Effective Date, all of the Equity Interests in the Debtors (including all instruments evidencing such Equity Interests) shall be canceled and extinguished without further action under any applicable agreement, law, regulation or rule.

4.      On the Effective Date, the Professionals for the Debtors shall be deemed to have completed their services unless they are retained by the Liquidating Trustee, but they shall be authorized to file final applications for reasonable compensation and reimbursement of expenses through the Effective Date as permitted by the Plan.

**H.      Operations of the Debtors Between the Confirmation Date and the Effective Date**

During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate their businesses as debtors in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

**I.      Term of Injunctions or Stays**

Unless otherwise provided herein, all injunctions or stays provided for in the Bankruptcy Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Bankruptcy Cases are closed.

**J.      Corporate Action**

The entry of the Confirmation Order shall constitute the approval of the authorization for the Debtors to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and any documents contemplated to be executed therewith, prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order rule or regulation.

**K.      Cancellation of Existing Agreements and Existing Common Stock**

On the Effective Date, except to the extent otherwise provided herein, all notes, stock, instruments, certificates, and other documents evidencing any Claims or Equity Interests shall be canceled, shall be of no further force, whether surrendered for cancellation or otherwise, and the obligations of the Debtors thereunder or in any way related thereto shall be discharged.

**L.      Authorization of Plan-Related Documentation**

1.      All documents, agreements and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Plan and any other agreement or document related to or entered into in connection with the Plan, shall become, and shall remain,

effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person (other than as expressly required by such applicable agreement).

2.    Any responsible officer or director of the Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### M.    Dissolution of Committee

The Committee shall continue in existence through and including the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code and shall perform such other duties as it may have been assigned by the Bankruptcy Court or in the Plan or the Confirmation Order prior to the Effective Date.  On the Effective Date, the Committee shall be deemed dissolved, and its members and Professionals shall be deemed released of all their duties, responsibilities and obligations in connection with the Bankruptcy Cases and the Plan and its implementation, and the retention or employment of the Committee's Professionals shall terminate; provided, however, that the Committee shall continue to exist after the Effective Date for the limited purpose of reviewing and filing any monthly fee statements, final fee applications or requests for expense reimbursement and any other matter expressly provided by the Plan or the Confirmation Order.  The Professionals for the Committee shall be entitled to reasonable compensation and reimbursement of actual, necessary and reasonable expenses for post-Effective Date activities authorized hereunder ten (10) days following the submission of invoices to the Liquidating Trustee for the applicable period, to be no less than monthly, without further order of the Bankruptcy Court; provided, however, that the Liquidating Trustee may object in writing to the reasonableness of the amounts in such invoices prior to the expiration of such ten (10) day period.  If the Liquidating Trustee makes such an objection and the parties do not resolve such dispute consensually, the Committee may seek approval of such amounts from the Bankruptcy Court upon no less than fourteen (14) days written notice to the Liquidating Trustee and the United States Trustee.

### N.    Exemption from Certain Fees and Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or similar tax in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Any sale of assets by the Liquidating Trust after Confirmation of the Plan shall be deemed to be a sale pursuant to the Plan and not subject to such tax to the fullest extent permitted by section 1146(a) of the Bankruptcy Code.

### O.    Waiver of TLA/TLB Deficiency Claims

Pursuant to section 2.6 of the Asset Purchase Agreement, the Purchaser and all of its Affiliates (as defined in the Asset Purchase Agreement) and parent Entities (collectively, with the Purchaser, referred to herein as the "**TLA/TLB Lenders**") agreed to waive all Claims against

the Debtors in excess of the Credit Bid Amount (as defined in the Asset Purchase Agreement) arising under, or otherwise relating to, the Pre-Petition Term Loan Documents (the "**TLA/TLB Deficiency Claims**"). Accordingly, (i) the TLA/TLB Lenders (including but not limited to Alden Global Distressed Opportunities Master Fund, L.P., Alden Global Value Recovery Master Fund, L.P. and Alden Global Capital, LLC) shall not receive any Distributions under the Plan as Holders of Class 6 General Unsecured Claims and (ii) any such Claims shall be deemed disallowed without the necessity of any further action by the Debtors or the Liquidating Trustee or further order of the Bankruptcy Court.

## ARTICLE V.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Rejection of Executory Contracts and Unexpired Leases

Unless specifically provided otherwise in the Plan, any Executory Contract which has not expired by its own terms on or prior to the Effective Date, been assumed, assumed and assigned, deemed rejected pursuant to section 365 of the Bankruptcy Code, or rejected with the approval of the Bankruptcy Court, or which the Debtors have obtained the authority to reject but have not rejected as of the Effective Date, and which is not the subject of a motion to assume pending as of the Effective Date, shall be deemed rejected by the Debtors effective as of the Confirmation Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

### B.    Rejection Damages Claims

Unless a different deadline has been fixed by order of the Bankruptcy Court entered on or before the Effective Date with respect to any Executory Contract, all Proofs of Claim for damages arising out of the rejection of an Executory Contract pursuant to the Plan or otherwise must be Filed with the Claims Agent and actually received no later than thirty (30) days after the Effective Date at the following address:

if by first-class mail:

Journal Register Company Claims Processing
c/o American Legal Claim Services, LLC
PO Box 23650
Jacksonville, FL 32241-3650

if by overnight mail or courier:
Journal Register Company Claims Processing
c/o American Legal Claim Services, LLC
5985 Richard Street, STE 3
Jacksonville, FL  32216

and a copy of any such Proof of Claim must also be served upon counsel for the Liquidating Trustee at its address set forth in Article XII.I. of the Plan. Any Claims covered by the preceding

sentence that are not Filed with the Claims Agent within thirty (30) days after the Effective Date shall be forever barred from assertion against the Debtors, their Estates, the Liquidating Trust, the Liquidating Trust Assets, and their respective properties and interests.

### C.    Indemnification Obligations

Any obligations of the Debtors pursuant to their corporate charters and bylaws or agreements, including amendments, entered into any time prior to the Effective Date, to indemnify, reimburse, or limit the liability of any Person or Entity pursuant to the Debtors' certificates of incorporation, bylaws, policy of providing employee indemnification, applicable state law, or specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against such Person or Entity based upon any act or omission related to such Person or Entity's service with, for, or on behalf of the Debtors prior to the Effective Date with respect to all present and future actions, suits, and proceedings relating to the Debtors shall continue as obligations of the Liquidating Trust only in accordance with this Article V.C., and shall survive Confirmation of the Plan, irrespective of whether any such defense, indemnification, reimbursement, or limitation of liability accrued or is owed in connection with an occurrence before or after the Petition Date; provided, however, that all monetary obligations under this Article V.C. shall be limited solely to available insurance coverage and neither the Liquidating Trust, the Liquidating Trustee nor any of the Liquidating Trust Assets shall be liable for any such obligations under any circumstance.  Any Claim based on the Debtors' obligations set forth in this Article V.C. shall not be subject to any objection by reason of section 502(e)(1)(B) of the Bankruptcy Code.  This Article V.C. shall not apply to or cover any Claims, suits or actions against a Person or Entity that result in a final order determining that such Person or Entity is liable for fraud, willful misconduct, gross negligence, bad faith, self-dealing or breach of the duty of loyalty.

## ARTICLE VI.

## PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Manner of Payment under the Plan

At the option of the Debtors or the Liquidating Trustee, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.  Cash payments made pursuant to the Plan in the form of checks issued by the Debtors or Liquidating Trustee shall be null and void if not cashed within 90 days of the date of the issuance thereof.  Requests for reissuance of any check shall be made directly to the Liquidating Trustee.  In the event that any final Distribution check is not cashed within 90 days after the date of issuance thereof, the Liquidating Trustee may, in its sole discretion, (i) distribute such amount on a pro rata basis to Holders of other Allowed Claims in accordance with the terms of the Plan, or (ii) donate such amount to a charity acceptable to the Liquidating Trustee, free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary.

### B.    Timing of Distributions

Except as otherwise provided herein or as may be ordered by the Bankruptcy Court, Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date and that are entitled to receive Distributions under the Plan shall be made on the Initial

Distribution Date. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. Distributions on account of Claims that become Allowed after the Effective Date shall be made pursuant to Article VII.D. of the Plan.

### C.    Distributions by Disbursing Agent

1.    The Liquidating Trustee, or the Entity or Entities chosen or retained by the Liquidating Trustee, shall serve as Disbursing Agent on behalf of each of the Estates (on and after the Effective Date) under the Plan and shall make all Distributions required under the Plan.

2.    The Disbursing Agent shall be empowered to (a) take all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated hereby, (c) employ professionals to represent it with respect to its responsibilities, and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

3.    Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the Disbursing Agent (including taxes and reasonable attorneys' fees and expenses) on and after the Effective Date shall be paid in Cash by the Liquidating Trust.

### D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions

Except as otherwise provided in the Plan, subject to Bankruptcy Rule 9010, all distributions to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth on the Schedules unless the Debtors or the Liquidating Trustee, as applicable, have been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such Holder that contains an address for such Holder different from the address reflected on the Schedules. In the event that any Distribution to any Holder is returned as undeliverable, the Liquidating Trustee shall use commercially reasonable efforts to determine the current address of such Holder, but no Distribution to such Holder shall be made unless and until the Liquidating Trustee has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, that such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code upon the expiration of the later of ninety (90) days after the Effective Date and the date such Distribution was returned as undeliverable. After such date, any such Distribution shall revert to the Liquidating Trust for distribution on account of other Allowed Claims, and the Claim of the Holder originally entitled to such Distribution shall be waived, discharged and forever barred.

### E.    Record Date for Distributions

As of the close of business on the Distribution Record Date, the transfer register for any Claims for the purpose of Distributions shall be closed, and there shall be no further changes in the record Holders of any Claims for purpose of Distributions under the Plan. The Liquidating Trustee will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute only to those Holders of

Allowed Claims that are Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date.

**F.      Allocation of Plan Distributions between Principal and Interest.**

To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the Distribution exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

**G.      Fractional Dollars; De Minimis Distributions**

Notwithstanding any other provision of the Plan to the contrary, (a) the Disbursing Agent shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down and (b) the Disbursing Agent shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $50,000, in which case such Distributions shall be deferred to the next Distribution date, (ii) if the amount to be distributed to a Holder on the particular Distribution date is less than $100.00, unless such Distribution constitutes the final Distribution to such Holder, or (iii) the amount of the final Distribution to the Holder of such Allowed Claim is less than $50.00, in which case such Distribution shall revert to the Liquidating Trust for distribution on account of other Allowed Claims.

**H.      No Distribution in Excess of Allowed Amount of Claim**

Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of such Claim any Distributions, which individually or in the aggregate, exceed the Allowed amount of such Claim.

**I.      Setoff and Recoupment**

The Debtors or the Liquidating Trust may, but shall not be required to, set off against, or recoup from any Allowed Claim (whether secured, administrative, priority, unsecured or other) and the payment or other Distribution to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever that the Debtors or the Liquidating Trust may have against the Holder of such Claim (including Causes of Action), but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Liquidating Trust of any such claim the Debtors or the Liquidating Trust may have against the Holder of such Claim.

**J.      Compliance with Tax Requirements**

In connection with the Plan and all Distributions hereunder, to the extent applicable, the Debtors or the Liquidating Trustee, as applicable, are authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions pursuant to the Plan shall be subject to any such withholding and reporting requirements.

The Disbursing Agent shall be authorized to require each Creditor to provide it with an executed Form W-9 or similar tax form as a condition precedent to being sent a Distribution.  If a

Holder of an Allowed Claim does not provide the Disbursing Agent with an executed Form W-9 or similar form within 45 days after mailing of a written request to (i) the address of such Holder as set forth on the Schedules, or (ii) such other address as the Debtors or the Liquidating Trustee, as applicable, have been notified of in writing, including, without limitation, by the filing of a Proof of Claim by such Holder that contains an address for such Holder different from the address reflected on the Schedules, such Holder shall be deemed to have forfeited the right to receive any Distribution under the Plan, any such Distribution shall revert to the Liquidating Trust for distribution on account of other Allowed Claims, and the Claim of the Holder originally entitled to such Distribution shall be waived, discharged and forever barred.

Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution.

K.      **Release of Liens**

Except as otherwise provided by Article III of the Plan or in any contract, instrument, release or other agreement or document created or assumed in connection with the Plan, on the Effective Date all mortgages, deeds of trust, liens, pledges or other security interests against the property of the Debtors' Estates, if any, shall be fully released and discharged, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, liens, pledges or other security interests shall revert to the applicable Estate.

L.      **Subordination**

1.      Preservation of Subordination Rights by Estates

Except as otherwise provided herein, all subordination rights and claims relating to the subordination by the Debtors or the Liquidating Trustee of any Allowed Claim shall remain valid, enforceable and unimpaired in accordance with section 510 of the Bankruptcy Code or otherwise.

2.      Waiver by Creditors of all Subordination Rights

Except as otherwise ordered by the Bankruptcy Court, each Holder of a Claim shall be deemed to have waived all contractual, legal and equitable subordination rights that they may have, whether arising under general principles of equitable subordination, section 510(c) of the Bankruptcy Code or otherwise, with respect to any and all Distributions to be made under the Plan, and all such contractual, legal or equitable subordination rights that each Holder has individually and collectively with respect to any such Distribution made pursuant the Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights will be permanently enjoined.

M.      **Indefeasible Distributions**

Any and all distributions made under the Plan shall be indefeasible and not subject to clawback.

## ARTICLE VII.

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### A.    Prosecution of Objections to Claims on and after the Effective Date

1.    On and after the Effective Date, objections to, and requests for estimation of any Claims may be interposed and prosecuted only by the Liquidating Trust and Liquidating Trustee. Such objections and requests for estimation shall be served on the respective claimant and filed with the Bankruptcy Court on or before the later of (a) one hundred eighty (180) days after the Effective Date and (b) such other date as may be fixed by the Bankruptcy Court upon a motion Filed by the Liquidating Trustee and served only upon the United States Trustee and any party that has Filed a notice of appearance and request for service of notices and papers on or after the Effective Date.

2.    On the Effective Date, all pending objections to and requests for estimation of any Claims will vest in the Liquidating Trust.

3.    The Liquidating Trustee shall be authorized to resolve all Disputed Claims by withdrawing or settling objections thereto, or by litigating to judgment in the Bankruptcy Court, or such other court having competent jurisdiction, the validity, nature, and/or amount thereof. If the Liquidating Trustee agrees with the Holder of a Disputed Claim to compromise, settle, and/or resolve a Disputed Claim by granting such Holder an Allowed Claim, then the Liquidating Trustee may compromise, settle, and/or resolve such Disputed Claim without Bankruptcy Court approval.

### B.    Estimation of Claims

The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Liquidating Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### C.    No Distributions Pending Allowance

Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such disputed portion; provided, however, that the Liquidating Trustee shall pay any undisputed portion of a

27

Disputed Claim in accordance with the terms of the Plan. To the extent that all or a portion of a Disputed Claim is disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is disallowed and any distribution withheld pending the resolution of such Claim shall be reallocated pro rata to the Holders of Allowed Claims in the same Class.

### D.    Distributions After Allowance

To the extent that a Disputed Claim becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan, Confirmation Order and Liquidating Trust Agreement. As soon as practicable after the date that an order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Liquidating Trustee shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under the Plan.

## ARTICLE VIII.

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND EFFECTIVE DATE OF THE PLAN

### A.    Condition Precedent to Confirmation

The Plan shall not be confirmed, and the Confirmation Date shall not be deemed to occur, unless and until the Confirmation Order, in form and substance satisfactory to the Proponents, has been entered on the docket maintained by the Clerk of the Bankruptcy Court.

### B.    Conditions Precedent to the Effective Date

The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions have been satisfied in full or waived by the Proponents in writing:

1.    The Confirmation Order, in form and substance satisfactory to the Proponents, shall be entered by the Bankruptcy Court, shall become a Final Order, shall be in full force and effect and shall not be subject to a stay or an injunction which would prohibit the transactions under the Plan;

2.    The Confirmation Order shall, among other things, provide that all transfers of property by the Debtors (a) to the Liquidating Trust (i) are or shall be legal, valid, and effective transfers of property, (ii) vest or shall vest the Liquidating Trust with good title to such property free and clear of all liens, charges, claims, encumbrances or interests, except as expressly provided in the Plan or Confirmation Order, (iii) do not and shall not constitute voidable transfers under the Bankruptcy Code or under applicable non-bankruptcy law, (iv) shall be exempt from stamp or other similar tax (which exemption shall also apply to the transfers by the Liquidating Trust) and (v) do not and shall not subject the Liquidating Trustee or Holders of Claims to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, including, without limitation, any laws affecting successor or transferee liability and (b) to Holders of Claims under the Plan are for good consideration and value;

3.      The final version of the Plan and any supplemental documents and exhibits contained therein shall have been Filed and in a form and substance satisfactory to the Proponents;

4.      All actions and transfers and all agreements, instruments, or other documents necessary to implement the terms and provisions of the Plan, including all transfers to the Liquidating Trust, shall have been effected or executed and delivered, as applicable, in form and substance satisfactory to the Proponents; and

5.      All authorizations, consents, and regulatory approvals, if any, required by the Proponents in connection with the consummation of the Plan shall have been obtained and not revoked.

## C.      Waiver of Conditions

Any of the conditions to Confirmation of the Plan and/or to the Effective Date set forth in Articles VIII.A. and VIII.B. hereof, other than entry of the Confirmation Order in form and substance satisfactory to the Proponents, may be waived with the express written consent of the Proponents without leave or order of the Bankruptcy Court, and without any formal action.

## D.      Satisfaction of Conditions

Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  If the Proponents determine that one of the conditions precedent set forth in Articles VIII.A. and VIII.B. of the Plan cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Proponents shall file a notice of the failure of the Effective Date with the Bankruptcy Court.

## E.      Effect of Nonoccurrence of Conditions

If each of the conditions to occurrence of the Effective Date set forth in Article VIII.B. has not been satisfied or duly waived on or before the first Business Day that is 180 days after the Confirmation Date, or such later date as shall be determined by the Debtors and the Committee, the Confirmation Order may be vacated by the Bankruptcy Court.  If the Confirmation Order is so vacated, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims or Equity Interests against any of the Debtors or a release of any claims or interests by the Debtors or the Estates.

## ARTICLE IX.

## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

## A.      Plan Injunction

To the fullest extent permitted by law, Confirmation of the Plan shall operate as an injunction against the commencement or continuation of any action, employment of process, or act to collect, offset, or recover a Claim against or Equity Interest in the Debtors' Assets and properties.  Except as otherwise expressly provided in the Plan or the Confirmation Order, all

Persons who have held, hold, or may hold Claims against, or Equity Interests in, any of the Debtors' Assets or properties shall be permanently enjoined, on and after the Confirmation Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest against the Debtors' Assets and property or the Liquidating Trust Assets, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against any of the Debtors' Assets or properties or the Liquidating Trust Assets on account of any such Claim or Equity Interest, and (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Debtors' Assets or properties or the Liquidating Trust Assets on account of any such Claim or Equity Interest.  The Bankruptcy Court shall have jurisdiction to determine and award damages for any violation of such injunction, including compensatory damages, professional fees and expenses, and exemplary damages for any willful violation of said injunction.  Notwithstanding anything to the contrary contained herein, because the Debtors are liquidating, no Debtor entity shall receive a discharge from Claims.

### B.    Exculpation

To the fullest extent permissible under section 1125(e) of the Bankruptcy Code, the Exculpated Parties shall neither have, nor incur, any liability to any Entity for any act taken or omitted to be taken in connection with, relating to, or arising out of, the Bankruptcy Cases, formulating, negotiating, soliciting, preparing, disseminating, implementing, confirming, or effecting the Consummation of the Plan, the Disclosure Statement, the Liquidating Trust Agreement, the administration of the Plan or the property to be distributed under the Plan or related to the issuance, distribution, and/or sale of any security, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan through and including the Confirmation Date; provided, however, that the foregoing shall not affect the liability of any Person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted fraud, willful misconduct, gross negligence, bad faith, self-dealing or breach of a duty of loyalty; provided further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan.

### C.    Releases by Debtors and Estates.

As of the Confirmation Date, the Debtors, their Estates, and any Person or Entity that claims or might claim through, on behalf of, or for the benefit of the Debtors or their Estates, shall, and shall be deemed to have, irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the TLA Agent, the TLB Agent, the TLA/TLB Lenders, Alden Global Distressed Opportunities Master Fund, L.P., Alden Global Value Recovery Master Fund, L.P., Alden Global Capital, LLC, 311 East Lancaster Avenue LLC, 500 Mildred Avenue LLC, 40 Sargent Drive LLC, and 20 Lake Avenue LLC and their respective current or former affiliates, officers, directors, general partners, limited partners, shareholders, employees, managers, parent(s), subsidiaries, predecessors, successors, assigns, members, insurers, accountants, attorneys, representatives and other agents, and any other Person or Entity acting on their behalf at any time prior to the Confirmation Date, and each officer, director or employee of the Debtors as of the Petition Date, in each case solely in their capacity as such, with respect to any act or omission relating to a Debtor which occurred prior to the Petition Date.

### D.        Releases by Holders of Claims

Each Person or Entity that casts a Ballot and does not elect to opt-out of the releases set forth in Article IX.D. of the Plan on such Person's or Entity's Ballot (each, a "**Releasing Party**"), for itself and its respective shareholders, officers, directors, managers, employees, members, agents, advisors, accountants, attorneys, representatives, successors, heirs, executors, administrators and assigns, in each case solely in their capacity as such, shall, solely in its capacity as a Holder, be deemed to have released the Debtors, the Committee, the TLA Agent, the TLB Agent, the TLA/TLB Lenders, Alden Global Distressed Opportunities Master Fund, L.P., Alden Global Value Recovery Master Fund, L.P., Alden Global Capital, LLC, 311 East Lancaster Avenue LLC, 500 Mildred Avenue LLC, 40 Sargent Drive LLC, and 20 Lake Avenue LLC and their respective current or former affiliates, officers, directors, general partners, limited partners, shareholders, employees, managers, parent(s), subsidiaries, predecessors, successors, assigns, members, insurers, accountants, attorneys, representatives and other agents, and any other Person or Entity acting on their behalf at any time prior to the Confirmation Date (each, a "**Released Party**"), in each case solely in their capacity as such, from any and all claims, Causes of Action, acts, facts, transactions, occurrences, statements or omissions that arise out of or relate in any way to the Bankruptcy Cases, the Debtors, the Plan, or the Disclosure Statement occurring at any time up to and including the Confirmation Date that such Person or Entity would have been legally entitled to assert.  The claims released under this paragraph are referred to herein as the "**Released Claims**."

Each Releasing Party shall be deemed to have acknowledged that they are aware that facts may be discovered in addition to or different from those that they now know or believe to be true with respect to the Bankruptcy Cases, the Debtors, the Debtors' contracts and agreements with any of the Lenders, the Plan, or the Disclosure Statement, but that it is their respective intention to, and they have fully, finally, and forever settled and released each Released Party from any and all Released Claims without regard to the possible subsequent discovery or existence of such additional or different facts.  For the avoidance of doubt, the Releasing Parties shall be deemed to expressly waive all rights under Section 1542 of the California Civil Code (or other similar statute, rule or provision), which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS/HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM/HER MUST HAVE MATERIALLY AFFECTED HIS/HER SETTLEMENT.

Each of the Releasing Parties shall be deemed to have expressly assumed the risk of the facts turning out to be different than they believe them to be, and agrees that the foregoing releases shall in all respects be effective and not subject to termination or rescission because of any such mistaken belief.  The Releasing Parties shall be deemed to have represented that each has read and understood the provisions of California Civil Code Section 1542.

Each of the Releasing Parties shall be deemed to acknowledge that fair consideration for the foregoing releases has been given by virtue of, among other things, the terms of the 363 Sale Transaction, the waiver of the TLA/TLB Deficiency Claims by the TLA/TLB Lenders pursuant

to the 363 Sale Transaction, and the cash and other consideration paid by the Purchaser pursuant to the 363 Sale Transaction, including but not limited to the Winddown Cash.

### E.    Special Provision Regarding Pension and Retirement Plans

Notwithstanding any provision of this Plan, the Disclosure Statement or the Confirmation Order to the contrary, including but not limited to the releases set forth in Article IX of the Plan, neither the Plan, the Disclosure Statement, or the Confirmation Order will (1) release, discharge or exculpate any party other than the Debtors with respect to "controlled group liability" owed to (a) the Journal Register Company Retirement Plan or the Pension Benefit Guaranty Corporation, or (b) the CWA/ITU Negotiated Pension Plan under the Employee Retirement Income Security Act of 1974, as amended, or the Internal Revenue Code or (2) release, discharge or exculpate any party for fiduciary breach related to the Journal Register Company Retirement Plan, or the CWA/ITU Negotiated Pension Plan; or (3) enjoin or prevent the Journal Register Company Retirement Plan, the CWA/ITU Negotiated Pension Plan and the Pension Benefit Guaranty Corporation from collecting any such liability from a liable party.

### ARTICLE X.

### RETENTION OF BANKRUPTCY COURT JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under or related to the Bankruptcy Cases for, among other things, the following purposes:

(a)    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

(b)    Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code;

(c)    Resolve any matters related to: (i) the assumption, assignment, or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an executory contract or unexpired lease, cure obligations pursuant to section 365 of the Bankruptcy Code, or any other matter related to such executory contract or unexpired lease; (ii) any potential contractual obligation under any executory contract or unexpired lease that is assumed and/or assigned and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

(d)    Ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and the Liquidating Trust Agreement;

(e)    Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(f)    Adjudicate, decide, or resolve any and all matters related to the Causes of Action, whether commenced before or after the Confirmation Date;

(g)    Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement or the Liquidating Trust Agreement;

(h)    Enter and enforce any order approving the sale of property pursuant to sections 363 or 1123 of the Bankruptcy Code;

(i)    Resolve any cases, controversies, suits, disputes, or causes of action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or the Liquidating Trust Agreement, or any Person or Entity's obligations incurred in connection with the Plan or the Liquidating Trust Agreement;

(j)    Issue injunctions, enter orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with Consummation or enforcement of the Plan or the Liquidating Trust Agreement;

(k)    Resolve any cases, controversies, suits, disputes, or causes of action with respect to, or enforce, the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article IX of the Plan;

(l)    Resolve any cases, controversies, suits, disputes, or causes of action with respect to the repayment or return of Distributions;

(m)    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(n)    Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust Agreement or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, the Disclosure Statement or Liquidating Trust Agreement;

(o)    Adjudicate any and all disputes arising from or relating to Distributions under the Plan or any transactions contemplated therein;

(p)    Consider any modifications of the Plan to cure any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(q)    Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order or the Liquidating Trust

Agreement, including disputes arising under agreements, documents, or instruments executed in connection with the Plan or the Liquidating Trust Agreement;

(r)     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(s)     Hear and determine any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(t)     Resolve any dispute regarding the valuation of the Liquidating Trust Assets;

(u)     Enforce all orders previously entered by the Bankruptcy Court;

(v)     Hear any other matter not inconsistent with the Bankruptcy Code; and

(w)     Enter an order closing the Bankruptcy Cases.

## ARTICLE XI.

## MODIFICATION AND REVOCATION OF THE PLAN

### A.     Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 6006(d) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, Liquidating Trust Agreement and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors and any and all Holders of Claims against or Equity Interests in the Debtors (regardless of whether the Holders of such Claims or Equity Interests are deemed to have accepted or rejected the Plan), all Persons and Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.  All Claims and debts shall be fixed, adjusted or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

### B.     Modification of the Plan

Subject to the restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Proponents expressly reserve their rights to alter, amend, or modify materially the Plan one or more times after Confirmation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, the Liquidating Trust Agreement or the Confirmation Order.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article XI.

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and prior to the Confirmation Date are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      Revocation or Withdrawal of the Plan

The Proponents reserve the right to revoke or withdraw the Plan with respect to one or more of the Debtors prior to the Confirmation Date and to file subsequent plans.  If the Proponents revoke or withdraw the Plan with respect to any Debtor, or if Confirmation or Consummation does not occur with respect to any Debtor, then with respect to such Debtor:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Equity Interest or Class of Claims or Equity Interests), assumption and  assignment or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Equity Interests; (b) prejudice in any manner the rights of the Debtors, the Committee or any other Person or Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

A.      Payment of Statutory Fees

All quarterly fees due and payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) and any interest accrued thereon pursuant to 31 U.S.C. § 3717 ("**UST Fees**") through the Effective Date shall be paid by the Debtors on or before the Effective Date.  After the Effective Date, the Liquidating Trustee shall pay, in accordance with the Bankruptcy Code and the Bankruptcy Rules, all UST Fees with respect to each Debtor that accrue after the Effective Date until the earlier of the dissolution of such Debtor or entry of a final decree closing such Debtor's Bankruptcy Case.  Any deadline for filing Administrative Claims shall not apply to UST Fees.

B.      Governing Law

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent a schedule or exhibit hereto or instrument, agreement or other document executed under the Plan provides otherwise, the Plan, the rights, duties and obligations arising under the Plan, and any claim or controversy directly or indirectly based upon or arising out of the Plan or the transactions contemplated by the Plan (whether based on contract, tort, or any other theory), including all matters of construction, validity and performance, shall be governed by and interpreted, construed and determined in accordance with, the internal laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction).

### C.    Corporate Action

Prior to, on and after the Effective Date, all matters provided for under the Plan that otherwise would require approval of the shareholders or directors of any of the Debtors shall be deemed to have occurred and shall be in effect prior to, on and after the Effective Date pursuant to the applicable general corporation law of the jurisdiction in which the Debtors are organized without any requirement of further action by the shareholders or directors of the Debtors.

### D.    Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court or other court of competent jurisdiction to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted.   Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### E.    Successors and Assigns

The Plan shall be binding on, and shall inure to the benefit of the Debtors, and their respective successors and assigns.  The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

### F.    Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Effective Date shall have occurred. Neither the filing of the Plan, any nor statement or provision contained herein, nor the taking of any action by the Debtors with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or the Committee prior to the Effective Date.  If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Bankruptcy Cases are and shall be reserved in full.  Any concessions or settlements reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Bankruptcy Cases shall be bound or deemed prejudiced by any such concession or settlement.

### G.    Further Assurances

The Debtors and the Liquidating Trustee are authorized to execute, deliver, file or record such contracts, agreements, instruments, releases and other documents and take or cause to be taken such action as may be necessary or appropriate to effectuate, implement and further evidence the terms, provisions and intent of the Plan and to consummate the transactions and transfers contemplated by the Plan.

H.        **Post-Effective Date Service List**

Following the Effective Date, unless otherwise provided herein, all pleadings and notices Filed in the Bankruptcy Cases shall be required to be served only upon (i) the Liquidating Trustee, (ii) the United States Trustee, (iii) any party whose rights are affected by the applicable pleading or notice, and (iv) any party that Files a notice of appearance and request for service of notices and papers on or after the Effective Date.

I.        **Other Notices**

All notices, requests and demands required or permitted to be provided to the Debtors, the Liquidating Trust, the Liquidating Trustee, the Committee or the Claims Agent under the Plan shall be in writing and shall be deemed to have been duly given or made (a) when actually delivered (i) by certified mail, return receipt requested, (ii) by hand delivery or (iii) by U.S. mail, postage prepaid or, (b) in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

*If to the Debtors:*

Bradley E. Scher
c/o Ocean Ridge Capital Advisors, LLC
56 Harrison St., Suite 203A
New Rochelle, NY  10801
Facsimile: (914) 931-5287

and

Morgan Lewis & Bockius LLP
101 Park Avenue
New York, NY  10178-0060
Attn:   Neil E. Herman, Esq.
           Patrick D. Fleming, Esq.
Facsimile: (212) 309-6001

and

Young Conaway Stargatt & Taylor, LLP
1270 Avenue of the Americas - Suite 2210
New York, New York 10020
Attn:   Michael R. Nestor, Esq.
           Kenneth J. Enos, Esq.
           Andrew L. Magaziner, Esq.
Facsimile: (212) 332-8855

*If to the Committee:*

Lowenstein Sandler LLP
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
Attn:    Gerald C. Bender, Esq.
         Michael Savetsky, Esq.
Facsimile: (212) 262-7402

***If to the Liquidating Trust or Liquidating Trustee:***
Ocean Ridge Capital Advisors, LLC
Attn: Bradley E. Scher
56 Harrison St., Suite 203A
New Rochelle, NY  10801
Facsimile: (914) 931-5287

***If to the Claims Agent:***
American Legal Claim Services, LLC
5985 Richard Street, STE 3
Jacksonville, FL 32216
Attn: Journal Register Company Claims Processing

### J.    Conflicts

To the extent any provision of the Disclosure Statement or any instrument, document or agreement executed in connection with the Plan or the Confirmation Order (or any exhibits, schedules, appendices, supplements or amendments to the foregoing) conflicts with or is in any way inconsistent with the terms of the Plan, the terms and provisions of the Plan shall govern and control.

### K.    Section 1145 Exemption

Under section 1145 of the Bankruptcy Code, the issuance of the Liquidating Trust Interests under the Plan shall be exempt from registration under the Securities Act and all applicable state and local laws requiring registration of securities.  If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

### L.    Determination of Tax Liability

The Liquidating Trustee is authorized, but not required, to request an expedited determination under section 505 of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through and including the Effective Date.

### M.    Post-Effective Date Fees and Expenses

From and after the Effective Date, the Liquidating Trustee, on behalf of the Liquidating Trust, shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Liquidating

Trust, and any professionals retained by such Liquidating Trust, related to Consummation and the implementation of the Plan, except as otherwise provided in the Liquidating Trust Agreement.

### N.        Entire Agreement

This Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations with respect to the subjects addressed herein, all of which have become merged and integrated into the Plan.

### O.        Closing of the Bankruptcy Cases

The Confirmation Order shall authorize the issuance of a final decree closing the Bankruptcy Cases pursuant to section 350 of the Bankruptcy Code and shall provide that upon the Effective Date the Bankruptcy Court will enter one or more order(s) directing the Clerk of the Bankruptcy Court to close the Bankruptcy Cases effective as of the Effective Date; provided, however, that the Bankruptcy Case of Pulp Finish 1 Company (f/k/a Journal Register Company) shall remain open until such time as the Liquidating Trustee makes a motion pursuant to Bankruptcy Rule 3022 and any applicable orders of the Bankruptcy Court to close such Bankruptcy Case.  Upon entry of the Confirmation Order, counsel for the Debtors shall submit proposed forms of order to the Bankruptcy Court to enter on the docket of each individual Debtor's Bankruptcy Case to close each such Bankruptcy Case effective as of the Effective Date, except for the Bankruptcy Case of Pulp Finish 1 Company (f/k/a Journal Register Company).

### P.        Change of Control Provisions

Any acceleration, vesting or similar change of control rights under any employment, benefit or other arrangements triggered by the Consummation of the Plan shall be waived or otherwise cancelled under the Plan.

### Q.        Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### R.        Administrative Claims Bar Date

1.        The bar date or last date for the filing of any request for payment of an Administrative Claim, other than for Professional Fees (which are addressed in Article II.C. of the Plan), for any unpaid Administrative Claims that may have accrued between April 6, 2013 and the Effective Date of the Plan shall be thirty (30) days after the Effective Date.  All requests for payment of an Administrative Claim must be Filed with the Claims Agent and actually received no later than thirty (30) days after the Effective Date at the following address:

if by first-class mail:
        Journal Register Company Claims Processing
        c/o American Legal Claim Services, LLC
        PO Box 23650
        Jacksonville, FL 32241-3650

if by overnight mail or courier:

> Journal Register Company Claims Processing
> c/o American Legal Claim Services, LLC
> 5985 Richard Street, STE 3
> Jacksonville, FL  32216

A copy of any request for payment of an Administrative Claim must also be served upon counsel for the Liquidating Trustee at its address set forth in Article XII.I. of the Plan.

      2.     Any party holding an Administrative Claim against the Debtors that accrued between April 6, 2013 and the Effective Date, other than for Professional Fees, that fails to timely File a request for payment of such Administrative Claim as required by Article XII.R.1. of the Plan, shall be, absent further order of the Bankruptcy Court, forever barred, estopped, and enjoined from asserting such Claim against any of the Debtors, their Estates, the Liquidating Trust or the Liquidating Trust Assets, and the Debtors, their Estates, the Liquidating Trust and the Liquidating Trust Assets shall be forever discharged from any and all liability with respect to such Claim.

      3.     Nothing in this Plan shall be deemed to extend or otherwise affect any other deadlines for filing Claims that were previously established by orders of the Bankruptcy Court.

### S.      Substitution of the Liquidating Trust for the Debtors

On the Effective Date, the Liquidating Trust shall be deemed to be substituted as the party in lieu of the Debtors in all pending matters including but not limited to (i) motions, contested matters and adversary proceeding pending in the Bankruptcy Court, and (ii) all matters pending in any courts, tribunals, forums or administrative proceedings outside of the Bankruptcy Court without the need or requirement for the Liquidating Trustee to file motions or substitutions of parties and counsel.

### T.      Preservation of Insurance.

Nothing in the Plan shall diminish or impair the enforceability of any policies of insurance that may cover claims or causes of action against any Debtor or any other Entity.

### U.      Asset Purchase Agreement

Nothing herein shall be deemed to modify the provisions of the Asset Purchase Agreement or the 363 Sale Order.

### V.      Claims Agent

The Claims Agent shall continue to serve on and after the Effective Date at the direction and discretion of the Liquidating Trustee and shall be compensated upon any reasonable terms and conditions agreed to between the Liquidating Trustee and the Claims Agent (which compensation may but need not be different from that previously paid by the Debtors), without the need for further Bankruptcy Court authorization or approval; provided, however, that the Bankruptcy Court shall retain jurisdiction over any disputes related to payment of any fees claimed by the Claims Agent.  The Liquidating Trustee may terminate the Claims Agent in its sole discretion without the need for approval by or further order of the Bankruptcy Court.

### W.    No Discharge

No Debtor will receive a discharge under the Plan in accordance with section 1141(d)(3) of the Bankruptcy Code.

Dated: June 24, 2013

PULP FINISH 1 COMPANY AND EACH OF
THE OTHER DEBTORS AS DEFINED HEREIN

By:  */s/ Bradley E. Scher*
Name:  Bradley E. Scher
Title:    President and Chief Restructuring Officer

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF JOURNAL REGISTER
COMPANY, *et al.*

By: */s/ William D. Ross*
Name:  William D. Ross
        Communications Workers of America
        Local 38010
Title:   Committee Co-Chair

By:  */s/ Craig Yamaoka*
Name:  Craig Yamaoka
        Pension Benefit Guaranty Corporation
Title:   Committee Co-Chair

## **Exhibit A**

**LIQUIDATING TRUST AGREEMENT**

## LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (the **"Agreement")** dated as of June 24, 2013, but effective as of the Effective Date of the Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors, dated June 24, 2013, as it may be altered, amended, modified, revised or supplemented from time to time (the **"Plan"**),[1] is entered into by and among Pulp Finish 1 Company (f/k/a Journal Register Company), Register Company, Inc., Chanry Communications Ltd., Pennysaver Home Distributions Corp., All Home Distribution Inc., JR East Holdings, LLC (N/A), Journal Register East, Inc., Journal Company, Inc., JRC Media, Inc., Orange Coast Publishing Co., St. Louis Sun Publishing Co., Middletown Acquisition Corp., JiUS, Inc., Journal Register Supply, Inc., Northeast Publishing Company, Inc., Hometown Newspapers, Inc., The Goodson Holding Company, Acme Newspapers, Inc., Pulp Finish 3 Company (f/k/a 21st Century Newspapers, Inc.), Morning Star Publishing Company, Heritage Network Incorporated, Independent Newspapers, Inc., Voice Communications Corp., Pulp Finish 2 Company (f/k/a Digital First Media Inc.), Great Lakes Media, Inc., Up North Publications, Inc., Greater Detroit Newspaper Network, Inc., Great Northern Publishing, Inc., and Saginaw Area Newspapers, Inc., the debtors and debtors in possession (collectively, the **"Debtors")** in the Bankruptcy Cases, and Ocean Ridge Capital Advisors, LLC as Liquidating Trustee, in accordance with the Plan.

## RECITALS

(A)    On September 5, 2012, each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  The Debtors have continued to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

(B)    On September 10, 2012, the Bankruptcy Court entered an order granting joint administration of the Debtors' Bankruptcy Cases.

(C)    On September 13, 2012, the Office of the United States Trustee for the Southern District of New York appointed the Committee.

(D)    Pursuant to an order dated March 27, 2013, the Bankruptcy Court authorized the sale of substantially all of the Debtors' assets to 21st Century Media, Inc. (f/k/a 21st CMH Acquisition Co.).

(E)    On [_____], 2013, the Bankruptcy Court entered the Confirmation Order, which confirmed the Plan.

(F)    The Plan provides for the creation of a post-confirmation Liquidating Trust to hold and administer the Liquidating Trust Assets and to make Distributions therefrom to the Liquidating Trust Beneficiaries, in accordance with the terms of this Agreement and the Plan. This Agreement is executed to establish the Liquidating Trust and to facilitate the Plan.

(G)    The Liquidating Trust is created on behalf of, and for the benefit of, the Liquidating Trust Beneficiaries.

---

[1] Capitalized terms used but not defined in this Agreement shall have the meanings set forth in the Plan.

(H)    The respective powers, authority, responsibilities and duties of the Liquidating Trustee shall be governed by this Agreement, the Plan, the Confirmation Order and any other applicable orders issued by the Bankruptcy Court.

(I)    This Agreement is intended to supplement, complement and implement the Plan; provided, however, that if any of the terms and/or provisions of this Agreement conflict with the terms and/or provisions of the Plan, then the Plan shall govern.

(J)    The Liquidating Trust is intended to qualify as a "liquidating trust" under the Internal Revenue Code of 1986 as amended (the "IRC") and the regulations promulgated thereunder, specifically Treas. Reg. § 301.7701-4(d), and as a "grantor trust" for federal income tax purposes pursuant to IRC Sections 671 through 679, with the Liquidating Trust Beneficiaries to be treated as the grantors and deemed owners of the Liquidating Trust.

(K)    The Liquidating Trust is organized for the primary purpose of liquidating the Liquidating Trust Assets, with no objective to conduct a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. The Liquidating Trust shall not be deemed a successor-in-interest of the Debtors or their Estates for any purpose other than as specifically set forth in the Plan or in this Agreement.

(L)    This Agreement provides that the Liquidating Trust Beneficiaries will be treated as the grantors and deemed owners of the Liquidating Trust Assets, and, further, requires the Liquidating Trustee to file returns for the Liquidating Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a).

(M)    This Agreement provides for consistent valuations of the Liquidating Trust Assets by the Liquidating Trustee and the Liquidating Trust Beneficiaries, and those valuations shall be used for all federal income tax purposes.

(N)    The transfer of the Liquidating Trust Assets to the Liquidating Trust shall be treated as a deemed transfer of those assets from the Debtors to the Liquidating Trust Beneficiaries, followed by a deemed transfer by such Liquidating Trust Beneficiaries to the Liquidating Trust for federal income tax purposes.

(O)    All of the Liquidating Trust's income is to be treated as subject to tax on a current basis to the Liquidating Trust Beneficiaries who will be responsible for payment of any tax due.

(P)    The investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the Liquidating Trust Assets and to further the liquidating purpose of the Liquidating Trust, shall be limited to the right and power to invest such Liquidating Trust Assets (pending distributions in accordance with the Plan and this Agreement) in Permissible Investments; provided, however, that the scope of any such Permissible Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise.

**NOW, THEREFORE**, pursuant to the Plan and the Confirmation Order and in consideration of the promises and the mutual covenants and agreements contained herein and in

the Plan, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree as follows:

## ARTICLE I
## DEFINITIONS

The following terms shall have the following meanings when used in capitalized form herein:

**"Administrative Claim"** shall mean a Claim for payment of an administrative expense of a kind specified in Bankruptcy Code section 503(b) (including section 503(b)(9)) and entitled to priority in payment under Bankruptcy Code sections 507(a)(2), 507(b) or 1114(e)(2), including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) any Professional Fees incurred through and including the Effective Date; (c) DIP Credit Agreement Claims; (d) all fees and charges assessed against the Estates under Chapter 123 of title 28 of the United States Code, sections 1911-30; and (e) obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court.

**"Agreement"** shall have the meaning ascribed to such term in the first paragraph of this Agreement.

**"Allowed"** shall mean, with reference to any Claim, except as otherwise provided in the Plan:

(a) a Claim that has been Filed against or Scheduled by a Debtor in its Schedules as other than disputed, contingent or unliquidated and as to which such Debtor, the Liquidating Trustee or any other party in interest has not timely Filed an objection in accordance with Article VII.A. of the Plan;

(b) a Claim that has been allowed by a Final Order;

(c) a Claim that is allowed (i) in any stipulation with a Debtor concerning the amount and nature of such Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court upon proper notice to the Debtors and other parties in interest; (ii) in any stipulation with a Debtor or the Liquidating Trustee concerning the amount and nature of such Claim executed on or after the Confirmation Date and, to the extent necessary, approved by the Bankruptcy Court or (iii) in any contract, instrument, indenture or other agreement entered into or assumed pursuant to the Plan;

(d) a Claim relating to a rejected executory contract or unexpired lease that (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a Proof of Claim has been timely Filed in accordance with Article V.B. of the Plan or has otherwise been deemed timely Filed under applicable law;

(e) a Claim that is deemed allowed by the Liquidating Trustee at any time in its reasonable but sole discretion; or

(f) a Claim that is allowed pursuant to the terms of the Plan;

provided, however, unless otherwise specified in the Plan or by order of the Bankruptcy Court, the term "Allowed Claim" shall not, for any purpose under the Plan, include interest, penalties, premiums or late charges on such Claim from and after the Petition Date.

**"Asset Purchase Agreement"** shall mean that certain Amended and Restated Asset Purchase Agreement, dated as of December 19, 2012, among the Debtors and the Purchaser, as the same may have been amended from time to time.

**"Avoidance Actions"** shall mean (a) any and all actions that are Filed or that may be Filed pursuant to sections 544, 545, 547, 548, 550, and 551 of the Bankruptcy Code, or applicable non-bankruptcy law that may be incorporated or brought under the foregoing sections of the Bankruptcy Code; or (b) any other similar actions or proceedings filed to recover property for or on behalf of the Estates or to avoid a lien or transfer.

**"Bankruptcy Cases"** shall mean, collectively, the Debtors' bankruptcy cases under chapter 11 of the Bankruptcy Code pending in the Bankruptcy Court and jointly administered under Case No. 12-13774.

**"Bankruptcy Code"** shall mean title I of the Bankruptcy Reform Act of 1978, as amended from time to time, as codified in title 11 of the United States Code, sections 101-1532 and applicable portions of titles 18 and 28 of the United States Code.

**"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the Southern District of New York.

**"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms and the Local Bankruptcy Rules of the Bankruptcy Court, each as amended from time to time, as applicable to the Bankruptcy Cases.

**"Business Day"** shall mean any day, other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or any other day on which commercial banks in New York State are required to close.

**"Cash"** shall mean legal tender of the United States of America and equivalents thereof.

**"Causes of Action"** shall mean all of the Debtors' actions, causes of action, objections to claims, rights of setoff, choses in action, liabilities, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, Avoidance Actions, counterclaims, and crossclaims, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Bankruptcy Cases, through and including the Effective Date; provided, however, that the term Causes of Action shall not include any rights, claims or causes of action sold to the Purchaser pursuant to the Asset Purchase Agreement.

**"Claim"** or **"Claims"** shall mean a "claim" against a Debtor, as defined in section 101(5) of the Bankruptcy Code, whether or not asserted.

**"Class"** shall mean each category or group of Holders of Claims or Equity Interests that has been designated as a class in Article III of the Plan.

**"Committee"** shall mean the Official Committee of Unsecured Creditors appointed in the Bankruptcy Cases.

**"Confidential Party"** or **"Confidential Parties"** shall have the meanings set forth in Section 17.4 hereof.

**"Confirmation Date"** shall mean the date of entry of the Confirmation Order on the docket of the Bankruptcy Cases within the meaning of Bankruptcy Rules 5003 and 9021.

**"Confirmation Order"** shall mean the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**"Debtors"** shall have the meaning ascribed to such term in the first paragraph of this Agreement.

**"Disbursing Agent"** shall mean the Liquidating Trustee, or the Person or Entity chosen or retained by the Liquidating Trustee to make or facilitate Distributions pursuant to the Plan.

**"Disputed Claim"** shall mean a Claim or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, and in relation to a Class, a Disputed Claim in the particular Class described.

**"Distribution"** shall mean the distributions to be made in accordance with the Plan of, as the case may be: (a) Cash or (b) any other consideration or residual value distributed to Holders of Allowed Claims under the terms and provisions of the Plan.

**"Distribution Date"** shall mean any date on which a Distribution is made pursuant to the Plan and this Agreement.

**"Distribution Record Date"** shall mean the record date for the purpose of determining Holders of Allowed Claims entitled to receive Distributions under the Plan on account of such Allowed Claims, which date shall be ten (10) Business Days prior to the Confirmation Hearing Date originally scheduled by the Bankruptcy Court in the Disclosure Statement Approval Order.

**"Equity Interest"** shall mean, with respect to a Debtor, as of the Petition Date, any capital stock or other ownership interest in such Debtor, whether or not transferable, and any option, call, warrant or right to purchase, sell or subscribe for an ownership interest or other equity security in such Debtor, and any redemption, conversion, exchange, voting, participation, dividend rights, and liquidation preferences relating to such capital stock or other ownership interest.

**"Effective Date"** shall mean that date following the Confirmation Date on which all conditions to consummation of the Plan shall have been satisfied or waived as provided in Article

VIII.B. and Article VIII.C. of the Plan.

**"Entity"** shall mean an "entity," as defined in section 101(15) of the Bankruptcy Code.

**"Estate(s)"** shall mean the estates of each of the Debtors created by section 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Cases on the Petition Date.

**"File"** or **"Filed"** shall mean file or filed on the Bankruptcy Court's docket or with the Bankruptcy Court for the Bankruptcy Cases or, in the case of a Proof of Claim, file or filed with the Claims Agent.

**"Final Order"** shall mean an order of the Bankruptcy Court (a) as to which the time to appeal, petition for certiorari, or move for reargument, rehearing or new trial has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, rehearing or new trial shall then be pending; (b) as to which any right to appeal, petition for certiorari, reargue, rehear or retry shall have been waived in writing; or (c) in the event that an appeal, writ of certiorari, reargument, rehearing or new trial has been sought, as to which (i) such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order is appealed, (ii) certiorari has been denied as to such order, or (iii) reargument or rehearing or new trial from such order shall have been denied, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing or new trial shall have expired without such actions having been taken.

**"Governmental Unit"** shall have the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

**"Holder"** or **"Holders"** shall mean any Entity holding a Claim, an Equity Interest or a Liquidating Trust Interest.

"**IRS**" shall mean the Internal Revenue Service.

**"Liquidating Trust"** shall mean this liquidating trust established by the Plan, as described in Article IV.D. of the Plan and this Agreement.  With respect to any action required or permitted to be taken by the Liquidating Trust, the term "Liquidating Trust" includes the Liquidating Trustee or any other person authorized to take such action in accordance with this Agreement.

**"Liquidating Trust Assets"** shall mean all property and Assets of the Debtors and their Estates transferred, conveyed and assigned, pursuant to the Plan, by the Debtors to the Liquidating Trust as of the Effective Date.

**"Liquidating Trust Beneficiaries"** shall mean the Holders of Liquidating Trust Interests. All references to the Liquidating Trust Beneficiaries in this Agreement shall be deemed to be references to the respective interests of each of the Liquidating Trust Beneficiaries.

**"Liquidating Trust Interests"** shall mean the uncertificated beneficial interests in the Liquidating Trust representing the right of each Holder of an Allowed Claim to receive distributions from the Liquidating Trust in accordance with the Plan.

"**Liquidating Trust Protected Parties**" shall mean, collectively the Liquidating Trust, the Liquidating Trustee, and each of their members, designees, agents, professionals, employees, managers, partners, actuaries, financial advisors, investment bankers, and attorneys.

"**Parties**" shall mean the Debtors and the Liquidating Trustee.

"**Permissible Investments**" shall mean (a) short-term direct obligations of, or obligations guaranteed by, the United States of America, (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof, (c) demand deposits or certificates of deposit at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000, or (d) such other investments as the Bankruptcy Court may approve from time to time.

"**Petition Date**" shall mean September 5, 2012.

"**Professional**" shall mean a Person or Entity employed by the Debtors or the Committee pursuant to a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code.

"**Purchaser**" shall mean 21st Century Media, Inc. (f/k/a 21st CMH Acquisition Co.), a Delaware corporation.

"**Schedules**" shall mean the schedules of assets and liabilities, schedules of executory contracts, and the statements of financial affairs Filed by each Debtor pursuant to section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time through the Confirmation Date in accordance with Bankruptcy Rule 1009.

"**Trustee Professional**" shall have the meaning set forth in Section 14.1(a) hereof.

"**Trustee Non-Professional**" shall have the meaning set forth in Section 14.1(b) hereof.

## ARTICLE II
## NAME OF TRUST AND LIQUIDATING TRUSTEE

2.1    Name of the Liquidating Trust

The Liquidating Trust established hereby shall be known as the "Pulp Finish Liquidating Trust".

2.2    Liquidating Trustee

Ocean Ridge Capital Advisors, LLC is hereby appointed to serve as the initial Liquidating Trustee under the Plan, and hereby accepts this appointment and agrees to serve in such capacity effective upon the Effective Date of the Plan and pursuant to the terms of the Plan and this Agreement. A successor Liquidating Trustee shall be appointed as set forth in Section 11.1 hereof

in the event the Liquidating Trustee is removed or resigns pursuant to this Agreement or if the Liquidating Trustee otherwise vacates the position.

## ARTICLE III
## DUTIES AND POWERS OF THE LIQUIDATING TRUSTEE

3.1.    Generally

Except as otherwise provided in this Agreement, the Plan or the Confirmation Order, the Liquidating Trustee shall control and exercise authority over the Liquidating Trust Assets and shall be responsible for liquidating and administering (or abandoning, as the case may be) the Liquidating Trust Assets and taking actions on behalf of, and representing, the Liquidating Trust. The Liquidating Trustee shall have the authority to bind the Liquidating Trust within the limitations set forth herein, but shall for all purposes hereunder be acting in the capacity of Liquidating Trustee and not individually.

3.2.    Scope of Authority of Liquidating Trustee

Within the limitations set forth herein, the responsibilities and authority of the Liquidating Trustee shall include, without limitation: (a) administering the Liquidating Trust Assets, (b) establishing and maintaining any reserves for Claims that the Liquidating Trustee may determine to be necessary or appropriate; (c) conducting an analysis of Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Other Secured Claims, General Unsecured Claims and Intercompany Claims and prosecuting objections thereto or settling or otherwise compromising such Claims if necessary or appropriate in accordance with Article VII of the Plan, (d) retaining such professionals as are necessary and appropriate in furtherance of its fiduciary obligations, (e) taking such actions as are necessary to prosecute, resolve or compromise, as appropriate, all Causes of Action, (f) facilitating the prosecution or settlement of objections to or estimations of Claims asserted against the Liquidating Trust or the Liquidating Trust Assets, (g) calculating and implementing Distributions to the Liquidating Trust Beneficiaries in accordance with the Plan and this Agreement, (h) withholding from the Distributions such amount as may be sufficient to pay any tax or other charge which the Liquidating Trustee has determined may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof, (i) entering into any agreement or executing any document or instrument required by or consistent with the Plan, the Confirmation Order, or this Agreement and performing all obligations thereunder, (j) filing all required tax and information returns for the Liquidating Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a) and making all tax elections for and on behalf of the Liquidating Trust, (k) paying all lawful expenses, debts, charges, taxes and liabilities of the Liquidating Trust, (l) taking or causing to be taken any and all actions that may be necessary to confirm the dissolution of the Debtors in accordance with the Plan, (m) receiving reasonable compensation for performing services as Liquidating Trustee in accordance with this Agreement and paying the reasonable fees, costs and expenses of any professionals retained by the Liquidating Trustee in accordance with the applicable provisions of this Agreement, (n) implementing, enforcing, or discharging all of the terms, conditions, and all other provisions of, and all duties and obligations under, the Plan, the Confirmation Order, and this Agreement, (o) undertaking all administrative functions remaining in the Bankruptcy Cases, including the ultimate closing of the Bankruptcy Cases, and (p) carrying out such other responsibilities not specifically

set forth herein as may be vested in the Liquidating Trustee pursuant to the Plan, this Agreement, any order of the Bankruptcy Court, or as the Liquidating Trustee deems necessary and proper to carry out the provisions of the Plan or this Agreement.

    3.3.    <u>Additional Powers of Liquidating Trustee</u>

In connection with the administration of the Liquidating Trust, subject to and except as otherwise set forth in this Agreement or the Plan, the Liquidating Trustee is hereby authorized to perform those acts necessary to accomplish the purposes of the Liquidating Trust. Without limiting, but subject to, the foregoing, the Liquidating Trustee, as applicable, shall be authorized, in its sole discretion, and subject to the limitations contained herein and in the Plan to:

    (a)    hold legal title (on behalf of the Liquidating Trust as Liquidating Trustee, but not individually) to the Liquidating Trust Assets, including, but not limited to, the Causes of Action and the right to vote any claim or interest held by the Liquidating Trust in any case or proceeding under the Bankruptcy Code or otherwise and to receive any distribution therein, in each case, on any terms and conditions as he or she may determine in good faith based on the best interests of the Liquidating Trust Beneficiaries;

    (b)    protect and enforce the rights to the Liquidating Trust Assets vested in the Liquidating Trust by the Plan by any method deemed appropriate in its sole discretion, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

    (c)    invest funds (in the manner set forth in Section 3.7 hereof), make distributions and pay any other obligations owed by the Liquidating Trust from the Liquidating Trust Assets as provided herein and in the Plan;

    (d)    prosecute, defend, compromise, adjust, arbitrate, abandon, estimate, or otherwise deal with and settle, in accordance with the terms set forth in Article VI hereof, Claims against the Liquidating Trust or the Liquidating Trust Assets;

    (e)    pay expenses and make disbursements necessary to preserve, liquidate, and enhance the Liquidating Trust Assets;

    (f)    purchase such insurance coverage as the Liquidating Trustee, in its sole discretion, deems necessary and appropriate with respect to the liabilities and obligations of the Liquidating Trustee (in the form of an errors and omissions policy, fiduciary policy or otherwise);

    (g)    purchase such insurance coverage as the Liquidating Trustee, in its sole discretion, deems necessary and appropriate with respect to real and personal property which may be or may become Liquidating Trust Assets;

    (h)    retain and pay, as applicable, professionals as provided in, and subject to the terms of, this Agreement;

    (i)    settle, in its sole discretion, and without Bankruptcy Court approval, any and all Disputed Claims;

(j)    incur any reasonable and necessary expenses in liquidating and converting the Liquidating Trust Assets to Cash, or otherwise administering the Liquidating Trust, as set forth in the Plan or this Agreement; and

(k)    assume such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or this Agreement.

3.4.    General Authority of the Liquidating Trustee

Unless specifically stated otherwise herein, the Liquidating Trustee shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction (a) authorized in this Agreement or (b) specifically contemplated in the Plan.

3.5.    Limitation of Liquidating Trustee's Authority; No On-Going Business

(a)    The Liquidating Trustee shall have no power or authority except as set forth in this Agreement or in the Plan.

(b)    For federal tax purposes, the Liquidating Trustee shall not be authorized to engage in any trade or business with respect to the Liquidating Trust Assets or any proceeds therefrom except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. The Liquidating Trustee shall take such actions consistent with the prompt orderly liquidation of the Liquidating Trust Assets as required by applicable law and consistent with the treatment of the Liquidating Trust as a liquidating trust under Treas. Reg. § 301.7701-4(d), to the extent such actions are permitted by this Agreement. The Liquidating Trustee shall not take, or fail to take, any action that would jeopardize treatment of the Liquidating Trust as a "liquidating trust" for federal income tax purposes.

3.6.    Other Activities

The Liquidating Trustee shall be entitled to be employed by third parties while performing the duties required under the Plan and this Agreement, so long as such other employment does not involve holding or representing any interest adverse to the interests of the Liquidating Trust, or otherwise preclude or impair the Liquidating Trustee from performing its respective duties under the Plan and this Agreement.

3.7.    Investment and Safekeeping of Liquidating Trust Assets

All monies and other assets received by the Liquidating Trustee shall, until distributed or paid over as herein provided, shall be held in trust for the benefit of the Liquidating Trust Beneficiaries, but need not be segregated from other Liquidating Trust Assets, unless and to the extent required by the Plan. The Liquidating Trustee shall promptly invest any such monies in the manner set forth in this Section 3.7, but shall otherwise be under no liability for interest or income on any monies received by the Liquidating Trust hereunder and held for distribution or payment to the Liquidating Trust Beneficiaries, except as such interest shall actually be received. Investment of any monies held by the Liquidating Trust shall be administered in accordance with the general

duties and obligations hereunder. The right and power of the Liquidating Trustee to invest the Liquidating Trust Assets, the proceeds thereof, or any income earned by the Liquidating Trust, shall be limited to the right and power to invest such Liquidating Trust Assets (pending distributions in accordance with the Plan and this Agreement) in the Permissible Investments; provided, however, that the scope of any such Permissible Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold, pursuant to Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

## ARTICLE IV
## TERM AND COMPENSATION FOR LIQUIDATING TRUSTEE

4.1.    Compensation

The Liquidating Trustee shall be entitled to receive compensation for services rendered on behalf of the Liquidating Trust monthly in arrears on an hourly basis at a rate not to exceed $375 per hour, plus reimbursement of all reasonable out-of-pocket expenses, which shall be charged against and paid out of the Liquidating Trust Assets; provided, however, that the Liquidating Trustee's compensation, including any compensation for services rendered by associates or administrative assistants engaged to assist the Liquidating Trustee in fulfilling its duties, shall be subject to the following monthly caps:

- Months 1 through 4 after the Effective Date:  $25,000
- Months 5 through 10 after the Effective Date:  $20,000
- All subsequent months:  $15,000

4.2.    Termination

The duties, responsibilities and powers of the Liquidating Trustee will terminate on the date the Liquidating Trust is dissolved under applicable law in accordance with the Plan, or by an order of the Bankruptcy Court.

4.3.    No Bond

The Liquidating Trustee shall not be obligated to obtain a bond but may do so, in its sole discretion, in which case the expense incurred by such bonding shall be paid by the Liquidating Trust.

4.4.    Removal

The Liquidating Trustee may be removed only for cause by a Final Order of the Bankruptcy Court, after notice and a hearing. For purposes of removing the Liquidating Trustee, "cause" shall mean gross negligence, breach of fiduciary duty, breach of trust, or reckless or willful mishandling of the Liquidating Trust Assets.

4.5.    Resignation

The Liquidating Trustee may resign by giving not less than thirty (30) days' prior written notice of such resignation to the Bankruptcy Court and any parties in interest requesting notice in the Bankruptcy Cases.

## ARTICLE V
## PROVISIONS REGARDING RESERVES AND DISTRIBUTIONS

5.1.    Establishment of Reserves

Prior to making any Distribution, the Liquidating Trustee may establish and maintain such reserves of funds that the Liquidating Trustee determines to be reasonably necessary to satisfy the expenses of administering the Liquidating Trust, including, without limitation, the winding down and closing of the Bankruptcy Cases and the fees and expenses of the Liquidating Trustee and its retained professionals.

5.2.    Distributions by Liquidating Trustee

The Liquidating Trustee or Disbursing Agent shall make periodic and final Distributions of the Liquidating Trust Assets on hand and the Permitted Investments, except such amounts as may be necessary to maintain any reserves established by the Liquidating Trustee in accordance with the terms of the Plan and Section 5.1 hereof.  The Liquidating Trustee or Disbursing Agent may withhold from amounts distributable to any Person any and all amounts, determined in the Liquidating Trustee's reasonable but sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

5.3.    Timing of Distributions

(a)    The Liquidating Trustee or Disbursing Agent shall make Distributions to Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Other Secured Claims and Allowed General Unsecured Claims in accordance with the terms of the Plan, including but not limited to Articles IV.D.6. and VI thereof.

(b)    After final Distributions have been made in accordance with the terms of the Plan and this Agreement and all expenses of the Liquidating Trust have been paid, if the amount of remaining Cash held by the Liquidating Trust is less than $30,000, the Liquidating Trustee may donate such amount to a charity acceptable to the Liquidating Trustee in its sole discretion, free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary.

5.4.    Distributions upon Allowance of Disputed Claim

To the extent that a Disputed Claim becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan, Confirmation Order and this Agreement.  As soon as practicable after the date that an order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Liquidating Trustee shall provide to the Holder of such Claim the Distribution (if any) to which

such Holder is entitled under the Plan.

5.5.    Delivery of Distributions; Undeliverable and Unclaimed Distributions

(a)    Except as otherwise provided in the Plan, subject to Bankruptcy Rule 9010, all distributions to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth on the Schedules unless the Debtors or the Liquidating Trustee, as applicable, have been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such Holder that contains an address for such Holder different from the address reflected on the Schedules.

(b)    In the event that any Distribution to any Holder is returned as undeliverable, the Liquidating Trustee shall use commercially reasonable efforts to determine the current address of such Holder, but no Distribution to such Holder shall be made unless and until the Liquidating Trustee has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, that such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code upon the expiration of the later of ninety (90) days after the Effective Date and the date such Distribution was returned as undeliverable.   After such date, any such Distribution shall revert to the Liquidating Trust for distribution on account of other Allowed Claims, and the Claim of the Holder originally entitled to such Distribution shall be waived, discharged and forever barred.

5.6.    Interest on Claims

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

5.7.    No Distribution in Excess of Allowed Amount of Claim

Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of such Claim any Distributions, which individually or in the aggregate, exceed the Allowed amount of such Claim.

5.8.    Means of Cash Payment

Cash payments made hereunder shall be in U.S. funds, by the means, including by check or wire transfer, determined by the Disbursing Agent.

5.9.    Record Date for Distributions

As of the close of business on the Distribution Record Date, the transfer register for any Claims for the purpose of Distributions shall be closed, and there shall be no further changes in the record Holders of any Claims for purpose of Distributions under the Plan.   The Liquidating Trustee will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute only to those Holders of Allowed

Claims that are Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date.

5.10.   No Distributions Pending Allowance

Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided under the Plan shall be made on account of such disputed portion; provided, however, that the Liquidating Trustee shall pay any undisputed portion of a Disputed Claim in accordance with the terms of the Plan.  To the extent that all or a portion of a Disputed Claim is disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is disallowed and any distribution withheld pending the resolution of such Claim shall be reallocated pro rata to the Holders of Allowed Claims in the same Class.

5.11.   Compliance with Tax Requirements

(a)   In connection with the Plan and all Distributions thereunder, to the extent applicable, the Liquidating Trustee is authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions pursuant to the Plan shall be subject to any such withholding and reporting requirements.

(b)   The Disbursing Agent shall be authorized to require each Creditor or Liquidating Trust Beneficiary to provide it with an executed Form W-9 or similar tax form as a condition precedent to being sent a Distribution.  If a Holder of an Allowed Claim does not provide the Disbursing Agent with an executed Form W-9 or similar form within 45 days after mailing of a written request to (i) the address of such Holder as set forth on the Schedules, or (ii) such other address as the Debtors or the Liquidating Trustee, as applicable, have been notified in writing, including, without limitation, by the filing of a Proof of Claim by such Holder that contains an address for such Holder different from the address reflected on the Schedules, such Holder shall be deemed to have forfeited the right to receive any Distribution under the Plan, any such Distribution shall revert to the Liquidating Trust for distribution on account of other Allowed Claims, and the Claim of the Holder originally entitled to such Distribution shall be waived, discharged and forever barred.

(c)   Notwithstanding any other provision of the Plan or this Agreement, each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Plan or this Agreement shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution.

5.12.   Setoff and Recoupment

The Debtors or the Liquidating Trust may, but shall not be required to, set off against, or recoup from any Allowed Claim (whether secured, administrative, priority, unsecured or other) and the payment or other Distribution to be made pursuant to the Plan or this Agreement in respect of such Claim, any claims of any nature whatsoever that the Debtors or the Liquidating Trust may have against the Holder of such Claim (including Causes of Action), but neither the failure to do

so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Liquidating Trust of any such claim the Debtors or the Liquidating Trust may have against the Holder of such Claim.

5.13.    Fractional Dollars; De Minimis Distributions

Notwithstanding any other provision hereof to the contrary, (a) the Disbursing Agent shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down and (b) the Disbursing Agent shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $50,000, in which case such Distributions shall be deferred to the next Distribution Date, (ii) if the amount to be distributed to a Holder on the particular Distribution Date is less than $100.00, unless such Distribution constitutes the final Distribution to such Holder, or (iii) the amount of the final Distribution to the Holder of such Allowed Claim is less than $50.00, in which case such Distribution shall revert to the Liquidating Trust for distribution on account of other Allowed Claims.

5.14.    Extensions of Time

The Liquidating Trustee may File a motion to extend any deadlines hereunder prior to the occurrence of any such deadlines, to the extent necessary, which deadlines shall be deemed automatically extended after the filing of such motion, and pending the entry of an order by the Bankruptcy Court extending any such deadline.

## ARTICLE VI
## PROVISIONS FOR CLAIMS OBJECTIONS AND ESTIMATION OF CLAIMS

6.1.    Prosecution of Objections to Claims on and After the Effective Date

(a)    On and after the Effective Date, objections to, and requests for estimation of any Claims may be interposed and prosecuted only by the Liquidating Trust and Liquidating Trustee. Such objections and requests for estimation shall be served on the respective claimant and filed with the Bankruptcy Court on or before the later of (a) one hundred eighty (180) days after the Effective Date and (b) such other date as may be fixed by the Bankruptcy Court upon a motion Filed by the Liquidating Trustee and served only upon the United States Trustee and any party that has Filed a notice of appearance and request for service of notices and papers on or after the Effective Date.

(b)    On the Effective Date, all pending objections to and requests for estimation of any Claims will vest in the Liquidating Trust.

(c)    The Liquidating Trustee shall be authorized to resolve all Disputed Claims by withdrawing or settling objections thereto, or by litigating to judgment in the Bankruptcy Court, or such other court having competent jurisdiction, the validity, nature, and/or amount thereof. If the Liquidating Trustee agrees with the Holder of a Disputed Claim to compromise, settle, and/or resolve a Disputed Claim by granting such Holder an Allowed Claim, then the

Liquidating Trustee may compromise, settle, and/or resolve such Disputed Claim without Bankruptcy Court approval.

6.2.   Estimation of Claims

The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Liquidating Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## ARTICLE VII
## LIABILITY AND EXCULPATION PROVISIONS

7.1.   Liability, Indemnification of the Liquidating Trust Protected Parties

(a)   The Liquidating Trust Protected Parties shall not be liable for any act or omission of any other member, designee, agent, or representative of such Liquidating Trust Protected Parties, nor shall such Liquidating Trust Protected Parties be liable for any act or omission taken or not taken in their capacity as Liquidating Trust Protected Parties in connection with the implementation or administration of the Liquidating Trust or the Plan other than for specific acts or omissions resulting from such Liquidating Trust Protected Parties' willful misconduct, gross negligence or fraud. The Liquidating Trustee may, in connection with the performance of its duties, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents. Notwithstanding such authority, the Liquidating Trustee shall not be under any obligation to consult with its attorneys, accountants, financial advisors, and agents, and its determination not to do so shall not result in the imposition of liability on the Liquidating Trustee or the Liquidating Trust Protected Parties, unless such determination is based on willful misconduct, gross negligence, or fraud.

(b)   The Liquidating Trust shall indemnify and hold harmless the Liquidating Trust Protected Parties from and against and in respect of all liabilities, losses, damages, claims, costs, and expenses (including, without limitation, reasonable attorney's fees, disbursements, and related expenses), which such Liquidating Trust Protected Parties may incur or to which such Liquidating Trust Protected Parties may become subject to in connection with any action, suit, proceeding, or investigation brought by or threatened against such Liquidating Trust Protected Parties arising out of or due to their acts or omissions or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust or the Plan or the

discharge of their duties hereunder; provided, however, that no such indemnification will be made to such Liquidating Trust Protected Parties for acts or omissions that constitute willful misconduct, gross negligence, or fraud.

7.2.    Reliance by Liquidating Trustee

Except as otherwise provided herein:

(a)    the Liquidating Trustee may rely, and shall be protected from liability in acting upon or failing to act upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Liquidating Trustee to be genuine and to have been signed or presented by the properly authorized party or parties;

(b)    the Liquidating Trustee shall not be liable for any action taken or not taken in reasonable reliance upon the advice of a Trustee Professional or Trustee Non-Professional; and

(c)    persons providing services to the Liquidating Trustee shall look only to the Liquidating Trust Assets to satisfy any liability incurred by the Liquidating Trustee to such person in carrying out the terms of this Agreement, and the Liquidating Trustee shall not have any personal obligation to satisfy any such liability, except to the extent determined by a Final Order to be solely due to the Liquidating Trustee's willful misconduct, gross negligence, fraud or breach of fiduciary duty.

## ARTICLE VIII
## ESTABLISHMENT OF THE LIQUIDATING TRUST

8.1.    Transfer of Assets to Liquidating Trust

Pursuant to the Plan, each Debtor and the Liquidating Trustee hereby establish the Liquidating Trust, with the Liquidating Trust Beneficiaries to be treated as the grantors and deemed owners of the Liquidating Trust Assets, and each Debtor hereby transfers, assigns, and delivers all of its right, title, and interest in the Liquidating Trust Assets to the Liquidating Trust, notwithstanding any prohibition of assignability under applicable non-bankruptcy law. Such transfer includes, but is not limited to, all rights to assert, waive or otherwise exercise any attorney-client privilege, work product protection or other privilege, immunity, or confidentiality provision vested in, or controlled by, the applicable Debtor.

8.2.    Title to Assets

(a)    Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, on the Effective Date and periodically thereafter if additional Liquidating Trust Assets become available, the Debtors shall be deemed to have automatically transferred to the Liquidating Trust all of their right, title, and interest in and to all of the Liquidating Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Liquidating Trust free and clear of all Claims and liens, subject only to the Allowed Claims of the Liquidating Trust Beneficiaries as set forth in the Plan and the expenses of the Liquidating Trust as set forth in the Plan and in this Agreement. Thereupon, the Debtors shall have

no interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust.

(b)     For all federal income tax purposes, all Parties and Liquidating Trust Beneficiaries shall treat the transfer of the Liquidating Trust Assets by the Debtors to the Liquidating Trust, as set forth in this Article VIII and in the Plan, as a transfer of such assets by the Debtors to the Liquidating Trust Beneficiaries entitled to distributions under this Agreement, followed by a transfer by such Liquidating Trust Beneficiaries to the Liquidating Trust. Thus, the Liquidating Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

8.3.    Valuation of Assets

As soon as reasonably practicable after the Effective Date, the Liquidating Trustee (to the extent that the Liquidating Trustee deems it necessary or appropriate in its sole discretion) shall make a good faith determination of the value of all of the Liquidating Trust Assets. The valuation shall be used consistently by all parties (including the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) for all federal income tax purposes. The Bankruptcy Court shall retain jurisdiction to resolve any dispute regarding the valuation of the Liquidating Trust Assets.

## ARTICLE IX
## BENEFICIARIES

9.1    Identification of Beneficiaries

In order to determine the actual names and addresses of the Liquidating Trust Beneficiaries, the Liquidating Trustee shall be entitled to conclusively rely on the names and addresses as determined in accordance with Sections 5.5 and 5.9 hereof. Each Liquidating Trust Beneficiary's right to Distribution from the Liquidating Trust, which is dependent upon the classification under the Plan of the Claims held by such Liquidating Trust Beneficiary, shall be that accorded to such Liquidating Trust Beneficiary under the Plan.

## ARTICLE X
## ADMINISTRATION

10.1   Purpose of the Liquidating Trust

The Liquidating Trust shall be established for the primary purpose of liquidating its assets, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. Accordingly, the Liquidating Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidating Trust Assets, make timely distributions to the Liquidating Trust Beneficiaries and not unduly prolong the duration of the Liquidating Trust. The Liquidating Trust shall not be deemed a successor-in-interest of the Debtors or their Estates for any purpose other than as specifically set forth in the Plan or this Agreement.

10.2.   Books and Records

The Liquidating Trustee shall maintain books and records relating to the administration of the Liquidating Trust Assets and the distribution by the Liquidating Trustee of the proceeds therefrom in such detail and for such period of time as may be necessary to make full and proper accounting in respect thereof and to comply with applicable provisions of law. The Liquidating Trustee shall also maintain books and records relating to the income and expenses of the Liquidating Trust, and the payment of expenses of and liabilities of, claims against or assumed by, the Liquidating Trust in such detail and for such period of time as may be necessary to make full and proper accounting in respect thereof and to comply with applicable provisions of law. Except as otherwise provided herein or in the Plan, nothing in this Agreement requires the Liquidating Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidating Trust, or as a condition for making any payment or distribution out of the Liquidating Trust Assets. Subject to all applicable privileges, the Liquidating Trust Beneficiaries shall have the right, in addition to any other rights they may have pursuant to this Agreement, under the Plan or otherwise, upon twenty (20) days' prior written notice to the Liquidating Trustee, to request a reasonable inspection of the books and records held by the Liquidating Trustee, *provided that* all costs associated with such inspection shall be paid in advance by such requesting Liquidating Trust Beneficiary, and further, if so requested, such Liquidating Trust Beneficiary shall have entered into a confidentiality agreement satisfactory in form and substance to the Liquidating Trustee, and make such other arrangements as may be reasonably requested by the Liquidating Trustee.

10.3.   Compliance with Laws

Any and all distributions of Liquidating Trust Assets shall comply with all applicable laws and regulations, including, but not limited to, applicable federal and state tax and securities laws.

**ARTICLE XI**
**SUCCESSOR LIQUIDATING TRUSTEE**

11.1.   Successor Liquidating Trustee

In the event the Liquidating Trustee is removed or resigns pursuant to this Agreement or the Liquidating Trustee otherwise vacates its position, a successor Liquidating Trustee shall be appointed by the Bankruptcy Court. Thereupon, such successor Liquidating Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts and duties of his/her predecessor in the Liquidating Trust with like effect as if originally named herein; provided, however, that a removed or resigning Liquidating Trustee shall, nevertheless, when requested in writing by the successor Liquidating Trustee, execute and deliver any reasonable instrument or instruments conveying and transferring to such successor Liquidating Trustee all the estates, properties, rights, powers, and trusts of such removed or resigning Liquidating Trustee.

## ARTICLE XII
## REPORTING

12.1.    Annual and Final Reports

The Liquidating Trustee will file an annual financial statement or similar report of the Liquidating Trust with the Bankruptcy Court within 60 days after the end of each calendar year and make such statement and/or report available to any Holder of Liquidating Trust Interests that requests it.

12.2.    Federal Income Tax

(a)    Grantor Trust Status. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall file returns for the Liquidating Trustee as a grantor trust pursuant to Treas. Reg. § 1.671-4(a).

(b)    Allocations of Liquidating Trust Taxable Income. Subject to the provisions of Section 12.2(a) hereof, allocations of Liquidating Trust taxable income shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (without regard to any restriction on distributions described herein) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of its other assets (valued for this purpose at their tax book value) to Liquidating Trust Beneficiaries (treating any Holder of a Disputed Claim, for this purpose, as a current Liquidating Trust Beneficiary entitled to distributions), taking into account all prior and concurrent distributions from the Liquidating Trust (including any distributions held in reserve pending the resolution of Disputed Claims). Similarly, taxable losses of the Liquidating Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for this purpose shall equal their fair market value on the Effective Date or, if later, the date such assets were acquired by the Liquidating Trust, adjusted in either case in accordance with tax accounting principles prescribed by the Internal Revenue Code, the Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

12.3.    Other

The Liquidating Trustee shall file (or cause to be filed) any other statement, returns or disclosures relating to the Liquidating Trust or the Liquidating Trust Assets, that are required by any Governmental Unit.

## ARTICLE XIII
## TRANSFER OF LIQUIDATING TRUST INTERESTS

13.1.    Transfer of Liquidating Trust Interests

The Liquidating Trust Interests, which shall be uncertificated and reflected only on the

records of the Liquidating Trust maintained by the Liquidating Trustee, are not negotiable and shall not be assignable voluntarily. In the case of a deceased individual Liquidating Trust Beneficiary, his or her executor or administrator shall succeed to such decedent's interests. The Liquidating Trustee shall not be required to record any transfer in favor of any transferee that, in the sole discretion of the Liquidating Trustee, is or might be construed to be ambiguous or to create uncertainty as to the Holder of the Liquidating Trust Interest. Until a transfer is in fact recorded on the books and records maintained by the Liquidating Trustee for the purpose of identifying Liquidating Trust Beneficiaries, the Liquidating Trustee, whether or not in receipt of documents of transfer or other documents relating to the transfer, may nevertheless make distributions and send communications to Liquidating Trust Beneficiaries, as though it has no notice of any such transfer, and in so doing the Liquidating Trustee shall be fully protected and incur no liability to any purported transferee or any other Entity.

## ARTICLE XIV
## TRUSTEE PROFESSIONALS AND NON-PROFESSIONALS

14.1.    Retention of Trustee Professionals and Non-Professionals

(a)    The Liquidating Trustee shall have the right to retain professionals including, without limitation, claims, disbursing and transfer agents, legal counsel, accountants, experts and other advisors, as the Liquidating Trustee deems appropriate (the **"Trustee Professionals"**) and to compensate such Trustee Professionals on such terms as the Liquidating Trustee deems appropriate. The Trustee Professionals so retained need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of the Debtors and of the Committee.

(b)    The Liquidating Trustee shall have the right to retain non-professionals including, without limitation, employees, independent contractors or other agents as the Liquidating Trustee deems appropriate (the **"Trustee Non-Professionals")** and to compensate such Trustee Non-Professionals on such terms as the Liquidating Trustee deems appropriate. The Trustee Non-Professionals so retained need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, employees, independent contractors or agents of the Debtors and of the Committee.

14.2.    Payment to Trustee Professionals and Trustee Non-Professionals

(a)    After the Effective Date, the Trustee Professionals shall be required to submit reasonably detailed invoices on a monthly basis to the Liquidating Trustee, including in such invoices a description of the work performed, who performed such work, and if billing on an hourly basis, the hourly rate of each such person, plus an itemized statement of expenses. The Liquidating Trustee shall pay those invoices within ten (10) days after receipt, without any need for Bankruptcy Court approval, unless the Liquidating Trustee objects. If there is a dispute as to a part of an invoice, the Liquidating Trustee shall pay the undisputed portion and the Bankruptcy Court shall resolve any disputed amount if the Trustee Professionals and the Liquidating Trustee cannot otherwise reach agreement.

(b)    After the Effective Date, the Trustee Non-Professionals shall be required to

submit to the Liquidating Trustee periodic invoices containing information with sufficient detail to assess the reasonableness of the fees and charges. The Liquidating Trustee shall pay those invoices within ten (10) days after receipt, without any need for Bankruptcy Court approval, unless the Liquidating Trustee objects. If there is a dispute as to a part of an invoice, the Liquidating Trustee shall pay the undisputed portion and the Bankruptcy Court shall resolve any disputed amount if the Trustee Non-Professionals and the Liquidating Trustee cannot otherwise reach agreement.

(c)    All payments to Trustee Professionals and Trustee Non-Professionals shall be paid out of the Liquidating Trust Assets.

## ARTICLE XV
## TERMINATION OF LIQUIDATING TRUST

15.1.   Duration and Extension

The Liquidating Trust shall be dissolved and its affairs wound up and the Liquidating Trustee shall make the final Distributions, upon the earlier of (i) the date which is five (5) years after the Effective Date, and (ii) that date when, (a) in the reasonable judgment of the Liquidating Trustee, substantially all of the assets of the Liquidating Trust have been liquidated and there are no substantial potential sources of additional Cash for Distribution; and (b) there remain no substantial Disputed Claims. Notwithstanding the foregoing, on or prior to a date not less than six (6) months prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Liquidating Trust for one or more finite terms based upon the particular facts and circumstances present at that time, if an extension is necessary to the liquidating purpose of the Liquidating Trust.  The date on which the final Distributions are made is referred to as the "Trust Termination Date".  On the Trust Termination Date, the Liquidating Trustee shall

(i)    make the final distributions to the Holders of Allowed Claims in accordance with the Plan and this Agreement; and

(ii)    promptly thereafter, request that the Bankruptcy Court enter an order closing the Bankruptcy Cases (unless this has already been done).

15.2.   Diligent Administration

The Liquidating Trustee shall (a) not unduly prolong the duration of the Liquidating Trust; (b) at all times endeavor to resolve, settle or otherwise dispose of all claims that constitute Liquidating Trust Assets; and (c) effect the liquidation and distribution of the Liquidating Trust Assets to the Liquidating Trust Beneficiaries in accordance with the terms of the Plan and this Agreement.

## ARTICLE XVI
## AMENDMENT AND WAIVER

16.1.   Amendment and Waiver

Any substantive provision of this Agreement may be materially amended or waived only by

order of the Bankruptcy Court if necessary to implement the Plan; provided, however, that no change may be made to this Agreement that would adversely affect the federal income tax status of the Liquidating Trust as a "grantor trust." Technical or non-material amendments to or waivers of portions of this Agreement may be made as necessary to clarify this Agreement or to enable the Liquidating Trust to effectuate the terms of this Agreement, with the consent of the Liquidating Trustee.

## ARTICLE XVII
## MISCELLANEOUS PROVISIONS

### 17.1.    Intention of Parties to Establish Grantor Trust

This Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as a grantor trust.

### 17.2.    Preservation of Privilege

In connection with the vesting and transfer of the Liquidating Trust Assets, including rights and Causes of Action, any attorney-client privilege, work-product protection, or other privilege or immunity attaching or relating to any documents or communications (of any kind, whether written or oral, electronic or otherwise) held by the Debtors shall be transferred to the Liquidating Trust and shall vest in the Liquidating Trust. Accordingly, in connection with the prosecution and/or investigation of Causes of Action by the Liquidating Trustee, any and all directors, officers, employees, counsel, agents, or attorneys-in-fact of the Debtors, cannot assert any attorney-client privilege, work product protection, or other privilege or immunity attaching or relating to any documents or communications (of any kind, whether written or oral, electronic or otherwise) held by the Debtors or otherwise prevent, hinder, delay, or impede production or discussion of documents or communications requested by the Liquidating Trustee in discovery (whether formal or informal, and including without limitation, depositions, written discovery, and interviews). The Debtors and the Liquidating Trustee shall take all necessary actions to protect the transfer of such privileges, protections and immunities.

### 17.3.    Prevailing Party

The prevailing party in a dispute regarding the provisions of this Agreement or the enforcement thereof shall be entitled to collect any and all costs, expenses and fees, including attorneys' fees, from the nonprevailing party incurred in connection with such dispute or enforcement action.

### 17.4.    Confidentiality

The Liquidating Trustee and each of its respective employees, members, agents, professionals and advisors, including the Trustee Professionals and Trustee Non-Professionals, (each a **"Confidential Party"** and collectively the **"Confidential Parties")** shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, of or pertaining to any Entity to which any of the Liquidating Trust Assets relates; provided, however, that such information may be disclosed

if (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties, or (b) such disclosure is required of the Confidential Parties pursuant to legal process, including, but not limited to, subpoena or other court order or other applicable laws or regulations. In the event that any Confidential Party is requested to divulge confidential information pursuant to clause (b) above, such Confidential Party shall promptly, in advance of making such disclosure, provide reasonable notice of such required disclosure to the Liquidating Trustee to allow it sufficient time to object to or prevent such disclosure through judicial or other means and shall cooperate reasonably with the Liquidating Trustee in making any such objection, including but not limited to appearing in any judicial or administrative proceeding in support of any objection to such disclosure.

     17.5.  <u>Applicable Law</u>

     This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to rules governing the conflict of laws.

     17.6.  <u>Severability</u>

     If any provision of this Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and shall be valid and enforceable to the fullest extent permitted by law.

     17.7.  <u>Notices to the Liquidating Trustee</u>

     Any notice or other communication to the Liquidating Trustee hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered by facsimile (at the number set forth below with proof of delivery) or mailed by certified mail, with return receipt requested, at the address set forth below, or such other address of the Liquidating Trustee as may be filed with the Bankruptcy Court:

          Ocean Ridge Capital Advisors, LLC
          Attn: Bradley E. Scher
          56 Harrison St., Suite 203A
          New Rochelle, NY  10801
          Facsimile: (914) 931-5287

     17.8.  <u>Notices to a Liquidating Trust Beneficiary</u>

     Any notice or other communication hereunder to a Liquidating Trust Beneficiary shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended to the name and address as determined in accordance with Sections 5.5 and 5.9 of this Agreement.

-24-

17.9.  <u>Survivability</u>

The terms and provisions of this Agreement shall remain fully binding and enforceable notwithstanding any vacancy in the position of the Liquidating Trustee.

17.10.  <u>Headings</u>

The section headings contained in this Agreement are solely for the convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

17.11.  <u>Conflicts with Plan Provisions</u>

If any of the terms and/or provisions of this Agreement conflict with the terms and/or provisions of the Plan, then the Plan shall govern.

IN WITNESS WHEREOF, the Parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

**PULP FINISH 1 COMPANY AND EACH OF THE OTHER DEBTORS AS DEFINED HEREIN**

By: _/s/ Bradley E. Scher_____
      Bradley E. Scher
      President and Chief Restructuring Officer

**OCEAN RIDGE CAPITAL ADVISORS, LLC AS LIQUIDATING TRUSTEE**

By: _/s/ Bradley E. Scher_____
      Bradley E. Scher
      Managing Member