UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                    :
                                                          :        Chapter 11
PULP FINISH 1 COMPANY (f/k/a Journal           :        Case No. 12-13774 (SMB)
Register Company), *et al.*,                              :        Jointly Administered
                                                          :
                      Debtors.               :
------------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER
DENYING VARIOUS FORMS OF RELIEF
REQUESTED BY JAMES D. SCHNELLER**

**A P P E A R A N C E S :**

MR. JAMES D. SCHNELLER
Movant *Pro Se*
430 East Lancaster Avenue E 25
Saint Davids, PA 19087


MORGAN, LEWIS & BOCKIUS, LLP
101 Park Avenue
New York, NY 10178-0060

      Neil E. Herman, Esq.
      Patrick D. Fleming, Esq.
         Of Counsel


       – and –

YOUNG CONAWAY STARGATT & TAYLOR, LLP
1270 Avenue of the Americas, Suite 2210
New York, NY 10020

      Michael R. Nestor, Esq.
      Kenneth J. Enos, Esq.
      Andrew L. Magaziner, Esq.
         Of Counsel

*Counsel to the Liquidating Trustee*

**STUART M. BERNSTEIN
United States Bankruptcy Judge:**

James D. Schneller has made the following motions now pending before the Court: (1)

*Motion for Reconsideration of Order Confirming Proposed Plan of Reorganization, and for*

*Intervention*, *and for Stay*, dated Oct. 28, 2013 (the "*Confirmation Motion*") (ECF Doc. # 880)

and (2) *Motion for Reconsideration of Order Closing the Case of Goodson Holding Company*

*and 27 Other Reorganized Debtor Cases*, dated Dec. 2, 2013 (the "*Case Closing Motion*") (ECF

Doc. # 922).)  Upon due consideration, the motions are denied for the reasons that follow.

## BACKGROUND

The Court has previously outlined the background to this dispute in its *Memorandum*

*Endorsement and Order Denying Various Forms of Relief Requested by James D. Schneller*,

dated July 30, 2013 ("*Memorandum Endorsement*") (ECF Doc. # 730) familiarity with which is

assumed.  The gravamen of Schneller's claim is that he was defamed by an article published by

one of the Debtors – apparently Goodson Holding Company ("Goodson") – and posted on the

internet on or about October 9, 2008.  Consequently, when the Debtors (the "2009 Debtors")

filed their first chapter 11case on February 21, 2009, (*see In re Journal Register Co.*, 09-

10769(ALG) (the "First Case")), Schneller was a pre-petition creditor.  The Court confirmed the

First Case on July 7, 2009, and the confirmed plan discharged the 2009 Debtors, *inter alia*, from

their pre-petition debts, including any debt owed to Schneller.  The plan also enjoined creditors

from pursuing the discharged debts.  *Accord* 11 U.S.C. § 524(a)(2) ("A discharge in a case under

this title . . . operates as an injunction against the commencement or continuation of an action . . .

to collect, recover or offset any such debt as a personal liability of the debtor. . . .")

It appears that Schneller did not receive actual notice of the First Case or file a proof of

claim or otherwise participate in the First Case.  This is because he did not file his defamation

action against Goodson until December 3, 2009, after confirmation.  Until then, he was an

unknown creditor, who received constructive notice of the proceedings through publication.  The First Case was closed on May 2, 2011.

Schneller moved to reopen the First Case on May 29, 2012.  He argued, among other things, that the 2009 Debtors intentionally concealed the case from him although they should have known that he would have filed a claim, and he was not bound by the discharge or the plan injunction due to lack of notice.  Judge Gropper, who presided over the First Case, denied the motion to reopen.  (*Order*, dated July 9, 2012, at 2 (ECF Case No. 09-10769 Doc. # 982).)

Schneller moved for reconsideration of Judge Gropper's order.  While his motion was pending, the Debtors (the "2012 Debtors") filed this case (the "Second Case") on September 5, 2012.  Schneller filed a motion in the Second Case for relief from the stay, and the Court granted the motion over the 2012 Debtors' objection to the extent of allowing Schneller to pursue his motion for reconsideration in the First Case.  Thereafter, by order dated June 27, 2013, Judge Gropper denied Schneller's motion for reconsideration.  Schneller filed an appeal from that order, and the appeal is pending before the District Court.  (*See In re Journal Register Company*, 13 Civ. 6554 (PKC).)

In the meantime, the 2012 Debtors filed the *Debtors' First Omnibus Objection to Claims*, dated May 24, 2013 (ECF Doc. # 653).  It included an objection to Schneller's claim on the ground that it was discharged in the First Case.  (*Id.*, Ex. 1, B.)  Following oral argument, the Court disallowed and expunged Schneller's claim "*provided, however*, that Schneller shall be permitted to seek reconsideration of this Order in the event he obtains relief from the permanent injunction set forth in the [First Case Confirmation Order]."  (*Order Sustaining Debtors' First Omnibus Objection to Claims*, dated June 27, 2013 (ECF Doc. # 682).)

Schneller thereafter moved for reconsideration of the order expunging his claim and coupled it with a motion to certify a direct appeal to the United States Court of Appeals and for leave to proceed *in forma pauperis* on his appeal from the order expunging his claim. (*See* ECF Doc. # 713.) The Court denied all of the requested relief in the *Memorandum Endorsement*. In denying the reconsideration motion, the Court explained that "[t]he threshold issue presented by the 2012 Debtors' objection to Schneller's claim was whether the claim was discharged in the First Case. Absent relief from the discharge injunction, Schneller cannot pursue a discharged claim in this case." In other words, Schneller's ability to assert an allowed claim in the Second Case depended on his freeing himself from the constraints of the discharge in the First Case, which he had not done. In denying the motion for leave to proceed *in forma pauperis*, the Court observed that

> Schneller is a serial plaintiff who ignores adverse judicial determinations and continues to pursue frivolous litigation. Given the obvious effect of the discharge injunction in the First Case on his claim in the Second Case and his failure to obtain relief from that injunction, his continued prosecution of any appeal disallowing his claim in the Second Case is not in good faith. *Cf.* 28 U.S.C. § 1915(a)(3) ("An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.").

Notwithstanding Schneller's motions, the 2012 Debtors continued to prosecute the Second Case. On July 2, 2013, they filed their *Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* (the "*Plan*") (ECF Doc. # 687) and *Disclosure Statement for Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* (the "*Disclosure Statement*") (ECF Doc. # 688), both dated June 24, 2013. Schneller filed an objection to the *Disclosure Statement* on August 21, 2013 (*see* ECF Doc. # 761), the Court heard the objection and overruled it, (*see* Transcript of 8/29/13 hearing, filed Sept. 5, 2013, at 44-50 (ECF Doc. # 788)), and approved the *Disclosure Statement*

4

on August 29, 2013, scheduling the confirmation hearing for October 8, 2013.  (*See Order Approving (I) the Disclosure Statement, and (II) Voting and Solicitation Procedures with Respect to the Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors*, dated Aug. 29, 2013 (ECF Doc. # 782).)  Schneller did not file a timely appeal – or any appeal disclosed by the docket – from the order approving the *Disclosure Statement*.

Schneller then served discovery requests on the Debtors on August 31, 2013 (*see* ECF Doc. # 842, Parts 2 & 3) and September 16, 2013.  (*Id.*, Parts 4 & 5.)  In addition, on September 17, 2013, he filed the *Motion for Temporary Allowance of a Claim for Voting Purposes and for Estimation of the Claim*, dated Sept. 17, 2013 (the "*Temporary Allowance Motion*") (ECF Doc. # 801.)  The Court denied the *Temporary Allowance Motion* because Schneller's claim had been expunged and was not subject to temporary allowance under Bankruptcy Rule 3018(a).[1] (Transcript of 9/26/13 hearing, filed Oct. 2, 2013 ("9/26/13 Tr."), at 9-10 (ECF Doc. # 837); *see Order Denying Motion for Temporary Allowance of a Claim for Voting Purposes and for Estimation of the Claim Filed by James D. Schneller*, dated Sept. 30, 2013 (ECF Doc. # 828).)

The Court also treated the hearing as a discovery conference.  During an extended colloquy, (*see* 9/26/13 Tr. at 13-23), the Court expressed its view that Schneller's discovery requests were irrelevant to the only remaining issue – confirmation – and ultimately concluded

---

[1]       Bankruptcy Rule 3018(a) deals, *inter alia*, with the situation where a party in interest has objected to a claim but the objection has not been decided.  The mere filing of an objection results in the claim's disallowance, 11 U.S.C. § 502(a), and disenfranchises the creditor from voting for or against the plan; only votes cast by creditors holding allowed claims count toward acceptance or rejection of a plan.  11 U.S.C. § 1126(c).  Bankruptcy Rule 3018(a) authorizes the Court to estimate and allow the claim that is the subject of the *unresolved* objection for voting purposes.  FED. R. BANKR. P. 3018 ("Notwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan.")  In Schneller's case, the objection had been resolved, his claim had been expunged, and Bankruptcy Rule did not apply.

that he was not entitled to the discovery because (1) he did not have an allowed claim, (2) even if

he did, the matters he was inquiring into would not affect his unsecured claim (which would

have been placed in class 6) and (3) his discovery amounted to a "fishing expedition."  (*Id.* at

24.)  However, the Court informed Schneller that he was free to make a motion regarding his

request for discovery.  (*Id.*)

Between September 30, 2013 and October 7, 2013, Schneller filed the following: (1)

*Motion to Stay Orders Appealed From*, dated Sept. 30, 2013 (ECF Doc. # 829); (2) *Motion for*

*Emergency Stay or Restraining Order of Proceedings*, dated Sept. 30, 2013 (ECF Doc. ## 830,

851); (3) Letter, dated Oct. 4, 2013, demanding action by the Court, the Creditors' Committee

and the Office of the United States Trustee to investigate certain matters and appoint a chapter 11

trustee (ECF Doc. # 838); (4) *Motion to Compel Compliance with Requests for Production of*

*Documents*, dated Sept. 30, 2013 (ECF Doc. # 842); and (5) *Objection to Debtor's Proposed*

*Plan of Reorganization*, dated Sept. 30, 2012 [sic] (ECF Doc. # 843.)  The Court addressed his

motions and confirmation objection at the October 8, 2013 confirmation hearing.  Schneller

explained that he was seeking to stay the confirmation hearing while he obtained discovery in

order to oppose confirmation.  (Transcript of 10/8/13 hearing, filed Nov. 20, 2013 ("10/8/13

Tr."), at 10-11 (ECF Doc. # 908).)  The Court denied his motion for discovery and a stay because

his claim had been expunged and he lacked standing to object to confirmation.  (*Id.* at 11) (citing

*In re Kreisler Group, Inc.*, 648 F.2d 86, 88 (2d Cir. 1981) (decided under the former Bankruptcy

Act)); *In re Southland Dev. Corp.*, 136 B.R. 40, 42 (E.D.N.Y. 1992) (decided under the

Bankruptcy Code).  The Court refused to hear his objections to confirmation for the same

reason.[2]  (10/8/13 Tr. at 12.)

One week later, the Court entered the *Order Confirming the Joint Plan of Liquidation*

*Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official*

*Committee of Unsecured Creditors* (the "*Confirmation Order*"), dated Oct. 15, 2013 (ECF Doc.

# 856).  The *Plan* became effective on October 30, 2013 (the "Effective Date"), (*Notice of (A)*

*Entry of the Confirmation Order, (B) the Occurrence of the Effective Date of the Plan, (C) the*

*Rejection Claims Bar Date, (D) the Administrative Claims Bar Date, and (E) the Final Fee*

*Application Deadline*, dated Oct. 30, 2013 (ECF Doc. # 881)), and on or after the Effective Date,

the Debtors, *inter alia*, transferred all of their assets to the Liquidating Trust pursuant to the *Plan*

and dissolved.  (*Liquidating Trustee's First Post-Confirmation Status Report*, dated Dec. 2, 2013

("*Post-Confirmation Report*"), at ¶ 3 (ECF Doc. # 914).)  The Court entered the *Final Decree*

*and Order Under 11 U.S.C. §§ 105(a) and 350(a), Fed. R. Bankr. P. 3022 and LBR S.D.N.Y.*

*3022-1 Closing Certain of the Debtors' Chapter 11 Cases*, dated Nov. 18, 2013 (the "*Case*

*Closing Order*") (ECF Doc. # 897), and closed all of the affiliated cases, leaving the lead case, *In*

*re Pulp Finish 1 Company (f/k/a Journal Register Company)*, Case No. 12-13774, as the only

open case.

---

[2]    The Court subsequently entered an *Order Denying Motions Filed by James D. Schneller Between*
*September 30, 2013 and October 7, 2013*, dated Oct. 18, 2013 (ECF Doc. # 859).

## DISCUSSION

**A.**   *Confirmation Motion*

**1.**   **Reconsideration of the Confirmation Order**

Schneller seeks reconsideration of the Confirmation Order under Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure.  In addition to citing a generalized litany of alleged deficiencies in the *Plan* which are discussed in more detail below, (*see Confirmation Motion* at ¶¶ 9-12, 14, 19), Schneller contends that the cases were filed and the confirmation was procured through misconduct, *i.e.*, bad faith and fraud.  In particular, he argues that the Debtors always planned a "chapter 22" (*i.e.*, the 2009 Debtors intended to file the Second Case at the time they filed the First Case), (*id.* at ¶ 15), and procured "the formal waiver or deemed acceptance" of certain classes (presumably classes 5 and 7) in bad faith.  (*Id.* at ¶ 10.)  He also challenges the sufficiency of the *Disclosure Statement* because it did not include any of his objections, (*id.* at ¶ 13), and the timing of the section 363 sale of the Debtors' assets and the alleged failure to maximize the assets of the estates.  (*Id.* at ¶ 20).  These were the same charges he made in the aforementioned letter demanding an investigation and the appointment of a trustee or examiner. (*See* ECF Doc. # 838.)  Finally, Schneller asserts personal claims relating to the failure to consider his objections to confirmation, (*Confirmation Motion* at ¶ 8), the improper treatment of his "prospective claim" in violation of 11 U.S.C. § 1129(b)(2)(B), (*id.* at ¶ 21), the refusal to temporarily allow and estimate his claim for voting purposes, (*id.* at ¶ 22), and the refusal to disclose pertinent insurance policies.  (*Id.* at ¶ 23.) [3]

---

[3]    Schneller served a supporting memorandum approximately one month later.  (*See Memorandum of Law in Support of Motion for Reconsideration of Order Confirming Proposed Plan of Reorganization, for Intervention, and for Stay*, dated Nov. 30, 2013 ("*Schneller Memo*") (ECF Doc. # 923).)  The *Schneller Memo* repeats the arguments made in the *Confirmation Motion*, and adds a few more.  He complains that the other tort creditors were able to access the Debtors' insurance or negotiate settlements with the Debtors notwithstanding the plan injunction in the First Case.  (*Id.* at 4 of 17.)  He says he did not receive a notice required by the *Plan*.  (*Id.*)  He challenges the

The *Confirmation Motion* is untimely to the extent it seeks reconsideration of the

*Confirmation Order* under Federal Bankruptcy Rule 9023. The motion had to be filed within 14

days of the entry of the *Confirmation Order*. *Accord* Bankr. S.D.N.Y.R. 9023-1 (governing

motions for reconsideration). The *Confirmation Motion* was filed on October 30, 2013, 15 days

after the entry of the *Confirmation Order*, one day late.[4] Furthermore, a party seeking relief

under Federal Bankruptcy Rule 9023 must show that the Court overlooked controlling decisions

or factual matters that might have materially influenced the outcome, or that reconsideration is

necessary to correct a clear error or prevent manifest injustice. *Turnberry Centra Sub, LLC v.*

*Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings Inc.)*, Adv. No. 09-01062, 2013 WL

819734, at *1 (Bankr. S.D.N.Y. Mar. 5, 2013). As discussed below, Schneller has not shown

that the Court overlooked anything or erred, and he has not identified a manifest injustice that

must be prevented. Importantly, he does not quarrel with the conclusion that he lacked standing

to object to confirmation. Instead, he continues to repeat the same arguments that the Court

expressly refused to consider because he lacked standing or previously considered and decided.

This leaves Federal Bankruptcy Rule 9024. Rule 9024 incorporates FED. R. CIV. P.

60(b), but is limited by 11 U.S.C. § 1144 which states that "the court may revoke [a confirmation

order] if and only if such order was procured by fraud." Accordingly, although Federal Civil

---

statement in the *Order Approving Post-Confirmation Timetable as Required by Local Rule 3021-1(a)*, dated Nov. 6, 2013 ("*Post-Confirmation Order*") (ECF Doc. # 888) that no adversary proceedings are pending in connection with the Debtors' case. According to Schneller, he is a plaintiff in an adversary proceeding pending in Pennsylvania. In addition, he contends that the request for a stay in the *Confirmation Motion* is an adversary proceeding. (*Schneller Memo* at 4 of 17.) He also asserts that the *Plan* did not contain a reservation of rights, but his argument is hard to follow. (*Id.* at 5 of 17.) Finally, he maintains that the Debtors did not comply with Local Bankruptcy Rule 3019-1, which relates to the modification of the plan before the close of voting, and disregarded the conditions to the occurrence of the Effective Date. Hence, the *Plan* has not been substantially consummated. (*Id.* at 7 of 17.)

[4]    According to his certificate of service attached to the *Confirmation Motion*, Schneller mailed or emailed his *Confirmation Motion* to me as well as the other parties on October 29, 2013, the last day to file a notice of appeal. My chambers received the *Confirmation Motion* by email on October 30, 2013 at 8:57 a.m., (*see* ECF Doc. # 951), and the clerk filed it the same day.

Rule 60(b) provides several grounds for obtaining relief from a final order, a movant who seeks to revoke a confirmation order under Federal Bankruptcy Rule 60(b) is limited to proving fraud, and must file the motion within the 180-day time period set forth in 11 U.S.C. § 1144. *Branchburg Plaza Assocs., L.P. v. Fesq*, 153 F.3d 113, 117 (3d Cir. 1998), *cert. denied*, 526 U.S. 1018 (1999); *Bill Roderick Distrib., Inc. v. A.J. Mackay Co.* (*In re A.J. Mackay Co.*), 50 B.R. 756, 758 n.1 (D. Utah. 1985); *In re BGI, Inc.*, No. 11-10614 (MG), 2012 WL 5392208, at *3 (Bankr. S.D.N.Y. Nov. 2, 2012); *In re Indu Craft Inc.*, No. 97-44958-RDD, 2011 WL 2619501, at *3 (Bankr. S.D.N.Y. July 1, 2011), *aff'd*, No. 11 Civ. 5996(JMF), 2012 WL 3070387 (S.D.N.Y. July 27, 2012); *In re Chipwich, Inc.*, 64 B.R. 670, 678 (Bankr. S.D.N.Y. 1986); *cf. In re Emergency Beacon Corp.*, 48 B.R. 356, 361 (Bankr. S.D.N.Y. 1985) (interpreting the Bankruptcy Act of 1898, as amended). Thus, Schneller must demonstrate that the *Confirmation Order* was procured by fraud.[5]

The threshold problem with the motion to reconsider the confirmation order is Schneller's refusal to recognize that the disallowance of his claim materially affected his status as a "party in interest" under Bankruptcy Code § 1109(b).[6] Section 1109(b) lists a creditor as a "party in interest." A "creditor" is an entity with a pre-petition claim, *see* 11 U.S.C. § 101(10)(A), and a "claim" is "a right to payment," 11 U.S.C. § 101(5)(A), which "is nothing more nor less than an enforceable obligation." *Pa. Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990); *accord Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998); *Carrieri v. Jobs.com*

---

[5]        In addition, Federal Bankruptcy Rule 7001(5) required Schneller to proceed by adversary proceeding rather than motion.

[6]        Bankruptcy Code § 1109(b) provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a *creditor*, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." (Emphasis supplied.)

*Inc.*, 393 F.3d 508, 524 (5th Cir. 2004) ("The touchstone of any 'claim' is that there is an 'enforceable obligation' of the debtor or an enforceable 'right to payment' from the debtor.").

The definition of "claim" is broad, and includes a disputed right to payment, but once the court expunges the claim, the right to payment is no longer subject to dispute.  Moreover, while the concept of "party in interest" is elastic and not limited to the entities listed in § 1109(b), *see Savage & Assocs., P.C. v. K & L Gates LLP (In re Teligent, Inc.)*, 640 F.3d 53, 60 (2d Cir. 2011), it typically refers to someone with a financial or legal stake in the outcome of the case. *Id.*  Because one's interests depend on the nature of the proceeding, a person may be a "party in interest" for some purposes but not others.  *See id.* at 61.  For example,  Schneller is a "party in interest" with respect to the proceedings involving his claim, and has standing to seek reconsideration of the disallowance of his claim under Bankruptcy Code § 502(j).  The disallowance of his claim, however, means that he no longer has a financial or legal stake in the chapter 11 case, and is not a "party in interest" with standing to object to confirmation.  *See In re Kreisler Group, Inc.*, 648 F.2d at 88 (decided under the former Bankruptcy Act); *In re Flintkote Co.*, 486 B.R. 99, 116 (Bankr. D. Del. 2012) (decided under the Bankruptcy Code); *In re Southland Dev. Corp.*, 136 B.R. 40, 42 (E.D.N.Y. 1992) (same); *In re Rath Packing Co.*, 55 B.R. 528, 535 (Bankr. N.D. Iowa 1985) (same).[7]  Regardless of the outcome of the application to confirm the *Plan* in this case, Schneller had no right to payment from the Debtors.

At most, Schneller has a remote financial interest in the case.  If an appellate court reverses the determination in the First Case that Schneller is bound by the discharge and plan

---

[7]     Even "a party in interest" has limited standing to object to confirmation.  It "may not object to aspects of a plan, confirmation requirements or issues that do not affect the party itself."  7 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 1128.04, at 1128-7 (16th ed. 2013) ("COLLIER"); *accord In re Quigley Co.*, 391 B.R. 695, 703 (Bankr. S.D.N.Y. 2008) (party in interest "cannot challenge portions of the plan that do not affect its direct interests.").

injunction, the Court may reconsider the disallowance of his claim in the Second Case according

to the equities in the case. *See* 11 U.S.C. § 502(j). By then, all of the property may have been

distributed to the other creditors, and the future allowance of Schneller's claim would not affect

the validity of those distributions. *Id.* In the end, he could hold an allowed claim but receive no

distribution. Nevertheless, the possibility of an allowed claim in the future depends on a reversal

of the adverse decision the First Case, and ultimately, proof of liability and damages in

connection with his defamation claim. These contingencies make his interest too remote to

confer Article III standing and/or "party in interest" standing under 11 U.S.C. § 1109(b). *See*

*Flintkote*, 486 B.R. at 114-15.

Aside from Schneller's standing problem, his litany of errors simply takes issue with

provisions of the *Plan* but does not state a claim for fraud. Moreover, as the following shows,

his general challenges parrot certain requirements for confirmation under the Bankruptcy Code,

argue that the *Plan* did not comply with the cited provisions, fail to explain why it did not

comply and ignore the Court's findings that it did:

> 1.      Schneller summarily states that the *Plan* did not satisfy 11 U.S.C.
> § 1129(a)(1). (*Confirmation Motion* at ¶ 9.) Section 1129(a)(1) requires the plan
> to comply with the applicable provisions of the Bankruptcy Code such as section
> 1122 relating to classification and section 1123 which governs the content of the
> plan. S. REP. NO. 95-989, at 126 (1978); H. R. REP. NO. 95-595, at 412 (1977).
> The *Confirmation Order* included a general finding that the *Plan* satisfied
> § 1129(a)(1) and more specific findings that the *Plan* satisfied 11 U.S.C. §§ 1122
> and 1123. (*Confirmation Order* at ¶¶ 5-13.)

> 2.      Schneller maintains, quoting Bankruptcy Code § 1123(a)(4), that "the plan
> does not provide the same treatment for each claim or interest of a particular
> class, unless the holder of a particular claim or interest agrees to a less favorable
> treatment of such particular claim or interest." (*Confirmation Motion* at ¶ 11.)
> The *Confirmation Order* contained an express finding that the *Plan* did comply
> with this requirement. (*Confirmation Order* at ¶ 9.)

3.      Schneller contends that the *Plan* did not contain adequate means of
implementation, and that the duties and procedures set out for the Liquidating
Trustee were "unfair or inequitable." (*Confirmation Motion* at ¶ 12.)  The Court
found, however, that the *Plan* provided adequate and proper means for
implementation through the creation of a Liquidating Trust which would wind-
down the Debtors' estates and make all distributions under the *Plan,*
(*Confirmation Order* at ¶ 10), and approved the Liquidating Trust Agreement.
(*Id.* at ¶¶ 38, 45.)

4.      Schneller quotes Bankruptcy Code § 1129(a)(5)(A)(ii), maintaining that
the selection of any officer, director, or trustee under the *Plan* and any successor
is "not consistent with the interests of creditors and equity security holders and
with public policy." (*Confirmation Motion* at ¶ 14.)  The Court made a specific
finding that the *Plan* satisfied § 1129(a)(5) because the proponents disclosed that
Bradley Scher was the sole officer and director of the Debtors and the managing
member of Ocean Ridge Capital Advisors, LLC who will serve as the Liquidating
Trustee, (*Confirmation Order* at ¶ 18), and Ocean Ridge's appointment was
consistent with the interests of the holders of claims and equity interests and
public policy. (*Id.* at ¶ 44.)

5.      Finally, Schneller challenges the compliance with Bankruptcy Code
§ 1122, contending that the claims or interests placed in a class, including class 6,
were not substantially similar. (*Confirmation Motion* at ¶ 19.)  The Court found
to the contrary. (*Confirmation Order* at ¶ 6) ("The Claims and Equity Interests
placed in each Class are substantially similar to other Claims or Equity Interests,
as the case may be, in each such Class.")

Schneller's arguments regarding fraud and bad faith are even more far-fetched.

Schneller's speculation that the Debtors always contemplated a chapter 22 is just that, and does

not constitute clear and convincing evidence of fraud or misconduct.  In addition, the Court

expressly found that the *Plan* was proposed in good faith, and more specifically, that the Plan

was the product of arm's-length negotiations between the Debtors and the Creditors' Committee,

was supported by the Debtors' creditors and was proposed with the legitimate purpose of

maximizing the value of the Debtors' estates and effectuating an effective liquidation of the

Debtors.  (*Confirmation Order* at ¶ 16.)  Similarly, his statement that the Debtors procured "the

formal waiver or deemed acceptance" of certain classes in bad faith does not constitute clear and

convincing evidence of bad faith.  The Court found that the votes were solicited in good faith and

in a manner consistent with the Bankruptcy Code and the Bankruptcy Rules.  (*Confirmation Order* at ¶¶ 4, 34.)

Schneller's collateral attacks on the orders approving the *Disclosure Statement* and the § 363 asset sale are procedurally improper and untimely.  He did not properly appeal from the order approving the *Disclosure Statement* or the § 363 sale order, and cannot collaterally attack those final orders through the guise of a motion to reconsider the *Confirmation Order*.

Furthermore, he suggests some wrongdoing in connection with the timing of the sale and asserts that it did not maximize value, but does not explain why.  The Court expressly found, among other things, that the sale agreement was entered into in good faith, (*see Order (A) Approving Purchase Agreement Between Debtors and Purchaser, (B) Authorizing and Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (C) Authorizing and Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith, and (D) Granting Related Relief*, dated Mar. 27, 2013, at ¶ J (ECF Doc. # 544)), the timeline for the sale was negotiated in good faith with the Creditors' Committee which supported the sale, (*id.* at ¶ M), the sale agreement with the buyer represented a fair and reasonable offer, (*id.* at ¶ P), the Debtors demonstrated compelling circumstances and good business reasons for the sale, (*id.* at ¶ R), and the sale agreement constituted the highest and best offer and would provide a greater recovery for the Debtors' estates than any other available alternative.  (*Id.* at ¶ O.)

Schneller's personal objections also lack merit.  The Court refused to consider his objections at the confirmation hearing because he lacked standing to make them.  The Court did not improperly treat his "prospective claim" in violation of Bankruptcy Code § 1129(b)(2)(B)

14

because the section did not apply. Section 1129(b)(2)(B) governs a cram down over the

*rejection* by a class of unsecured creditors. Schneller's "prospective claim" belonged in class 6

if it belonged anywhere, and class 6 accepted the *Plan*. (*Confirmation Order* at ¶ 21.) In fact,

two creditors in class 6 holding claims aggregating $90 million voted to accept the *Plan* and

none voted to reject. (*Declaration of Jeffrey L. Pirrung Certifying Vote on and Tabulation of*

*Ballots Accepting and Rejecting the Joint Plan of Liquidation Pursuant to Chapter 11 of the*

*Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors*

*of Pulp Finish 1 Company*, dated Oct. 4, 2013, Exs. A & B (ECF Doc. # 835).) Even if the Court

had allowed Schneller to vote his "prospective claim" to reject the *Plan*, class 6 would still have

accepted. *See* 11 U.S.C. § 1126(c). Schneller did not file a timely appeal from the order denying

his *Temporary Allowance Motion*, but even if he had, he has not identified any error. Finally, he

charges that the Debtors refused to disclose pertinent insurance policies that he requested in

discovery, which he sought to oppose confirmation, but the Court ruled that he had no right to

discovery because he lacked standing to object to confirmation.

    As noted, Schneller added some additional charges in the *Schneller Memo* that are

discussed in an earlier footnote. Three of his new arguments, the failure to receive notice

required under the *Plan*, the alleged misstatement in the *Post-Confirmation Order* that there are

no pending adversary proceedings,[8] and the failure to satisfy the conditions to the occurrence of

---

[8]        Schneller maintains that he is a party to an adversary proceeding entitled *Schneller v. Delaware County Times*, Civ. Action No. 11-001609, which he initially removed from the Delaware County Court of Common Pleas to the United States District Court for the Eastern District of Pennsylvania. (*See Notice of Removal*, dated July 27, 2003 (ECF Doc. # 749).) The civil action was remanded to state court by *Order*, dated Sept. 16, 2003, (E.D. Pa. Case No. 13-4369 (LS) ECF Doc. # 5). It appears that he then tried to remove the same state court action directly to the Pennsylvania Eastern District Bankruptcy Court. (*See Notice of Removal*, dated Oct. 12, 2013 (Bankr. E.D. Pa. Case No. 13-529 (JFK) ECF Doc. # 1).) The bankruptcy court held that the *Notice of Removal* was filed in violation of the automatic stay and was void, and closed the adversary proceeding. (*Order*, dated Dec. 11, 2013 (Bankr. E.D. Pa. Case No. 13-529 (JKF) ECF Doc. # 6).) Not surprisingly, Schneller has filed a motion for reconsideration. In addition, there are no adversary proceedings pending in this Court.

the Effective Date, obviously post-date the *Confirmation Order* and are not the proper subjects

of a motion to reconsider the *Confirmation Order*.  I assume that Schneller's reference to the

failure to satisfy Local Bankruptcy Rule 3019-1 relates to some perceived modifications to the

*Plan* before the close of voting that he believes affected his claim.[9]  Since he was not entitled to

vote his disallowed claim in the first place, he would not have been affected by any

modifications in the treatment of class 6, or any other modifications, and he lacks standing to

raise this issue.  Furthermore, he did not explain how the plan proponents or the *Plan* failed to

comply with Local Bankr. R. 3019-1.  Finally, the Debtors are free to negotiate, settle and pay

claims, even if they were discharged in the First Case.  *See* 11 U.S.C. § 524(f).

For all of the foregoing reasons, Schneller's motion to reconsider the confirmation of the

*Plan* is denied.

---

[9]     Local Bankruptcy Rule 3019-1 states:

    If the proponent of a chapter 11 plan files a modification of the plan after transmission of the
    approved disclosure statement and before the close of voting on the plan, the proponent shall serve
    a copy of the plan, as modified, upon the debtor, the trustee, each committee, the United States
    Trustee, all entities directly affected by the proposed modification, and such other entities as the
    Court may direct. On notice to such entities, the Court shall determine whether the modification
    adversely affects the treatment of the claim of any creditor or the interest of any equity security
    holder who has not accepted the modification in writing. If the Court determines that the
    modification is not adverse, the plan, as modified, shall be deemed accepted by all creditors and
    equity security holders who accepted the plan prior to modification. If the modification is adverse,
    the requirements of Bankruptcy Rule 3017 shall apply to the modified plan and any amendment of
    the disclosure statement necessitated by the modification.

16

### 2.    Motion to Intervene

Schneller's *Confirmation Motion* also includes a request to intervene and specifically

invokes FED. R. BANKR. P. 2018.[10]  His stated purpose is to pursue discovery to support (1) his

argument that the timing of the filing and the prosecution of the Second Case smacked of "bad

faith," (2) the success of his "underlying appeal" and (3) his contention that his defamation claim

is covered by the Debtors' insurance.  (*Confirmation Motion* at ¶ 16.)  Rule 2018 provides for

intervention by an entity who is not otherwise entitled to participate in the bankruptcy case.  *S.

Blvd., Inc. v. Martin Paint Stores (In re Martin Paint Stores)*, 207 B.R. 57, 62 (S.D.N.Y. 1997);

9 COLLIER ¶ 2018.02, at 2018-3.  The entity seeking to intervene must demonstrate cause,

meaning an economic or similar interest in the case or an aspect of the case.  9 COLLIER ¶

2018.04[3], at 2018-6.  Other considerations include whether intervention will cause undue delay

or prejudice and whether the proposed intervener's interests are already protected by a party in

the case.  *In re Martin Paint Stores*, 207 B.R. at 62.  The decision is committed to the Court's

discretion.  *See Krys v. Official Comm. of Unsecured Creditors of Refco, Inc. (In re Refco)*, 505

F.3d 109, 119 n.14 (2d Cir. 2007); *In re Martin Paint Stores*, 207 B.R. at 62.

The Court declines in the exercise of its discretion to grant Schneller's motion to

intervene.  The Court already discussed Schneller's argument that the Debtors contemplated a

chapter 22 when they filed the First Case.  Assuming he has standing, his contention amounts to

bare speculation without substance, and the Court cannot think of a reason why the Debtors

would contemplate such a move.  In addition, his discovery is aimed at a collateral attack either

---

[10]    Federal Bankruptcy Rule 2018 states, in pertinent part:

(a) PERMISSIVE INTERVENTION. In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter.

on the discharge and plan injunction in the First Case or the *Confirmation Order* in this case.

His efforts to obtain relief from the confirmation order in the First Case have been rebuffed, and

this Court found that the *Plan* was proposed in good faith, (*Confirmation Order* at ¶ 16), a

finding that necessarily implied that it was also filed in good faith.  *In re Quigley Co.*, 437 B.R.

102, 125 (Bankr. S.D.N.Y. 2010) (good faith inquiry under Bankruptcy Code § 1129(a)(3) "must

be viewed in light of the totality of the circumstances surrounding the establishment of a chapter

11 plan . . . including the debtor's pre-filing conduct.")  In short, Schneller's desire to fish for

evidence will waste everyone else's time and money, and ultimately, may delay the closing of

this case, a delay that will prejudice creditors for the reasons discussed in connection with the

*Case Closing Motion*.

As to Schneller's last two arguments, he is not entitled to discovery to bolster his pending

appeals, and he is not entitled to the Debtors' insurance policies because he has no claim against

the Debtors.  If he believes that he has a direct claim against the Debtors' insurers that survived

the disallowance of his claim, he can pursue that claim in the appropriate forum but it is of no

concern to this case.  If he believes that the insurance covers the claims asserted against the non-

Debtor parties in his Pennsylvania action, he should pursue his request for discovery there.

Accordingly, Schneller's motion to intervene is denied.

### 3.    Motion for a Stay

The last prong of the *Confirmation Motion* seeks a stay of proceedings pending

Schneller's appeal.  (*Confirmation Motion* at ¶¶ 27-39.)  Rule 8005 of the Federal Rules of

Bankruptcy Procedure authorizes a bankruptcy judge to stay a judgment or order pending

18

appeal.[11]  The same standards that govern a stay pending an appeal from a District Court order to

the Court of Appeals apply in the case of an appeal from the Bankruptcy Court to the District

Court.  *See In re Savage & Assocs., P.C.*, No. 05 Civ.2072(SAS), 2005 WL 488643, at *1

(S.D.N.Y. Feb. 28, 2005).

The decision to grant or deny a stay pending appeal is committed to the discretion of the

bankruptcy court.  *See Nken v. Holder*, 556 U.S. 418, 433 (2009).  "The four factors to be

considered in issuing a stay pending appeal are well known: '(1) whether the stay applicant has

made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will

be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the

other parties interested in the proceeding; and (4) where the public interest lies.'"  *In re World

Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (quoting *Hilton v. Braunskill*,

481 U.S. 770, 776 (1987)); *accord Nken*, 556 U.S. at 426.

The first two factors are the most critical.  *Nken*, 556 U.S. at 434.  "It is not enough that

the chance of success on the merits be 'better than negligible.'"  *Id.* (quoting *Sofinet v. INS*, 188

F.3d 703, 707 (7th Cir. 1999)).  "By the same token, simply showing some 'possibility of

---

[11]      Rule 8005 provides:

A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a
supersedeas bond, or for other relief pending appeal must ordinarily be presented to the
bankruptcy judge in the first instance.  Notwithstanding Rule 7062 but subject to the power of the
district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may
suspend or order the continuation of other proceedings in the case under the Code or make any
other appropriate order during the pendency of an appeal on such terms as will protect the rights of
all parties in interest.  A motion for such relief, or for modification or termination of relief granted
by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the
motion shall show why the relief, modification, or termination was not obtained from the
bankruptcy judge. The district court or the bankruptcy appellate panel may condition the relief it
grants under this rule on the filing of a bond or other appropriate security with the bankruptcy
court. When an appeal is taken by a trustee, a bond or other appropriate security may be required,
but when an appeal is taken by the United States or an officer or agency thereof or by direction of
any department of the Government of the United States a bond or other security shall not be
required.

irreparable injury' fails to satisfy the second factor." *Nken*, 556 U.S. at 434-35 (citation

omitted). "'The probability of success that must be demonstrated is inversely proportional to the

amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one

excuses less of the other.'" *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (quoting *Mich.*

*Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991));

*accord Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006).

        Schneller has failed to show any likelihood of success on his appeal. The issue on appeal

is straightforward: did the discharge and plan injunction in the First Case require the

disallowance of his claim in the Second Case. The answer is plainly in the affirmative, and

Schneller has not shown that he is likely to overturn Judge Gropper's order that his claim has

been discharged. If his claim was discharged in the First Case, it was properly disallowed in the

Second Case, and as a result of the disallowance of his claim, he lacked standing to object to

confirmation of the *Plan*, a conclusion he does not appear to dispute. For the reasons stated in

connection with his motion for reconsideration of the confirmation order, he has failed to

demonstrate why he will succeed, much less make a strong showing why he is likely to succeed,

on his appeal.

        He has also failed to show irreparable harm. If his claim is ultimately allowed upon

reconsideration, he will receive a distribution. It is true that there may be nothing left to

distribute by then, but assuming that this constitutes irreparable harm, the mere, remote

possibility of this result is insufficient particularly in the absence of any showing that he is likely

to succeed on his appeal.

A stay of proceedings will also injure the creditors with allowed claims by delaying their

distributions and preventing the Debtors from completing consummation and closing the last

estate.  *ePlus, Inc. v. Katz (In re Metiom, Inc.)*, 318 B.R. 263, 272 (S.D.N.Y. 2004) (noting that a

stay will prejudice creditors by delaying distributions).

Finally, no public interest is served by staying the Second Case.  To the contrary, there is

a strong public interest in the finality of bankruptcy proceedings.  *Id.* ("[T]he public interest in

the expeditious administration of bankruptcy cases as well as in the preservation of the

bankrupt's assets for purposes of paying creditors, rather than litigation of claims lacking a

substantial possibility of success, outweighs the public interest in resolving the issues presented

here on appeal."); *In re Calpine Corp.*, No. 05-60200, 2008 WL 207841, at *7 (Bankr. S.D.N.Y.

Jan. 24, 2008) ("[T]here is a strong public 'need for finality of decisions, especially in a

bankruptcy proceeding.'") (quoting *In re Twenty-Six Realty Assocs., L.P.*, No. 95 CV 1262(FB),

1995 WL 170124, at *16 (E.D.N.Y. Apr. 4, 1995)).

Accordingly, Schneller's motion for a stay pending appeal is denied.

**B.**    ***Case Closing Motion***

Schneller seeks reconsideration of the order closing the affiliated Debtors' cases,

including the Goodson case, because the estates were not fully administered or substantially

consummated, closing was not in the best interests of the Debtors, their estates or their creditors,

and there was insufficient cause to close the individual estates.  (*Case Closing Motion* ¶ 3, at 2 of

13.)  In addition, Schneller cites procedural deficiencies including insufficient notice and the

absence of a final confirmation order, (*id.* ¶ 4 at 2 of 13), and claims that the closings were

premature.  (*Id.* ¶ 5 at 3 of 13.)

21

The memorandum attached to the *Case Closing Motion* fleshes out some of these
arguments. Schneller asserts that the *Confirmation Order* is not final because the *Confirmation
Motion* is pending, (*id.* at 6 of 13), the closings violate the provisions of the *Plan*, (*id.* at 6-7 of
13), and closing the Goodson case will result in future litigation to reopen it. (*Id.* at 7 of 13). In
addition, Schneller contends that he is party to a pending adversary proceeding. (*Id.* at 7-8 of
13.) Next, he argues that he did not receive notice of entry of the *Confirmation Order* or notice
of the Effective Date as required by the *Plan*. (*Id.* at 6, 8 of 13.) Finally, he contends that the
Debtors did not file their post-confirmation status report as required by the *Post-Confirmation
Order*. (*Id.* at 8-9, 10 of 13.)

Federal Bankruptcy Rule 3022 states that "[a]fter an estate is fully administered in a
chapter 11 reorganization case, the court, on its own motion or on motion of a party interest,
shall enter a final decree closing the case." The rule is flexible, and the 1991 advisory committee
notes provide guidelines as to when a final decree is appropriate:

> Factors that the court should consider in determining whether the estate has been
> fully administered include (1) whether the order confirming the plan has become
> final, (2) whether deposits required by the plan have been distributed, (3) whether
> the property proposed by the plan to be transferred has been transferred, (4)
> whether the debtor or the successor of the debtor under the plan has assumed the
> business or the management of the property dealt with by the plan, (5) whether
> payments under the plan have commenced, and (6) whether all motions, contested
> matters, and adversary proceedings have been finally resolved.
>
> Importantly, entry of a final decree should not be delayed "solely because the payments

required by the plan have not been completed," and "[t]he court should not keep the case open
only because of the possibility that the court's jurisdiction may be invoked in the future." The
final decree does not "deprive the court of jurisdiction to enforce or interpret its own orders and
does not prevent the court from reopening the case for cause pursuant to § 350(b) of the Code."
FED. R. BANKR. P. 3022 advisory committee's note (1991).

Here, the factors identified by the advisory committee weighed in favor of closing the

affiliated Debtor cases.  First, the *Confirmation Order* became final on October 29, 2013, 14

days after it was entered, because no notice of appeal had been filed by then.  *See* FED. R.

BANKR. P. 8002(a).  The *Confirmation Motion* was not filed until October 30, 2013, one day

later, and did not extend the period within which to appeal from the *Confirmation Order*.  *See*

FED. R. BANKR. P. 8002(b)(4) (motion for relief from judgment under Rule 9024 will extend the

time to appeal only if it is filed within 14 days after the entry of the judgment).  Second, on or

after the Effective Date, the Debtors' transferred their property to the Liquidating Trust, and the

Liquidating Trust assumed the management of that property.  (*Post Confirmation Report* at ¶ 3.)

Third, payments commenced under the *Plan*. [12]  (*Id.* at ¶ 8.)  Fourth, all motions, contested

matters and adversary proceedings were resolved.  *See* footnote 8, *supra*.

Other factors also weighed in favor of closing all but one case.  Schneller was not

prejudiced because the *Plan* consolidated the Debtors for purposes of confirming the *Plan* and

making distributions, and all of the assets and liabilities were deemed to be those of a single,

consolidated entity.  (*Plan* at Art. IV.A(1).)  As a result, Schneller's "prospective claim" became

a claim against the surviving Debtor, Pulp Finish 1 Company.  Schneller can pursue his right to

distribution in that case.

On the other hand, the Debtors' creditors would suffer prejudice if the affiliated cases

remained open.  Under 28 U.S.C .§ 1930(a)(6), a chapter 11 debtor must pay to the United States

---

[12]      The transfer of the assets to the Liquidating Trust, its assumption of the management of those assets and the
commencement of distributions resulted in the "substantial consummation" of the *Plan*.  *See* 11 U.S.C. 1101(2)
(defining "substantial consummation").

Trustee a minimum of $325 each quarter until its case is dismissed, converted or closed.[13]  *See*

*Schwartz v. Acquatic Dev. Group, Inc.* (*In re Acquatic Dev. Group, Inc.*), 352 F.3d 671, 680 (2d

Cir. 2003)(Straub J., concurring); *Walton v. Jamko, Inc.* (*In re Jamko, Inc.*); 240 F.3d 1312, 1313

(11th Cir. 2001).  *Vergos v. Gregg's Enters., Inc.*, 159 F.3d 989, 993 (6th Cir. 1998); *United*

*States Trustee v. CF&I Fabricators of Utah, Inc.* (*In re CF&I Fabricators of Utah, Inc.*), 150

F.3d 1233, (10th Cir. 1998).  The fee must be paid in each affiliated case, and where the affiliated

debtors are deemed substantively consolidated solely for plan purposes but not *de facto*

substantively consolidated, each affiliate must continue to pay the quarterly fee until that

affiliate's case is closed, converted or dismissed.  *See Genesis Health Ventures, Inc. v. Stapleton*

*(In re Genesis Health Ventures, Inc.)*, 402 F.3d 416, 424 (3d Cir. 2005).

     Although the *Plan* deemed the Debtors to be substantively consolidated for certain

purposes including those discussed earlier, it did not substantively consolidate the Debtors for all

purposes.  (*See Plan* Art.IV.A(2).)  Accordingly, each of the 28 affiliated Debtors arguably

remained liable for quarterly fees in the aggregate minimum amount of $9,100.  Given that the

post-Effective Date administration of the Debtors' estates is vested in one Liquidating Trustee

and requires only one open case, there is no reason why $9,100 each quarter should be paid to

the United States Trustee instead of to creditors.  Accordingly, it was appropriate to enter a final

decree closing the 28 affiliated cases.

---

[13]     Section 1930(a)(6) states in relevant part that "[t]he fee shall be $325 for each quarter in which disbursements total less than $15,000," until the case has been "converted and dismissed."  Many chapter 11 cases are never "converted or dismissed."  Instead, they are closed when the bankruptcy court's administration of the case is complete.  Thus, although the statute speaks of the obligation to pay fees until the case is "converted or dismissed," it has been interpreted by the cited authorities to mean that the debtor's obligation to pay United States Trustee fees also terminates when the case is closed.

Schneller also argues that the Debtors ignored the conditions to the occurrence of the

Effective Date set forth in the *Plan*. He cites to Article VIII.E which provides that if the

conditions to the occurrence of the Effective Date set forth in Article VIII.B do not occur within

180 days after the Confirmation Date, or such later date as determined by the Debtors and the

Creditors' Committee, the *Confirmation Order* may be vacated by the Court and the *Plan* will be

null and void.

Schneller has not explained why the conditions to the occurrence of the Effective Date

have not occurred, and in fact, they have. The *Confirmation Order* has become final and there is

no stay in effect, (*Plan*, Art. VIII.B(1)), the *Confirmation Order* includes the provisions required

for the *Plan*'s effectiveness, (*id.* Art. VIII.B(2)), final versions of the *Plan* and any supplemental

documents and exhibits have been filed and are satisfactory to the plan proponents, (*id.* Art.

VIII.B(3)), all necessary documents have been executed and the properties of the various Debtor

estates have been transferred to the Liquidating Trust in accordance with the *Plan*, (*id.* Art.

VIII.B(4)), and it does not appear that the plan proponents required any regulatory approvals

within the meaning of Art. VIII.B(5). (*See Confirmation Order* at ¶ 19.)

As to Schneller's other arguments, the prospect of future litigation or the need to invoke

the Court's jurisdiction at some future time does not require the cases remain open. If the

circumstances warrant it, he can move to reopen at the appropriate time. *See* 11 U.S.C. § 350(b)

("A case may be reopened in the court in which such case was closed to administer assets, to

accord relief to the debtor, or for cause."). As noted, there are no pending adversary

proceedings. In addition, he can seek further relief relating to his "prospective claim" in the

open case. Lastly, the Liquidating Trustee has filed a post-confirmation report. (*See Post-*

*Confirmation Report*.)

25

Accordingly, the *Case Closing Motion* is denied.  The Court has considered the

remaining arguments made in the *Confirmation Motion* and the *Case Closing Motion* and

concludes that they lack merit.

So ordered.

Dated: New York, New York
      January 16, 2014


          /s/ *Stuart M. Bernstein*
          STUART M. BERNSTEIN
          United States Bankruptcy Court